The decision below is hereby signed.
Dated:  March 8, 2006.

Date signed March 08, 2006



**S. MARTIN TEEL, JR.**
**U. S. BANKRUPTCY JUDGE**
SITTING BY DESIGNATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

In re                              )
                                   )
RALPH T. BYRD and BEVERLY S.       )     Case No. 04-35620-NVA
BYRD,                              )     (Chapter 13) (Substantively
                                   )     Consolidated Cases))
              Debtors.             )

DECISION RE MOTION TO STAY AND
RECONSIDER ORDER DENYING CONFIRMATION WITHOUT LEAVE TO AMEND

Ralph T. Byrd, co-debtor in this case, seeks to have this court reconsider the denial of confirmation of the debtors' chapter 13 plan without leave to amend.  The motion must be treated as timely filed under FED. R. CIV. P. 59 (as incorporated by FED. R. BANKR. P. 9023),[1] but fails to set forth adequate

---

[1]  The motion, entitled Motion to Stay and Reconsider Order Denying Confirmation Without Leave to Amend, and assigned Docket Entry ("D.E.") No. 216, was filed within 10 days of entry of the Order Denying Confirmation of Amended Chapter 13 Plan without Leave to Amend (D.E. No. 198, entered January 30, 2006).

grounds for revising the court's order.[2]

I

A full accounting of the factual and procedural history in this case would run longer than a Peter Jackson film. Suffice to say, Mr. Byrd has been in bankruptcy for a very long time, having been forced into an involuntary chapter 7 bankruptcy in December of 2001, then converting the case briefly to chapter 11 in June of 2004, before finally substantively consolidating his case into

---

[2]    The motion states that Mr. Byrd has filed the motion for reconsideration "on behalf" of Mrs. Byrd as well as himself, but Mrs. Byrd is represented by separate counsel and has not retained Mr. Byrd as co-counsel in this case.  Although the court has previously commented on this irregularity, see, e.g., Order Denying Motion to Strike Notices of Deposition and Directing Ralph T. Byrd and Beverly S. Byrd to Appear at Duly Noticed Depositions (D.E. No. 141, entered January 17, 2006) at n.1, Mr. Byrd insists on filing documents as though he were Mrs. Byrd's attorney even though he plainly is not.  The court is especially troubled by Mr. Byrd's behavior because he testified under oath at the debtors' confirmation hearing, which the court would not have allowed had Mr. Byrd been representing Mrs. Byrd as well as himself.  The court will ignore Mr. Byrd's representations that he is acting "on behalf" of Mrs. Byrd and treat his motion as being filed solely on behalf of himself, but it strongly suggests to Mr. Byrd that he refrain from filing documents "on behalf" of another attorney's client without that attorney's express consent in the future.

his wife's chapter 13 case on January 13, 2005.[3]  At every stage
of his case(s), Mr. Byrd has doggedly resisted attempts to
examine either debtor's records by any party represented by the
law firm of Shulman Rogers Gandal Pordy & Ecker ("Shulman
Rogers").  Mr. Byrd's position has led to protracted litigation
between himself and the individuals who served as trustees (or
counsel to trustees) while his case was pending in chapter 7 and
chapter 11 and who now hold administrative claims in his chapter
13 case.

On October 5, 2005, Judge Alquist of this court took under
advisement a motion filed by the former chapter 11 trustee
(represented by James M. Hoffman, a partner at Shulman Rogers) to
convert the debtors' case to chapter 7.  Notwithstanding the
pendency of that motion, the debtors' case proceeded towards
confirmation.  Not surprisingly, Mr. Byrd's former chapter 7
trustee filed an objection to confirmation of the debtors' plan

---

[3]  The Consent Order for Substantive Consolidation (D.E. No.
364 in Mr. Byrd's case, Case No. 01-25006) effectively converted
Mr. Byrd's chapter 11 case to one under chapter 13 to be
administered jointly with his wife's chapter 13 case.  The
Consent Order provided for substantive consolidation of Mr.
Byrd's chapter 11 case into Mrs. Byrd's chapter 13 case, and
invoked, as a basis for doing so, Rule 1015, which addresses
joint administration of the cases of a husband and wife.
Further, it directed that Mr. Byrd's case "shall be administered
by the Chapter 13 Trustee."  The Consent Order noted that it did
not "convey or bestow upon Ralph T. Byrd an automatic right to
dismiss under Section 1307(b) of the Bankruptcy Code inasmuch as
his Chapter 7 case already has been converted to a Chapter 11
case prior to the entry of this Consent Order . . . ."

3

of reorganization expressing essentially the same concerns that
led the former trustees to move the court to convert the debtors'
case to chapter 7.[4]

The court heard evidence regarding the confirmability of the
debtors' plan and the merits of the former trustees' objections
on January 25, 2006.  Beverly Byrd testified that she had
obtained full-time employment as a school teacher and that her
three sons could contribute up to $4,000.00 per month to the
debtors if necessary to fund the plan.  Mr. Byrd testified that
he had refocused his solo practice on a new area of the law--
creditors' liabilities to debtors for improper credit practices
under Maryland law--that was much more remunerative than his
previous business practices.  Mr. Byrd also corroborated the
testimony of his wife with respect to possible support from his
children.

