Date signed December 11, 2006



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **Ralph T. Byrd** |   * | |
| **Beverly Byrd** | * | **Case No.   04-35620-TJC** |
| | * | **(Substantively consolidated with** |
| | * | **01-25006-TJC)** |
| | * | |
| **Debtors** | * | **(Chapter 7)** |
| | * | |
| | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OF DECISION GRANTING THE MOTION OF CHAPTER 7 TRUSTEE TO AUTHORIZE THE REMOVAL OF PERSONS AND PROPERTY FROM 4901 SUNDOWN ROAD, LAYTONSVILLE, MD</u>

Before the Court is the Motion of the Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD (the "Motion"), Docket No. 402, filed by Gregory P. Johnson, Chapter 7 Trustee, on September 18, 2006. On October 5, 2006, the Debtors, Ralph T. Byrd, and Beverly Byrd, filed the Opposition to the Motion of the Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD ("the Opposition").  Docket No. 418.   In the Motion, the Chapter 7 Trustee seeks to have the Debtors and their belongings removed from their residence at 4901 Sundown Road, Laytonsville, MD (the "Property")

in order to clean and prepare it for sale, and market and sell it.  The Debtors object, arguing that removing them from their home will cause great disruption in their lives.

The Court held a hearing on the Motion on December 1, 2006.  At the hearing, the Chapter 7 Trustee testified at length about the condition of the Property and his need for an order removing the Debtors and their belongings from the Property.  The Debtors did not testify or produce any evidence, and instead relied solely on the cross-examination of the Chapter 7 Trustee and the arguments of Mr. Byrd.  For the reasons set forth herein, the Court will grant the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The following constitutes the Court's findings of fact and conclusions of law.

## I.    FINDINGS OF FACT

## A.    PROCEDURAL HISTORY

On December 14, 2001, Platinum Financial Services, a creditor, filed an involuntary bankruptcy petition against Ralph T. Byrd ("Mr. Byrd") initiating case No. 01-25006.  On July 17, 2002, the Court entered an order for relief on the involuntary petition.  On July 18, 2002, Roger Schlossberg was appointed the Chapter 7 Trustee (the "First Chapter 7 Trustee").  On January 24, 2003, the District Court reversed the entry of the order for relief.  Thereafter, this Court entered an Order Staying All Matters and Continuing All Hearings on April 15, 2003.  On February 11, 2004, the United States Court of Appeals for the Fourth Circuit reversed and remanded the District Court's decision reversing the entry of the Order for Relief.

On Mr. Byrd's motion, on June 25, 2004, the Court entered an order converting Ralph T. Byrd's case to a case under Chapter 11.  On July 14, 2004, the Court entered an Order Requiring The Appointment of a Chapter 11 Trustee, and Gregory P. Johnson was subsequently appointed the Chapter 11 Trustee (the "Chapter 11 Trustee").

On November 11, 2004, Beverly S. Byrd ("Ms. Byrd") filed a petition under Chapter 13 of the Bankruptcy Code initiating case No. 04-35620.   Shortly thereafter, the Chapter 11 Trustee filed a motion to substantively consolidate Mr. and Ms. Byrd's bankruptcy proceedings.  With the consent of Mr. and Mrs. Byrd, the Court granted the consolidation request on January 13, 2005.

While proceeding under Chapter 13, the Debtors proposed an amended Chapter 13 plan wherein they proposed to pay $2850.00 per month for the first ten months of the plan, then $3500.00 per month for the next twelve months, then $6052.00 per month for 38 months for a total term of sixty months.  Docket No. 129 at p.1.  On January 30, 2006, after an extensive confirmation hearing, the Court entered an order denying confirmation of the Chapter 13 plan without leave to amend.

Subsequently, on March 20, 2006, the consolidated Chapter 13 case was converted to a case under Chapter 7.  On April 3, 2006, Gregory P. Johnson was appointed as Chapter 7 Trustee (the "Second Chapter 7 Trustee" or the "Trustee").

**B.      THE TRUSTEES' EFFORTS TO SELL THE PROPERTY**

1.     Efforts to sell the Property by the First Chapter 7 Trustee.

After the order for relief was entered on July 17, 2002 in Mr. Byrd's case, the First Chapter 7 Trustee attempted to gain access to the Property.  On September 13, 2002, the First Chapter 7 Trustee filed a Motion to Authorize Trustee to Inspect and Secure Assets.