Much of the evidence presented by the debtors was severely
undercut upon the cross-examination by the former trustee and the
independent examination by the court.  For example, although the
debtors insisted that their children could provide up to
$4,000.00 per month in additional income if necessary, Mrs. Byrd
admitted under cross-examination that her sons had made only one

---

[4]  Platinum Financial Services Corporation also filed an
objection to confirmation of the debtors' plan (D.E. No. 195,
filed January 24, 2006) in which it joined in the arguments of
the former chapter 11 trustee.

4

such payment in the past, that the "payment" was in fact a loan (which the debtors repaid), and that all but one of the debtors' three children were still in college.  Both of the debtors admitted that they had failed to file quarterly tax returns despite being self-employed, and Mr. Byrd revealed in response to questioning from the court that, after nearly a year of pursuing his new "specialization," the debtors still had saved only $5,000.00 while making plan payments that were barely half of the amount to be paid in the near future under the terms of the proposed plan.

Not content to seek a ruling in their favor after the close of the debtor's case, the former trustee and his counsel produced affirmative evidence of bad faith by the debtors.  Disturbing as this evidence was,[5] the court did not need to rely on it in deciding whether the debtors' plan could be confirmed.  Instead, the court held from the bench that the debtors' plan could not be confirmed because the debtors did not show income sufficient to support the inordinately large payments required by the proposed plan.  The court also denied the debtors leave to amend their plan further due to the extraordinary delay in payment to Mr.

---

[5]  Among the more memorable pieces of evidence presented in this regard was the testimony of former chapter 7 trustee Roger Schlossberg, who, being a self-described "cowboy," decided to scale the debtors' fence one day to complete his court-ordered examination of Mr. Byrd's property only to have someone in the house sic the debtors' Doberman Pinscher on him.

Byrd's creditors as well as the threat of depreciation of the
debtors' largest asset (their house) should this case continue.
An order memorializing the court's holding was entered on January
30, 2006.

II

The debtors do not identify any grounds warranting relief
under Rule 59.[6]  Instead, acting as counsel for himself and Mrs.
Byrd, Mr. Byrd points to legal arguments that he either argued
without success at trial or failed to argue at all.  The court
sees no virtue in re-litigating the same issues over and over, or
entertaining issues that could have been and thus should have
been raised at trial.

A.   <u>Argument Regarding Motion for a Protective Order</u>

Mr. Byrd's primary argument is that the court erred in
finding that the debtors could not adequately fund their proposed
plan because it was presented with only bits and pieces of the
debtors' financial situation.  Although the burden rested with
the debtors to convince the court that they possessed the

---

[6]  "Although Rule 59(e) does not set forth a standard to be
applied when considering a motion to alter or amend, the United
States Court of Appeals for the Fourth Circuit has recognized the
following three grounds for amending a judgment pursuant to Rule
59(e): '(1) to accommodate an intervening change in controlling
law; (2) to account for new evidence not available at trial; or
(3) to correct a clear error of law or prevent manifest
injustice.'" <u>In re Young</u>, 285 B.R. 168, 169-70 (Bankr. D. Md.
2002) (quoting <u>Collison v. Int'l Chem. Workers Union</u>, 34 F.3d
233, 236 (4th Cir. 1994)(further quotation omitted)).

necessary income to fund their plan, Mr. Byrd lays the blame for
the debtors' sparse evidence in that regard at the feet of the
court.  He argues that when the court failed to rule on Mr.
Byrd's emergency motion for protective order filed on January 20,
2006, it placed the debtors "in the untenable position of having
to decide, on their own, what information should be withheld in
order not to waive the asserted privileges and what information
needed to be presented in order to demonstrate the feasibility of
their Amended Chapter 13 Plan" (Mot. ¶ 5).  According to Mr.
Byrd:

> If the [c]ourt had chosen to rule on said Emergency
> Motion for Protective Order prior to the hearing on the
> confirmation[,] the Movants would have sought to
> present to the [c]ourt, in camera, documentation that
> shows, in detail, the net profits of Ralph Byrd's law
> practice including all retainer agreements, all bank
> statements[,] and all expenses.

Id. at ¶ 6.

However, the emergency motion only sought to bar discovery
being prosecuted by the parties opposing confirmation; the
motion did not request leave at the confirmation hearing to
present evidence under seal or in camera.  Mr. Byrd remained free
at the confirmation hearing to seek to present evidence in camera
or under seal in support of their case, and may not make such a
request after the hearing has been concluded.

B.   Remaining Arguments

The remaining arguments raised by Mr. Byrd in support of reconsideration address issues that the court heard and decided at the confirmation hearing.  The arguments are no more convincing now than they were then.  In short, nothing in Mr. Byrd's motion suggests to the court that it committed any error, let alone an error warranting reconsideration.

III

An order follows denying the motion.  Mrs. Byrd has the right to file either a notice of conversion to chapter 7 or a motion to dismiss as of absolute right.  The court will direct that she file one or the other within 4 days after entry of this order.  If she does neither, the court will either convert her case to chapter 7 or dismiss the case.  Mr. Byrd has no right to dismissal of his case, and the pending motion to convert the case to chapter 7 appears in his case to be ripe for a ruling in light of this order.  However, the motion to convert was heard by a different judge, and this decision and the denial of the motion for reconsideration will be brought to her attention.

[Signed and dated above.]

Copies to: Debtors; Richard L. Gilman; James M. Hoffman; Gregory P. Johnson; Timothy P. Branigan.