In that motion, the First Chapter 7 Trustee requested, among other things, that he and a real estate broker be granted access to the Property in order to value, inspect, show, and market the Property.  On December 18, 2002, the Court entered the Order Granting Trustee's Motion to Authorize Trustee to Inspect and Secure Assets.  On January 16, 2003, the First Chapter 7 Trustee filed Trustee's Emergency Motion for Entry of an Order for Writ of Assistance from the U.S. Marshal and Holding Debtor in Civil Contempt for Failure to Comply with Order Granting Trustee's Motion to Authorize Trustee to Inspect and Secure Assets.  On April 10, 2003, the First Chapter 7 Trustee filed Trustee's Supplemental Motion for Entry of an Order Holding Debtor in Contempt (the "Supplemental Motion").   Prior to a ruling on these motions, the Court entered an order staying all matters and hearings in the bankruptcy case on April 15, 2003.

On April 22, 2004, the Court entered an order allowing the bankruptcy case to go forward.  Subsequently, the Court held a hearing on the First Chapter 7 Trustee's Supplemental Motion on June 23, 2004, and on June 24, 2004, entered the Order Compelling Ralph T. Byrd to file Schedules and a Statement of Financial Affairs, to Appear at Meeting of Creditors, to Provide Access to the Trustee and Granting Other Appropriate Relief including the grant to the First Chapter 7 Trustee of full and unfettered, immediate access during regular business hours to the Property.  On the next day, Mr. Byrd filed a motion to convert his Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code, thereby halting the efforts of the First Chapter 7 Trustee to sell the Property.

2.      Efforts to sell the Property by the Chapter 11 Trustee.

The Chapter 11 Trustee filed multiple motions to gain access to the Property for purposes of inspecting it in order to develop a sale plan.  On August 25, 2004, the Chapter 11 Trustee filed the Chapter 11 Trustee's Motion for Entry of an Order for Writ of Assistance from the U.S. Marshal and Request for Expedited Hearing.  In that motion, the Chapter 11 Trustee sought removal of the occupants of the Property in order to repair the Property and market it for sale.  On September 15, 2004, the Court entered the Order Granting in Part Trustee's Motion for entry of an Order for Writ of Assistance and required the Debtor to provide the Chapter 11 Trustee and his approved real estate agent access to the Property.  On September 24, 2004, the Chapter 11 Trustee filed Chapter 11 Trustee's Emergency Motion for Entry of an Order for Writ of Assistance from the U.S. Marshal and Request for Expedited Hearing.  In that motion, the Chapter 11 Trustee stated that he was denied access to the property in contravention of the September 15, 2004 order.

On or about October 7, 2004, the Court entered an Order Enforcing this Court's Prior Orders Compelling Certain Actions and Cooperation by Debtor, Issuing Writ of Assistance  from U.S. Marshal, Granting (in Part) Chapter 11 Trustee's Emergency Motion for Entry of an Order for Writ of Assistance from U.S. Marshal, and Granting Chapter 11 Trustee's Request for Expedited Hearing.  In that order, the Court granted the Chapter 11 Trustee's request for Writ of Assistance and directed the U.S. Marshal to provide any and all assistance required by the Chapter 11 Trustee to access the Property. In support of this order, the Court issued written findings on the same day.  The Court found:

The Chapter 11 Trustee has been attempting to market and sell the Property consistent with his duties to the Estate and in accordance with prior orders of the Court including the June 24th Order (P176) and the September 17th Order (P272).

The Chapter 11 Trustee is working to sell the Property for the benefit of the Estate in an expedited time frame….

********

…it is conceded by the Debtor that the Property is not being kept up, though the effect on value of what the Debtor prefers to call "deferred maintenance" is disputed.

Notwithstanding the deteriorating condition of the Property, the Chapter 11 Trustee has identified one prospective purchaser who apparently is aware of the condition of the property but may be willing to pay $700,000.00, the full appraised value of the Property, provided (i) the purchaser has an opportunity to inspect the Property prior to offering a contract; (ii) and the Debtor and the residents and their personal property are removed prior to closing.

********

Based on the record of the Emergency Hearing, it is clear the Debtor has failed to comply with the terms of this Court's orders, especially P176 and P272 [the June 24 Order and the September 17 Order, respectively].  It is also clear that the Debtor has not acted in accordance with the spirit of those orders, which above all required his cooperation with the Chapter 11 Trustee, which is after all a statutory duty of the Debtor under 11 U.S.C. § 523(3). The Court recognizes and understands that the Debtor would like to retain his home. That does not, however, excuse noncompliance with orders of this Court.

********

Understandably, the Debtor would like to defer that day of reckoning as long as possible… [1]

On November 5, 2004, the Chapter 11 Trustee filed a motion to sell the Property

pursuant to 11 U.S.C. § 363.  On November 11, 2004, Ms. Byrd filed a petition under

---

[1] Findings in Support of October 7, 2004 Orders (I) Granting (In Part)Chapter 11 Trustee's Emergency Motion for a Writ of Assistance and (II) Denying Debtor's Emergency Motion for A Stay Pending Appeal. Docket No. 297 at p. 3-5 (entered in case no. 01-25006).

Chapter 13 of the Bankruptcy Code, thereby halting the Chapter 11 Trustee's effort to sell the Property.

        3.      Efforts to sell the Property by the Second Chapter 7 Trustee.

       As noted above, on March 20, 2006, the Debtors' substantively consolidated Chapter 13 case was converted to a case under Chapter 7.  On April 19, 2006, the Second Chapter 7 Trustee filed a Motion to Enter Order Enforcing Court's Prior Orders Compelling Actions and Cooperation by the Debtors and Issuing a Writ of Assistance from the U.S. Marshal (the "Enforcement Motion").

       On August 17, 2006, the Court entered Order Authorizing Employment of Real Estate Broker in order to allow the Trustee to market and sell the Property.  Moreover, on August 23, 2006, the Court entered an Order Authorizing Employment of Moving Company.  That order provides that the Trustee is authorized to employ Begal Enterprises, Inc. ("Begal") to remove all personal property from the Property and to clean the interior of the Property, if necessary, upon the Trustee's request to the Court and notice to the Debtors.

**C.    NOTICE TO THE DEBTORS THAT THEY WILL BE REQUIRED TO VACATE THE PROPERTY**

       The Debtors have been on notice since at least shortly after the chapter 13 case was converted to chapter 7 in March, 2006, that the Trustee would seek to have them removed from the Property.  On April 19, 2006, the Second Chapter 7 Trustee sent a letter requesting that the Debtors commence cleaning the Property to place it in marketable condition and requested that they plan to vacate the premises within thirty days.  In that letter, the Second Chapter 7 Trustee stated:

> We suggest that Mrs. Byrd, you [Mr. Byrd] and any other occupants of the Property plan to vacate the premises within the next thirty (30) days. If Mrs. Byrd, you or the occupants choose to stay, they and you remain at their and your own risk. In particular, you have expressed concern over whether you will be able to adequately represent your clients if you had to quickly move your practice to a new location. We suggest that you immediately commence moving your law practice to another location.

Letter to Debtors Dated April 19, 2006.  Nothing in the record suggests that the Debtors took any steps to vacate the Property or to prepare for an orderly transition of Mr. Byrd's law practice to a new location at any time since the April 19 letter.

More recently, on June 15, 2006, this Court held a hearing on the Trustee's Enforcement Motion.  That motion had been unopposed at the time of the June 15 hearing.  Docket No. 334 at p.109.  The Court was prepared to grant that motion but stay its enforcement for thirty days.  Id. at p. 113.  The order proposed by the Trustee which the Court was prepared to enter included a writ of assistance to the U.S. Marshall to assist the Trustee, among other things, "to remove all occupants from the Property, to oversee the removal of any and all contents of the Property to the street and to assist the Trustee in changing the locks and securing the Property."  Proposed Order at Docket No. 284 at p. 3.  At the June 15 hearing, the Debtors pledged that they would cooperate with the Trustee and requested that the Court not enter the order even after thirty days "if, after thirty days, you can see that things are moving smoothly."  Docket No. 334 at p. 114-115. The Court expressly agreed to give the Debtors "one more chance here to cooperate," id., and further stated:

> The Court:    But at this point, Mr. Byrd, there are two writs of assistance issued to Mr. Johnson.

Mr. Byrd:        Yes.

The Court:        I am saying, because this would be easier and less expensive for everybody, including yourself, to go forward on a cooperative basis. We will give it a try.

Mr. Byrd:        Yes.

The Court:        But it's the ---

Mr. Byrd:        I understand.

The Court:        You understand what I'm saying.

Mr. Byrd:        I understand.  I understand loud and clear.

Id. at p. 116-117.

Next, the Trustee provided oral notice to the Debtors on September 15, 2006, that he wanted all individuals and contents removed from the Property on or before October 15, 2006.  The Trustee confirmed in writing his notice to the Debtors to vacate the Property by letter dated September 18, 2006.  In this letter the Trustee reiterated his request that the Debtors be prepared to vacate the Property within 30 days.  In particular, the Trustee stated:

> Mr. Johnson indicated that Mrs. Byrd and you should vacate the Property by October 15, 2006, which was 30 days from the date he had such a discussion with you. We ask that you remove all of the contents of the Property by such time.  At the very least, we strongly suggest that you remove all personal property that you deem important or valuable.  It is likely that the business hired to remove the contents of the property and to clean the property will find it most efficient to place all contents of the Property in one or more commercial-sized dumpsters.  We are concerned that placing the contents of the Property at the side of the road will create a tremendous problem in your neighborhood.

Letter to Debtors dated September 18, 2006.  On the same day, the Trustee filed the instant Motion.

**D.      THE CONDITION OF THE PROPERTY**

The Trustee examined the Property in the fall of 2004 and examined it again (three times) in the past several months.  The Property is a single family residence located on an approximately 10 acre parcel.   The Trustee introduced into evidence 50 pictures of the Property taken during his recent inspections and testified at length, using the pictures as a "virtual tour", about the current condition of the Property.  The Trustee also presented 8 pictures of the Property that were taken in 2004, and testified at length about the condition of the Property in 2004 as compared to today.

The Court finds that the Property is in deplorable condition.  In no way could the Property be marketed or shown in its present condition except to an investor who would pay a steep discount from its value.  There is no working electricity in the basement.  The Debtors turn off the main water to the Property every day because of water leaks, and turn on the water temporarily only as needed.  The inside of the Property has apparent mold and mildew damage, and there appears to be substantial mold on the outside of the Property – particularly the roof – as well.  The Property is filled with papers, boxes, debris and other personalty[2] to the point where it is difficult to maneuver through the rooms in the house.  The outside of the Property also is littered with debris and the yard is completely overgrown and unkempt.  The Trustee has received an estimate from Begal that it would take 10 workers a total of 48 hours each – for a total of 480 worker hours at a cost of $38,000 – to clear the inside and outside of the Property of the personalty and

---

[2] After Mr. Byrd objected to the Trustee's characterization of the personalty littered throughout the inside and outside of the Property as "junk," the Trustee referred to it as "debris."

debris.  Whether this estimate is high or low, the Court has no doubt that the task to clear the Property of all the personalty will be a time-consuming job.

Because of the condition of the Property, the Trustee and the court-approved real estate agent are having a difficult time estimating the Property's fair value for purposes of listing and selling the Property.  In its current condition, they cannot determine the extent of the damage from the water leaks, the electrical problems or the apparent mold and mildew, or for that matter, make an accurate assessment of the Property's structural condition or mechanical systems.  They will only be able to make these determinations after the Property is cleared of the debris.

The Court further finds that the Property's condition has deteriorated since 2004, and continues to deteriorate.  This fact was established by the Trustee's testimony of the condition of the Property in 2004 and today, and by a comparison of the pictures offered into evidence by the Trustee from 2004 and today.  The Property is not being maintained and problems that existed in 2004 continue to exist, and have worsened since 2004. The testimony and pictures also established that there is more personal property in the house, and the outside of the Property is more littered and overgrown, today than in 2004.

**E.    THE LACK OF EQUITY FOR THE DEBTORS IN THE BANKRUPTCY ESTATE**

The Debtors have no equity in the bankruptcy estate and therefore no realistic expectation of receiving any distribution.  The Property is the only remaining valuable asset of the estate.  While recognizing the difficulty he faces in estimating the Property's value in its current condition, and qualifying his estimate in light of that difficulty, the Trustee, having inspected the Property with the court-approved real estate agent, believes that he may be able to sell the Property for $700,000 after he expends considerable funds

placing the Property in marketable condition.[3]  He estimates that the broker's commission and other costs of sale will be $50,000.

The Trustee's commission payable under 11 U.S.C. § 326(a) on the administration of estate funds of $650,000 (the net sales proceeds) would be approximately $35,000.  See 11 U.S.C. §326(a).  The Trustee estimates that the secured claims of the first and second trust holders to be $500,000.  In addition, the Court has allowed administrative claims in the total amount of approximately $144,000.[4]  The Court has recently entered an order under which an amount estimated to be $52,350 held by the Chapter 13 Trustee would be applied toward the approved administrative claims.  Docket No. 401.[5]  Accordingly, the current estimate of net funds available after current known or approved expenses is as follows:

| | | |
|---|---|---|
| Estimated Sale Price | | $700,000 |
| Less: | Costs of sale | ($ 50,000) |
| Less: | Trustee's commission | ($ 35,000) |
| Less: | Secured Claims | ($500,000) |
| Less: | Allowed Administrative Claims: | ($144,000) |
| Add: | Chapter 13 funds | $52,350 |
| Net Funds Available | | $23,350 |

---

[3] As an indication of both the value and the deteriorating condition of the Property, the Trustee had an offer to purchase the Property in 2004 for $700,000.  The Trustee believes he may be able to receive that price today only after expending considerable funds to prepare it for sale, including substantial costs just to remove the debris form the inside and outside of the Property.

[4] The Court approved fees and costs of the Chapter 11 Trustee and his counsel in the aggregate amount of $129,394.14. Docket Nos. 66 and 73 respectively, in Case No. 04-35620 by orders entered on March 28, 2005, and April 18, 2005.  In addition, the Court held a hearing on Dec. 1, 2006 on the application for administrative expenses of Platinum Financial Services (Docket No. 358).  At the conclusion of that hearing, the Court indicated that Platinum's application will be granted in the amount of $15,621.41.

[5] The exact amount of the funds held by the Chapter 13 Trustee was not established.  The amount of $52,350 was the amount that the Debtors asserted the Chapter 13 Trustee held.  Docket No. 331 at p.2.

Therefore, at the Trustee's current estimate of the Property's sale price, there will be $23,350 of net funds available, without taking into account  (1) the costs to clean the Property, remove the personalty from the inside and outside, and put the Property in marketable condition, which will be considerable; (2) the administrative costs of the bankruptcy case in the current Chapter 7[6]; (3) the administrative costs of the case incurred while it was in the initial Chapter 7, Chapter 11 or Chapter 13 that have not yet been filed or resolved[7]; or (4) any distribution to the pre-petition unsecured claims. There is no doubt that these costs and claims will exceed $23,350.  Therefore, the Court finds that the Debtors will not receive a distribution from this estate.

## II.      CONCLUSIONS OF LAW

### A.    11 U.S.C. § 704(a)(1) REQUIRES THE TRUSTEE TO SELL THE PROPERTY

Section 704(a) of the Bankruptcy Code sets forth a Chapter 7 trustee's duties. Section 704(a)(1) provides that the trustee "shall … collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. §704(a)(1).  The Bankruptcy Code provides a trustee with a number of tools to fulfill this duty.  Section 521(a)(4) provides that a debtor "shall … if a trustee is serving in the case, <u>surrender to the trustee all property of the estate</u>…."   11 U.S.C. §521(a)(4) (emphasis added). Section 363 authorizes a trustee, after notice and a hearing, to use, sell or lease property of the estate other than in the ordinary course of business.

---

[6] Counsel for the Trustee has recently filed an interim application for fees and expenses for services rendered from the conversion of the case to Chapter 7 through September 30, 2006 in the amount of $39,543 for fees and $2,469.93 for expenses.  Docket No. 460.

[7] Counsel for the Trustee also has included in the fee application (<u>see</u> n.6) a request for fees and services rendered while the case was in Chapter 13 in the amount of $39,943 for fees and $2,875.74 for expenses. Docket No. 460.

In this case, the Trustee filed the Motion pursuant to Section 521 seeking an order requiring the Debtors to turnover to him possession and control of the Property in anticipation of its sale.[8]   The Trustee plans to clean, market and sell the Property; indeed, as described in the Findings of Fact, either this Trustee or a prior Trustee has been attempting to do so for several years.  The Court previously approved the Trustee's retention of a real estate agent to list the Property for sale and assist the Trustee in selling the Property.  Docket No. 375.  The Court also previously approved the Trustee's retention of a cleaning and moving company in the event those services are needed. Docket No. 385.  The actions taken by the Trustee in anticipation of selling the Property are not unusual in a Chapter 7 case and are entirely consistent with the Trustee's duties.

**B.      THE DEBTORS DESIRE TO REMAIN IN THEIR HOME DOES NOT OVERRIDE SECTION 704(a)(1)**

The Debtors point out that Section 704(a)(1) requires the Trustee to act "as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. §704(a)(1).  They contend that they are "parties in interest" because they have a pecuniary interest in the Property.  They contend that the Court must consider their plight in determining whether to order the turnover of possession and control of the Property. In particular, the Debtors ask the Court to consider the disruption that moving will have on their lives and the effect moving will have on Mr. Byrd's home-based law practice. This Court concludes that, assuming the effect a turnover order will have on the Debtors

---

[8] The Debtors filed a motion to strike the Motion contending that it should have been brought as an adversary proceeding under Fed. R. Bank. Proc.7001. Docket No. 457.  The Court summarily denied the motion to strike as not filed in compliance with the local rules.  Docket No. 465.  At the December 1st hearing on the Motion, the Debtors sought to revive the motion to strike.  The Court treated the Debtors' argument at the hearing as an oral motion to reconsider the denial of the motion to strike.  The Court denied the oral motion to reconsider on the merits, because under the express provisions of Fed. R. Bank. Proc. 7001(1) a proceeding to compel the debtor to turnover or deliver property to the trustee is brought by motion, not adversary proceeding.

is a factor for the Court to consider in whether to grant the Motion, that factor does not override the Trustee's duty to sell the Property and administer the estate for the benefit of creditors, particularly in light of the time that has been given to the Debtors to prepare to vacate and the deteriorating condition of the Property.

First, the Court has misgivings as to the extent to which the Debtors are parties in interest in this case for purposes of Section 704(a)(1), or at least, what "interest" the Debtors seek to protect.   As the Debtors point out, the Fourth Circuit has interpreted the term "parties in interest" to include "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.  Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 756 (4th Cir. 1993).  A "pecuniary interest" is an interest that relates to or is of money.[9]

As set forth in Section E of the Findings of Fact, it is now clear that the Debtors will not receive a distribution from this estate.  See supra, Findings of Fact at Section E. Of particular concern to the Court is that it appears certain that the proceeds from the sale of the Property will be insufficient to pay the administrative claims of the bankruptcy case, much less make any distribution to the pre-petition unsecured creditors.

At the hearing on the Motion, the Trustee raised the issue of whether the Debtors have a sufficient pecuniary interest in this case to have continued standing to object to the sale of the Property, object to claims, or participate in other estate administration matters. See Willemain v. Kivitz, 764 F.2d 1019 (4th Cir. 1985) (Finding that an insolvent debtor was not a party in interest and lacked standing to object to a sale of estate assets because he had no pecuniary interest in the distribution of his assets among his creditors.)  The

---

[9]  "Monetary; consisting of money or that which can be valued in money." Black's Law Dictionary 782 (6th ed. 1991).

issue of the extent to which the Debtors continue to have standing to participate in this case will be addressed in the context of the particular case administration matters as presented by the Trustee or other parties.  For purposes of this ruling, the Court concludes that to the extent the Debtors have any remaining pecuniary interest in the Property or the estate, that interest is best served by having them vacate the Property and allowing the Trustee to attempt to maximize the recovery from its sale.

In connection with the Motion, the Court has fully allowed the Debtors to prosecute their objection to the Motion and participate in this contested matter. The Court has accepted the Debtors' contention that they are parties in interest for purposes of Section 704(1)(1) because they reside on the Property, and will address the Debtors' contention that the disruption that a turnover order will have to the Debtors' personal lives requires the Court to delay the sales process. The Court concludes that, for several reasons, any disruption the Debtors face does not warrant deferring the sale process mandated by Section 704(a)(1).

First, the Debtors have been on notice for four years that the Property would be sold if they were unsuccessful in their substantial efforts to prevent the sale in the bankruptcy cases.  See supra, Findings of Fact at Section B.  Thus the Debtors have long known that this "day of reckoning" would come if they did not convince a court to halt it. See supra at p. 6 quoting Docket No. 297 at p. 3-5 (entered in Case No. 01-25006).   .

Second, Section 704(a)(1) requires that the Trustee act "as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1)  The Debtors have had specific notice and opportunity since the case was converted to Chapter 7 eight months ago to make an orderly move of Mr. Byrd's law practice.  As described

further in the Findings of Fact, the April 19, 2006 letter by the Trustee, the relief sought

by the Trustee and the statements by the Court at the June 15, 2006 hearing, and the

September 18, 2006 letter by the Trustee all put the Debtors on notice that the Property

was going to be sold absent a stay.  See Findings of Fact at Section C.  The Debtors,

therefore, have had more than eight months notice in which to prepare to move from the

Property.[10]  Taking into account the two additional months the Debtors are being given to

vacate the Property under this ruling, see infra at page 20, the Debtors will have had 10

months from the conversion of this case to Chapter 7 to surrender property of the estate to

the Trustee. Ten months is an unusually long amount of time for a Chapter 7 debtor to

remain in possession of property of the estate and certainly is more than sufficient time to

meet the mandate of Section 704(a)(1).

Third, the Court finds the Debtors' claim that being required to vacate the

Property will cause substantial harm to Mr. Byrd's law practice was not supported by any

evidence they presented at the hearing.  The Debtors simply state that because Mr. Byrd

practices law out of the Property, the granting of the Motion will cause substantial harm

to that practice.  The Debtors offered no evidence whatsoever about any efforts they have

taken to search for alternative housing, whether they have the ability to relocate, or

---

[10] In their Opposition at page 2, the Debtors rely on In re DeMarco, 114 B.R. 121, 124 (Bankr. D. W. Va. 1990), in support of the proposition that they were not obligated to move from the Property without a court order.  Assuming this proposition is true, it affords the Debtors no relief.  First, the Trustee is seeking an order of removal in the Motion, consistent with the dictates of DeMarco.  Second, the Court is not granting the Motion because the Debtors have failed to comply with a prior order to vacate.  Rather, the prior efforts of the Trustees to have the Debtors removed from the Property and to sell the Property served as ample notice to the Debtors that this day would come if they were unsuccessful in preventing the sale through their efforts in the bankruptcy cases.  Whether the Debtors have violated the letter or spirit of prior Court orders is not before the Court in the Motion.

whether they have funds available to relocate, or the effect that moving will have on Mr. Byrd's law practice.[11]

This complete absence of any evidence offered by the Debtors of whether they have resources available to relocate is troublesome in light of the Debtors' ongoing statements and litigation position in the bankruptcy case.  First, the Debtors have stated that they continue to make monthly payments on the first and second deeds of trust against the Property, and therefore the Court concludes inferentially that they have various resources available to them.  More significantly, the Debtors filed a joint amended Chapter 13 plan in November 2005.  Docket No. 129.  At the confirmation hearing on the plan, the Debtors contended that the plan was feasible and should be confirmed.  They have appealed the denial of confirmation of the plan and continue to assert in this Court - and presumably on appeal - that the proposed amended plan is feasible and should be confirmed.  Under the Debtors' proposed amended plan, they were required to pay $2,850 per month during the first 10 months of the Chapter 13 case,[12] $3,500 per month during the next 12 months, and $6,052 per month for the next 38 months.  See Docket 129 at p.1.  The 22nd month anniversary of the Chapter 13 case has passed.  This means that the Debtors currently would have been required to pay $6,052 per month to the Chapter 13 Trustee under their plan, and would have been required to maintain those payments for 38 months.  By continuing to assert that their plan is

---

[11] As stated above, supra at p. 2, Mr. Byrd did not testify at the hearing or offer any evidence.  On cross-examination of the Trustee, he had the Trustee repeat statements to the effect that Mr. Byrd had told the Trustee during the Trustee's inspection of the Property that the Debtors did not have the funds to move out of the Property.  Because Mr. Byrd was at the hearing and available to testify, the Court does not accept as probative Mr. Byrd's out-of-court statements that he had the Trustee repeat on cross-examination.  Such self-serving hearsay is not an admission of a party-opponent and was not offered "against a party."  Fed. R. Evid. 801(c) and (d)(2) made applicable in bankruptcy by Fed. R. Bankr. P. 9017.  But see infra at n. 13.

[12] The payments required by the plan commence upon the filing of the initial plan, rather than the filing of the amended plan.  11 U.S.C. § 1326(a)(1).

feasible, the Debtors are essentially representing to the Court that they have $6,052 of income available each month to support the plan. The Court can only conclude that the Debtors failed to introduce any evidence of the resources available to them because of their ongoing effort to establish the feasibility of their plan: Either they have $6000 available to them each month to support a plan and therefore have substantial resources to find alternative living arrangement, or they do not have resources above the amounts they have to service the first and second deeds of trust and therefore do not have the ability to support the plan. In either event, the Court is left only to guess because the Debtors failed to introduce any evidence that relocating would cause them a hardship other than to simply argue that it would disrupt Mr. Byrd's law practice.[13]

## C.   THE DEBTORS HAVE NOT OBTAINED A STAY PENDING APPEAL AND THE PROPERTY CONTINUES TO DETERIORATE

Finally, the Debtors argue that "while critical rulings are on appeal" it is in the best interest of the estate to maintain the status quo pending the resolution of those appeals. This Court disagrees.

First, several of the Debtors' appeals to the District Court have recently been denied, including the appeal of the order denying confirmation of the Debtors' Chapter 13 plan and the appeal of the order converting the case to Chapter 7. See Docket No. 470.

Second, the Debtors have sought but have failed to obtain a stay of these rulings pending appeal. This is not for lack of trying. The Debtors have filed numerous motions

---

[13] The Court concludes that even if the Court accepts the self-serving hearsay statements of Mr. Byrd to the Trustee that he does not have the resource to move, see supra at n. 11, the Court nevertheless would grant the Motion because (1) the deteriorating condition of the Property is harmful to the estate; (2) the Debtors have had ample notice and opportunity that they would be required to move; and (3) the Byrd's failed to introduce any evidence of the harm to them that would result from an order to vacate.

for reconsideration, motions for stay pending appeal, and notices of appeal. At least the Bankruptcy Court, and presumably the District Court as well since this Court is not aware that any stay has been granted, has reviewed the Debtor's stay motions under the well established four-prong test and has ruled that the Debtors are not entitled to a stay pending appeal. See e.g., Docket Nos. 469, 422, 341, and 326.

Third, the Court finds and concludes that the Debtors have failed to maintain the Property and its deteriorating condition is harmful to the estate. See supra, Findings of Fact at Section D. At least as early as October 7, 2004, this Court concluded that the Property was in "deteriorating condition" and that the Debtors "conceded …. the Property is not being kept up…." See supra, at p. 6 quoting Docket No. 297 at p. 4 (entered in Case No. 01-25006). As this Court finds in the Findings of Fact, the evidence adduced by the Trustee at the hearing on the Motion establishes overwhelmingly that the Property continues to deteriorate and that it is not being properly maintained. Supra Findings of Fact at Section D. Accordingly, the Court concludes that it is in the best interest of all parties for the Debtors to vacate the Property to allow the Trustee to administer the Property for the benefit of the estate.

 **D.    TIMING OF REMOVAL**

The Trustee requested an order requiring the Debtors to vacate the Property by January 15, 2007 with a writ of assistance to the United States Marshall to remove the Debtors and their belongings if they have not vacated by that date. At the conclusion of the December 1 hearing, the Court informed Mr. Byrd that it intended to issue a written opinion but, so that the Debtor would have notice at the time of the December 1 hearing that they would be required to vacate, further informed the Debtors that it was going to

grant the Motion.  After the Debtors pledged to keep the first and second deeds of trust payments current as consideration for their continued possession of the Property, the Court announced that it would require the Debtors to vacate by January 31, 2007. Accordingly, at the December 1 hearing, the Debtors were given 62 days notice that they must vacate the Property.  The Court further finds that if the Debtors have not vacated the Property by January 31, 2007, then they clearly do not intend to voluntarily vacate and the Trustee shall be entitled to employ the services of the United States Marshal to take exclusive possession of the Property at any time after that date.

### III.   CONCLUSION

For the foregoing reasons, the Court shall enter an order granting the Motion and requiring on or before January 31, 2007 that the Debtors vacate the Property, and remove all of their belongings and personal property that they desire to keep unless the Trustee specifically directs them to leave to any particular items of personal property that is property of the estate.  The order shall also require the Debtors to keep the first and second deeds of trust current as consideration for their possession of the Property, and shall provide a writ of assistance to the United States Marshall to assist the Trustee in removing the Debtors or their belongings on and after February 1, 2007.

Copies to:

Debtors
Trustee
Office of the U.S. Trustee
All Parties on the Mailing Matrix

### END OF ORDER