Date signed May 18, 2007



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In re: | * | |
| | * | **Case No.  04-35620-TJC** |
| **Ralph T. Byrd** | * | |
| **Beverly S. Byrd** | * | |
| | * | |
| **Debtors** | * | **Chapter 7 (Consolidated** |
| | * | **with No. 01-25006)** |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OF DECISION</u>

Before the Court is the Emergency Motion for Relief Due to Violations of the

Automatic Stay (the "Motion") filed by Gregory P. Johnson (the "Trustee") on May 7,

2007.  Docket No. 549.  In the Motion the Trustee seeks, among other things, an

injunction and sanctions against Ralph T. and Beverly S. Byrd (the "Debtors") and

Stanton P. Byrd, Ralph Trevor Byrd and Mark S. Byrd (collectively with the Debtors, the

"Respondents").  The Trustee seeks this relief for two reasons.  First, the Trustee

contends that the Respondents violated the automatic stay by filing a complaint in state

court seeking, *inter alia*, to impose a constructive trust on the property known as 4901

Sundown Rd, Laytonsville, MD 20882 (the "Property").  Second, the Trustee contends that the Respondents violated the Barton Doctrine[1] by filing and maintaining the state court action against the Trustee, Mr. Roger Schlossberg, the initial Chapter 7 trustee in the predecessor bankruptcy case of Ralph Byrd, Case No. 01-25006, and Shulman, Rogers, Gandal, Pordy & Ecker, P.A., which serves as counsel to the Trustee and served as counsel to Mr. Schlossberg.   The Trustee seeks compensatory and punitive damages against the Respondents for their willful violations of the automatic stay and the Barton Doctrine.  The Debtors have filed an opposition to the Motion, and assert that they have not violated the automatic stay, that the claims in the state court complaint do not violate the Barton Doctrine, and that their claim for a constructive trust against the Property survives this Court's prior order authorizing the sale of the Property free and clear of all liens, claims, interests and encumbrances.

The Trustee sought an emergency hearing on the Motion, alleging that Respondents' state law complaint, and a lis pendens they filed against the Property in conjunction with the complaint, has disrupted the pending sale of the Property previously authorized by this Court.  The Trustee alleges that the sale is scheduled to close by May 18, 2007, but the sale is jeopardized by the Respondents' actions.

On May 9, 2007 the Court entered an order granting the Trustee's motion to shorten the time to respond to the Motion to May 14, 2007, and initially set an emergency hearing on the Motion for May 16, 2007.  The Court then rescheduled the hearing for May 23, 2007 to accommodate Mr. Byrd's schedule.  However, the Court has reviewed the briefs, all of the exhibits submitted therewith, and the pertinent authorities.  In

---

[1] As discussed further herein, the Barton Doctrine holds that a bankruptcy trustee cannot be sued for claims arising from his administration of the estate without the plaintiff first seeking leave of the bankruptcy court.

particular, the Debtors do not dispute that they filed the state court complaint that is the subject of the Motion.  The only dispute between the parties for purposes of this ruling is the legal consequence of that filing. Accordingly, oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the parties' briefs and the exhibits submitted in support, and argument would not aid in the decisional process. See Local Rule 9013-1(b)(4).

For the reasons stated herein, the Court finds and concludes that (1) this Court has exclusive jurisdiction over the Property – which is unquestionably property of the bankruptcy estate in this case – pursuant to 28 U.S.C § 1334(e); (2) Respondents' effort to obtain a constructive trust over the Property is a violation of the automatic stay of 11 U.S.C. § 362(a)(3); and (3) the Respondents' lawsuit against the Trustee, the predecessor trustee, and their counsel in state court for actions taken in the performance of the trustees' duties is a violation of the Barton Doctrine.

Accordingly, the Court will enter an order (1) enjoining the Respondents from filing, pursuing or maintaining any action in state or federal court, seeking to obtain possession, custody, control or any interest in or to the Property; (2)  enjoining the Respondents from taking any other action, including but not limited to, filing a lis pendens against the Property, seeking directly or indirectly to obtain possession, custody, control or any interest in or to the Property or otherwise taking any action that will encumber the Property; (3) enjoining the Respondents from taking any other action, including but not limited to, filing a lis pendens against the Property, that has the intent or effect of hindering, delaying or preventing the sale of the Property by the Trustee pursuant to the order of this Court; (4) enjoining the Respondents from filing, pursuing or

3

maintaining any action in state or other federal court seeking a remedy against the Trustee, the predecessor trustee or their counsel, for actions they have taken in the performance of their duties in this bankruptcy proceeding, or in the predecessor bankruptcy case of Ralph Byrd, Case No. 01-25006, without first seeking and obtaining leave of this Court; and (5) that declares that the complaint filed in state court is void as a violation of the automatic stay to the extent it seeks to impose a constructive trust against the Property.  The order shall provide, however, that the Respondents shall not be prohibited from seeking relief in this Court in connection with any of the foregoing, or review of orders of this Court in the United States District Court for the District of Maryland, the United States Court of Appeals for the Fourth Circuit, or the United States Supreme Court.  Finally, the Court will set for hearing the Trustee's request for damages and sanctions for the violations of the Barton Doctrine and the automatic stay.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) & (O).  The following constitutes the Court's findings of fact and conclusions of law:

## I.     FINDINGS OF FACT

### A.     PROCEDURAL BACKGROUND

This case, and its predecessor bankruptcy case of Ralph Byrd, Case No. 01-25006, has a long and protracted history that spans more than five years.  The Court previously entered a memorandum of decision that recounted much of the entire history of this case.  See, Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville,

MD, Docket No. 480 (the "Memorandum of Decision") at p. 2-7. Thus, only the procedural background pertinent to the Motion will be repeated here.

On December 14, 2001, Platinum Financial Services Corp. filed an involuntary petition against Mr. Byrd under Chapter 7 of the Bankruptcy Code, initiating Case No. 01-25006. On July 17, 2002, this Court entered an order for relief under Chapter 7 and Mr. Roger Schlossberg was appointed the Chapter 7 Trustee the next day (the "First Chapter 7 Trustee"). On January 24, 2003, the District Court reversed the entry of the order for relief. Thereafter, this Court entered an Order Staying All Matters and Continuing All Hearings on April 15, 2003. On February 11, 2004, the United States Court of Appeals for the Fourth Circuit reversed and remanded the District Court's decision reversing the entry of the Order for Relief.

On June 25, 2004, this Court entered an order converting the case from Chapter 7 to Chapter 11 at Mr. Byrd's request. Docket No. 183 in Case No. 01-25006. On July 23, 2004, the Trustee was appointed the Chapter 11 trustee. Beverly Byrd, Ralph Byrd's wife, filed her petition under Chapter 13 on November 11, 2004, thus initiating Case No. 04-35620. The Trustee, then serving as the Chapter 11 trustee in Mr. Byrd's case, filed a motion to substantively consolidate Ralph's and Beverly's bankruptcy proceedings into Case No. 04-35620. That motion was granted with the consent of the Debtors on January 12, 2005, by the entry of the Consent Order. Docket No. 49 in Case No 04-35620. The Debtors' consolidated bankruptcy case was converted to Chapter 7 of the Bankruptcy Code on March 20, 2006. Docket No. 249. The Trustee was subsequently appointed the Chapter 7 trustee and continues to serve in that position.

On September 18, 2006, the Trustee filed the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD (the "Removal Motion"). Docket No. 402. The Trustee sought a court order requiring the Debtors to vacate the Property by a date certain and a writ of assistance from the United States Marshall in the event the Debtors did not do so. On October 5, 2006, the Debtors filed an opposition to the Removal Motion. Docket No. 418. The Court held a hearing on the Removal Motion on December 1, 2006.

At the hearing, Mr. Byrd, an attorney who is representing himself and his wife in this case, cross-examined the Trustee but did not testify or submit any evidence or exhibits. At the conclusion of the hearing, the Court announced that it would issue a written decision, but informed Mr. Byrd that it was going to grant the Removal Motion and that the Debtors would be required to vacate the Property by January 31, 2007. As a result, on December 1, 2006, the Debtors were given 61-days notice of the need to vacate the Property.

On December 11, 2006, the Court issued the Memorandum of Decision, Docket No. 480, granting the Removal Motion and entered an order of removal. In the Memorandum of Decision, the Court found and concluded, among other things, that:

(1) The Trustee is required to market and sell the Property pursuant to 11 U.S.C. §704(a)(1).

(2) The Debtors had been advised in April 2006, and a number of times since then, that they would be required to vacate the Property, and during that time were implored on several occasion by the Trustee to move from the Property, including moving Mr. Byrd's law practice. Taking into account the additional 61 days given to the Debtors at the December 1st hearing, the Debtors would have 10 months from the time the case was converted to chapter 7 to turnover the Property to the Trustee, which was a substantial and adequate amount of time to relocate.

(3) The Property is in deplorable and deteriorating condition and the estate is being harmed by delay.

(4) The Debtors failed to submit any probative evidence on the harm to the Debtors from requiring them to vacate the Property, other than to simply state that moving would negatively affect Mr. Byrd's law practice.

(5) The Debtors failed to submit any probative evidence on what resources the Debtors had available to them to relocate, which failure was illuminating considering that the Debtors continued to contend that they can comply with their previously-proposed Chapter 13 plan that requires them to make monthly payments in excess of $6,000.00

The Debtors never appealed the Memorandum of Decision or the order approving the Removal Motion.

On March 23, 2007 the Trustee filed the Motion for Order Authorizing Trustee to Enter into Sales Agreement and Approving Sale of Certain Real Property Free and Clear of All Liens, Claims, Interests and Encumbrances (the "Sale Motion"). Docket No. 527. In the Sale Motion, the Trustee sought approval of a contract to sell the Property to prospective purchasers, Richard and Jenine Clonch (the "Clonchs") for $735,000. The Debtors filed an opposition to the Sale Motion on April 12, 2007. Docket No. 537. A hearing on the Sale Motion was held on April 23, 2007.

Prior to the hearing, another party, Fidos for Freedom, came forward and expressed an interest in purchasing the Property. Consequently, the Trustee conducted an auction to allow for competitive bidding on the Property. Upon completion of the auction, the hearing on the Sale Motion commenced and the Trustee informed the Court that the Clonchs were the winners of the auction with a bid of $805,000.

Notwithstanding the new sales price, the Debtors continued to object to the sale. The Trustee testified that, in his business judgment, the proposed sale was in the best interest of the estate. Among other reasons, the Trustee testified that (1) by not listing the

7

Property, the estate did not have to pay a six percent brokers fee;[2]  (2) the Property was being sold "as is," without any warranties; (3) the estate held no funds which could be used to fix up the Property, which the Court had previously found was in deplorable and deteriorating condition; (4) the first and second deed of trust loans against the Property continued to accrue interest, thereby eroding the equity in the Property available to the estate; and (5) after entering into the initial sale contract with the Clonchs, they provided him with a copy of their appraisal of the Property, which reflected a fair market value of less than the sale price, and which reinforced the Trustee's view that the sale was in the best interests of the estate.

At the conclusion of the hearing, the Court approved the sale over all of the Debtors' objections.  The Court found that the Trustee had properly exercised his business judgment in approving the sale, the sale of the Property as proposed was fair and reasonable and was being proposed for a sound purpose and in good faith.  The Court entered the order approving the sale on April 25, 2007 (the "Sale Order").  The Sale Order is on appeal.

## B.    FINDINGS OF FACT RELATED TO THE MOTION

On April 23, 2007, on the same day as the hearing on the Sale Motion but without disclosing it to the Court or apparently the Trustee, the Respondents filed a Complaint for Abuse of Process and Civil Conspiracy and Constructive Trust for 4901 Sundown Road,

---

[2] The Trustee had previously employed, with Court approval, a real estate agent to assist him in determining an appropriate sale price, a marketing strategy and the like. The Trustee is obligated to pay the real estate agent $5,000 for these services even though the Property was not listed. The Trustee has concluded this arrangement is in the best interest of the estate because the Trustee would have had to pay the agent $48,300 ($805,000 x 0.06) if the Property had been listed.  The Trustee concluded that, because there was sufficient interest in the Property, listing it in the face of a bona fide contract would have generated a broker's commission without the attendant benefit to the estate.

Laytonsville, MD and Demand for Jury Trial (the "Complaint") in the Circuit Court for Montgomery County.

Along with the Debtors' opposition to the Motion, the Debtors filed as an exhibit a document entitled Amended Complaint for Abuse of Process and Civil Conspiracy and Constructive Trust for 4901 Sundown Road, Laytonsville, MD and Demand for Jury Trial (the "Amended Complaint"). The Amended Complaint is not signed and it is not clear if the Amended Complaint has been filed in the state court action. The Amended Complaint adds several allegations to the Complaint which will be discussed herein as appropriate.[3]

In both the Complaint and the Amended Complaint, the Respondents name, among other defendants, the Trustee, the First Chapter 7 Trustee, and Shulman, Rogers, Gandal, Pordy & Ecker, P.A., which serves as counsel to the Trustee and served as counsel to the First Chapter 7 Trustee (collectively, the "Bankruptcy Defendants"). Both the Complaint and the Amended Complaint assert three counts for relief.

In count one, the Respondents seek compensatory and punitive damages from the defendants, including the Bankruptcy Defendants, for abuse of process. In particular, the Debtors aver that "…the defendants [including the Bankruptcy Defendants] misused the legal process for an improper purpose, namely as a device to disrupt and cripple Ralph Byrd's law practice in an effort to destroy Ralph Byrd's ability to represent clients in credit card collection cases…and to subject Ralph Byrd's law practice to catastrophic disruption just prior to oral argument in the Court of Appeals." See Complaint at ¶ 51; Amended Complaint, at ¶ 57.

---

[3] As set forth herein, having reviewed both the Complaint and Amended Complaint in detail, the Court's conclusion that the Respondents violated the automatic stay and the Barton Doctrine would be no different whether or not they have filed the Amended Complaint.

9

In count two, the Respondents seek compensatory and punitive damages for civil conspiracy. Specifically, the Respondents posit that "The Defendants [including the Bankruptcy Defendants] acted in concert and with the common purpose of disrupting and crippling Ralph Byrd's law practice in an effort to destroy Ralph Byrd's ability to represent clients in credit card collection cases…and subject Ralph Byrd's law practice to catastrophic disruption just prior to oral arguments in the Court of Appeals." Complaint at ¶ 53; Amended Complaint at ¶ 59.

In count three, the Respondents seek to impose a constructive trust against the Property as an equitable remedy. The Respondents aver that the Trustee "…is presently preparing to sell it [the Property] below market value, without advertising the property, in an effort to quickly consummate and make permanent the disruption and crippling of Ralph Byrd's law practice in an effort to destroy Ralph Byrd's ability to represent clients in credit card collection cases…." Complaint at ¶ 55; Amended Complaint at ¶ 61.

 In addition, the Respondents seek an order requiring the Trustee "to convey all of his right, title and interest in the property at 4901 Sundown Road, Laytonsville, Maryland 20882 to Plaintiffs Ralph and Beverly Byrd free from all liens, mortgages and other encumbrances…." Complaint at p. 13; Amended Complaint at p. 14.

The Amended Complaint seeks compensatory damages of $1 million and punitive damages of $10 million. Id.

On May 7, the Trustee filed the instant Motion. In the Motion the Trustee seeks a declaration that the Respondents have violated the automatic stay by seeking to impose a constructive trust on the Property. In addition, the Trustee contends that the Respondents violated the Barton Doctrine and seeks to enjoin the Respondents from filing and/or

maintaining lawsuits and appeals in state and federal courts regarding the liquidation or administration of the bankruptcy estate without leave of the Court.

In the Debtors opposition to the Motion, they dispute that they have violated the automatic stay or the Barton Doctrine. They also contend, for the first time in this case, that their claim for a constructive trust against the Property survives this Court's prior order authorizing the sale of the Property free and clear of all liens, claims, interests and encumbrances.[4]

## II.    CONCLUSIONS OF LAW

### A.    THE COMPLAINT VIOLATES THE AUTOMATIC STAY TO THE EXTENT IT ASSERTS A CONSTRUCTIVE TRUST OVER THE PROPERTY.

The Trustee contends that the Complaint violates the automatic stay to the extent it seeks to obtain or assert a constructive trust over the Property. This Court agrees.

Commencement of a bankruptcy case creates an estate that is comprised of all of the debtor's legal and equitable interest in property. See 11 U.S.C. § 541(a)(1). The district court, or the bankruptcy court to which the bankruptcy case is referred, has exclusive jurisdiction over all property of the estate wherever located. 28 U.S.C. §1334(e). Property of a bankruptcy estate receives significant levels of protection from the post-petition reach of creditors and third parties through the automatic stay provisions of the Bankruptcy Code. With some exceptions, the filing of a petition under the bankruptcy code

---

[4] Ralph Byrd is an attorney and signed the Complaint on behalf of all of the plaintiffs. In the Debtors' opposition to the Motion, Mr. Byrd states that he is only representing himself and Mrs. Byrd in this bankruptcy case, and not the remaining Respondents, Stanton P. Byrd, Ralph Trevor Byrd and Mark S. Byrd, who have previously been identified to this Court as the Debtors' adult sons. Because Stanton P. Byrd, Ralph Trevor Byrd and Mark S. Byrd were parties to the filed Complaint and therefore were parties to the violations of the automatic stay and the Barton Doctrine, the Court will include them in the prospective relief granted herein. Whether they have received notice of these proceedings or the order entered by this Court pursuant to this ruling will be addressed in further proceedings as necessary.

(a)…operates as a stay, applicable to all entities, of—

\*\*\*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate…

11 U.S.C. § 362(a)(3).  "The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."  United States v. Gold (In re Avis), 178 F.3d 718, 721 (4th Cir. 1999) (quoting In re Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982))

The filing of a complaint seeking a constructive trust against property of the estate is a violation of the automatic stay.  See, Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.), 423 F.3d 567 (6th Cir. 2005).  In Amedisys, a creditor initiated a lawsuit in state court naming a non-debtor bank as the defendant.  In that suit, the creditor sought, among other things, the imposition of a constructive trust over property of the estate, namely, accounts receivable that were being held by the bank.  On the motion brought by the debtor, the bankruptcy court found that the action violated the automatic stay of Section 362(a)(3).  As a result, the bankruptcy court found that the action was void and enjoined the creditor from further prosecuting that action.  The district court affirmed the bankruptcy court's ruling and the creditor appealed.

On appeal, the creditor argued that the bankruptcy court exceeded its jurisdiction because the state court action was not related to the bankruptcy case under 11 U.S.C. § 1334(b).  Further, the creditor argued that the bankruptcy court improperly enjoined it from pursuing the state court action under Section 105(a) of the Bankruptcy Code

because it made no findings warranting an injunction and the debtor did not bring an adversary proceeding seeking that injunction.

The Court of Appeals for the Sixth Circuit affirmed the bankruptcy court and district court's rulings.  Initially, the court found that a bankruptcy court has jurisdiction to enforce the automatic stay and that such a motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  In addition, the court found that the action brought by the creditor violated the automatic stay of Section 362(a)(3) because the creditor sought to exercise dominion over property of the estate.  The court further found that a bankruptcy court may enjoin a party from prosecuting an action that violates the automatic stay as part of its powers to enforce the stay without relying on Section 105(a) to impose an injunction.

In the instant case, the Respondents seek a constructive trust over the Property in the Complaint.  In particular, they seek an order requiring

> Defendant Gregory P. Johnson, as constructive trustee, to convey all of his right, title, and interest in the property at 4901 Sundown Road, Laytonsville, MD 20882 to Plaintiffs Ralph and Beverly Byrd free from all liens, mortgages and other encumbrances and upon such terms as the Court considers appropriate.

Complaint at p. 13.  The Court has no difficulty in determining that the Respondents violated the automatic stay of Section 362(a)(3) by filing the Complaint to the extent it asserts a constructive trust over the Property.  Just like in Amedisys, the Respondents are seeking to impose a constructive trust over property that is unquestionably property of the estate.  Such an action is clearly a violation of the automatic stay because the Respondents are using the Complaint to "assert dominion over" property of the estate.  Amedisys, 423 F.3d at 575. Accordingly, the Court finds and concludes that the

Respondents violated the automatic stay of 11 U.S.C. § 362(a)(3) by filing the Complaint asserting a claim for constructive trust against the Property.

Further, the record reflects that the Respondents filed a lis pendens publicizing their claim of constructive trust against the Property. There is some question as to whether the filing of a lis pendens notifying potential purchasers of a valid and proper claim against property of the estate is itself a violation of the automatic stay. See In re Knightsbridge Dev. Co., Inc., 884 F.2d 145 (4th Cir. 1989). The Court need not address this issue, however. In this case, the Court has found and concluded that the Respondents violated the automatic stay by filing a Complaint seeking a constructive trust over the Property. As such, whether or not the filing of the lis pendens alone would be a violation of the automatic stay, the filing of the lis pendens served to publicize the violation, thus exacerbating the effect of the violation of the stay. Accordingly, under the authority of 11 U.S.C. §§105[5] and 362, the Court will enter an order declaring the lis pendens void and of no effect in order to supplement the relief awarded for the violation of the automatic stay resulting from the filing of the Complaint.

Therefore, the Court finds and concludes that the Complaint violates the automatic stay to the extent the Respondents seek to impose a constructive trust over the Property. The Court will enter an order declaring that the Complaint is void to the extent it seeks to impose a constructive trust against the Property. Further, based on the violation of the automatic stay as described above, the Court will enjoin the Respondents from continuing to prosecute the Complaint or filing or prosecuting the Amended Complaint with respect to their claim of constructive trust against the Property. The

---

[5] 11 U.S.C. § 105(a) provides in pertinent part that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Court will also enjoin the Respondents from taking any other action to assert dominion or control over the Property or to hinder or delay the sale of the Property as authorized by this Court.  The order will declare the lis pendens void and of no effect.  Finally, the Court will set a hearing on the Trustee's claim for sanctions for violating the automatic stay.

### B.    THE RESPONDENTS VIOLATED THE BARTON DOCTRINE BY FILING THE COMPLAINT WITHOUT LEAVE OF COURT.

The Trustee contends that Respondents violated the Barton Doctrine by filing the Complaint against the Bankruptcy Defendants without first seeking leave of this Court. This Court agrees.

In Barton v. Barbour, the Supreme Court established a long-standing rule that before suit can be brought against a receiver, leave of the court that appointed the receiver must be obtained.  See Muratore v. Darr, 375 F.3d 140, 143 (1st Cir. 2004) (citing Barton v. Barbour, 104 U.S. 126, 127 (1881)).  This general principle has become known as the "Barton Doctrine."  "[C]ircuit courts have extended the Barton Doctrine to lawsuits against a bankruptcy trustee."  Darr, 375 F.3d at 143 (quoting Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000); In re Linton, 136 F.3d 544, 545 (7th Cir. 1998); Lebovits v. Scheffel (In re Lehal Realty Assocs.), 101 F.3d 272, (2d Cir. 1996)  Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993) ("It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court.").[6]

---

[6] Although the Fourth Circuit Court of Appeals has not adopted the Barton Doctrine in a published opinion, it did so in an unpublished opinion.  See Gordon v. Nick, 1998 U.S. App. LEXIS 21519, 5-6 (4th Cir. 1998) (unpublished)

Indeed, "an unbroken line of cases" has imposed, as a matter of federal common law, the requirement that leave must be obtained from the bankruptcy court before suit can be brought against the bankruptcy trustee.  <u>Linton</u>, 136 F.3d at 545.  The Barton Doctrine applies to suits brought against trustees in federal or state court.

The Barton Doctrine serves several important policy concerns.  In <u>Linton</u>, the United States Court of Appeals for the Seventh Circuit aptly articulated the importance of the Barton Doctrine to bankruptcy proceedings.

> At stake in the present case…is concern with the integrity of the bankruptcy jurisdiction. If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa. A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor. A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.

<u>Id</u>.  Similarly, as cited approvingly by the United States Court of Appeals for the Second Circuit:

> The Bankruptcy Court has overseen all aspects of the case and the entire record here was developed under the court's supervision. . . . .The Bankruptcy Court is uniquely situated to determine any issue regarding the appropriateness or good faith of the trustee's action. Because the trustee is an officer of the Bankruptcy Court, the Bankruptcy Court and this Court has an overriding interest in his administration of the estate. We have an institutional interest in holding our trustees fully responsible for breaches of their fiduciary duty, including the duty to exercise due care.

<u>Scheffel</u>, 101 F.3d at 277.  At the same time, the courts "have an equally vital institutional interest in protecting our trustees from being mulcted into another court on frivolous or trumped up charges." <u>Id</u>.

The Barton Doctrine protects not only the trustee, but also other court-appointed officers who represent the bankruptcy estate, including the attorney of the trustee. <u>Weitzman</u>, 991 F.2d at 1241.  Counsel for trustees and court appointed officers who represent the estate, are "the functional equivalent of a trustee" where they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.  <u>Id</u>.

In this case, the Court finds and concludes that the Barton Doctrine applies to the claims asserted in the Complaint against the Bankruptcy Defendants.  The essence of the Complaint is that the Bankruptcy Defendants conspired with other defendants to deprive Ralph Byrd of his ability to practice law.  The Complaint alleges counts based on abuse of process and conspiracy, and asserts a count for constructive trust based on the alleged abuse of process and conspiracy claims.

The Complaint contains allegations of fact based on the actions of the Bankruptcy Defendants primarily in paragraphs 28, 31, 32, 33, 34, 40, 41, 43, 45 and 46.  Paragraph 46 does not allege particular actions taken by the Bankruptcy Defendants, but asserts that the parties acted in bad faith and with improper intent.  All of the remaining above-listed paragraphs assert particular actions taken by the Bankruptcy Defendants.  Stripped of their rhetoric, each of these paragraphs asserts or describes actions that were taken by the Bankruptcy Defendants in the bankruptcy case and/or in the course of administering the bankruptcy estate.  As such, the claims fall squarely within the Barton Doctrine in that

they assert causes of action based on actions taken by bankruptcy professionals in the course of administering the estate.

Further, even if the Court were to consider the additional allegations contained in the Amended Complaint, see supra at p. 8-9, those allegations do not relieve the Amended Complaint from the application of the Barton Doctrine. As it relates to the Bankruptcy Defendants, the Amended Complaint adds new paragraphs 35 and 37, neither of which assert any different factual allegations and both of which allege essentially that the Bankruptcy Defendants acted with improper intent and in bad faith.

The Court disagrees with the Debtors that the Barton Doctrine does not apply because they have brought these claims as conspiracy and abuse of process claims. Courts have not hesitated to apply the Barton Doctrine to such claims where the claims are based on actions taken by the bankruptcy professionals in the course of administering the bankruptcy estate. For example, in the Darr case, the plaintiff filed an action against the bankruptcy trustee asserting claims remarkably similar to those raised by the Respondents in the Complaint and Amended Complaint. There, the plaintiff claimed that the trustee

> committed abuse of process by committing waste so egregious that his advisors and/or employees used Chapter 11 protection procedures to put [plaintiff] out of business rather than assist in reorganizing [plaintiff's] business. [Plaintiff] further alleged that 'such use of [the trustee's] powers constitutes use of judicial appointment and proceedings in bankruptcy for an ulterior purpose, to wit, to make it impossible for [plaintiff] to conduct business and to earn a living from his business.'

Darr, 373 F.3d at 142-143 (emphasis added). The Court found that the Barton Doctrine applied to the plaintiff's claims and dismissed the complaint. See also Weitzman, 991 F.2d at 1239, 1241 (dismissing claims against the trustee's counsel for abuse of process

and malicious prosecution as a violation of the Barton Doctrine.)[7]   Similarly, this Court

concludes that the Barton Doctrine applies to the claims against the Bankruptcy

Defendants in the Complaint and the Amended Complaint, because the Bankruptcy

Defendants' actions upon which the Respondents claims are based were taken in

furtherance of the administration of the estate.

    Finally, the Court notes that the only question before it is whether the Barton

Doctrine applies to the claims against the Bankruptcy Defendants.  For the reasons stated

above, the Court finds and concludes that the doctrine applies.  If and when the

Respondents comply with the Barton Doctrine and seek the appropriate leave of Court,

all parties will have an opportunity to address whether such leave should be granted.

    The Court further notes, however, that it appears that many, if not all, of the

Bankruptcy Defendants' actions described the complaints were either (1) approved by the

bankruptcy court or, in the case of the appeal described in paragraph 28, granted by the

United States Court of Appeals for the Fourth Circuit; or (2) taken subject to bankruptcy

court order or rule.  Moreover, on two prior occasions, the Debtors have filed motions to

remove the Trustee based on, among other reasons, their claim that the Trustee acted in

bad faith and with improper intent, engaged in unlawful conduct, lacked

disinterestedness, and was incompetent. See Docket No. 281 in Case No. 01-25006 and

Docket No. 287 in Case No. 04-35620.  On both occasions, the Debtors were given a full

opportunity to present their claims.  On each occasion the Court denied the motion.  See

Docket No. 305 in Case No. 01-25006 and Docket No. 315 in Case No. 04-35620.

Neither of these orders has been appealed.

---

[7] In a number of cases, the issue focuses on whether a well-known exception to the Barton Doctrine applies as a result of 28 U.S.C. § 959(a) where the trustee is sued for actions taken in conducting the business of the debtor.  That section, 28 U.S.C. § 959(a), has no application to this case.

Moreover, in the Removal Motion, the Debtors specifically contended that being forced to move from the Property would destroy Ralph Byrd's law practice. They contended that they were being given an inadequate amount of time to move their personality from the Property and for Ralph Byrd to move his law practice. Again, the Debtors were given every opportunity to prove their claim. At the hearing, however, the Debtors presented no probative evidence on these issues; instead Mr. Byrd merely argued these points from the podium. At the hearing, the Trustee's evidence established that the Trustee had given the Debtors numerous notices during the previous eight months that he would seek to have them vacate the Property, and on a number of occasions during that period, implored them that they should commence moving Mr. Byrd's law practice. Memorandum of Decision, at p. 8-9. The Court gave the Debtors sixty additional days to move from the Property, and ruled that, considering the prior eight months notice that they had received from the Trustee, ten months was more than ample time to vacate the Property and move Mr. Byrd's law practice. Id. at 16. The Debtors did not appeal the Memorandum of Decision or accompanying order requiring them to vacate the Property.

The claims against the Bankruptcy Defendants in the Complaint and Amended Complaint appear to be very similar to the foregoing claims. The Court need not determine here whether the claims in the Complaint or Amended Complaint are barred for various reasons as a result of the extensive litigation in this case or the fact that many of the Trustee's actions were expressly approved by this Court or taken subject to Court order. For purposes of this ruling, the Court holds only that the Barton Doctrine applies to the claims against the Bankruptcy Defendants. If leave is requested to bring the claims by appropriate motion, the Court will address these matters. Without reaching a decision

on the merits of such a motion, however, the Court notes that while one of the "vital institutional interests" served by the Barton Doctrine is "holding our trustees fully responsible" for their actions, an "equally vital" interest is "protecting our trustees from being mulcted into another court on frivolous or trumped up charges." Scheffel, 101 F.3d at 277.

The Court having determined that the Respondents have violated the Barton Doctrine, the question remains what remedy should be granted. Where an action is brought in district court in violation of the Barton Doctrine, the court in which the action was brought must dismiss it for lack of subject matter jurisdiction. Carter, 220 F.3d at 1255; Darr, 375 F.3d at 148. A court may enjoin a party from prosecuting in another forum an action that violates the Barton Doctrine. Scheffel, 101 F.3d at 277-278 (affirming an order enjoining a party from prosecuting an action in state court against the bankruptcy trustee because the action violated the Barton Doctrine.). In addition, a court may award damages to the trustee if it finds that a litigant violated the Barton Doctrine. Weitzman, 991 F.2d at 1241.

The Court will enter an order enjoining the Respondents from prosecuting the Complaint or the Amended Complaint against the Bankruptcy Defendants. Moreover, the Court will set a hearing on the Trustee's claim for sanctions for violating the Barton Doctrine. The hearing will be combined with the hearing on sanctions for the violation of the automatic stay, as determined in Section II. A. of this memorandum opinion.

### C.    SECTION 363 PROVIDES THE RESPONDENTS WITH NO RELIEF.

In their opposition, the Debtors contend, for the first time, that their claim

against the Property for constructive trust survives this Court's order authorizing the sale of the Property free and clear of all liens, claims and interests because Section 363(f) "expressly permits such a sale free and clear only if applicable non-bankruptcy law so permits." Opposition at p.1. They contend, therefore, that the sale is subject to the outcome of their state court action. <u>Id</u>. This new argument fails on both procedural and substantive grounds.

In the Sale Motion filed on March 23, 2007, the Trustee sought Court approval to sell the Property pursuant to 11 U.S.C § 363(b)(1) and (f) free and clear of all liens, claims, interests and encumbrance. Docket No. 527. The Debtors filed an objection to the sale (Docket No. 537) and actively prosecuted their objection at the sale hearing. The Court overruled their objection and, in the Sale Order, authorized the sale of the Property "free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C § 363(f)." Docket No. 544 at p. 2.

As stated above, the Debtors contend for the first time in their Opposition to the Motion that their claim against the Property for constructive trust survives the Sale Order authorizing the sale of the Property free and clear of all liens, claims interests and encumbrances. In neither their objection to the sale nor at the sale hearing did the Debtors contend either that they had a constructive trust claim against the Property - or any other claim for that matter - or that such claim would survive the Sale Order under Section 363(f). They certainly had ample notice of the Sale Motion, filed an objection to the Sale Motion, actively participated at the sale hearing, and, to state the obvious, were well aware at that time that they purportedly had a claim against the Property, as evidenced by the fact that they filed the Complaint on the same day as the sale hearing

was held.  Under these circumstances, the Debtors have waived their contention that their claim for a constructive trust against the Property survives the Sale Order.  See First Union CommerCorp.v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.), 81 F.3d 1310, 1317 (4th Cir. 1996) (finding that a party in interest's failure to object to a claim made on a debtor's assets prior to confirmation of the debtor's reorganization plan may operate as a waiver, barring the party from asserting the objection later.)

Accordingly, the Debtors' assertion that their alleged claim for constructive trust against the Property will survive a sale of the Property, despite the clear language in the Sale Order that the sale is free and clear of all liens, claims, interests and encumbrances, is an improper collateral attack on the Sale Order.

Further, even if the Debtors had timely raised their contention under Section 363(f), it would have been summarily rejected.  Section 363(f) provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
>> (1) applicable nonbankruptcy law permits sale of such property and clear of such interest;
>>
>> (2) such entity consents;
>>
>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>>
>> (4) such interest is in bona fide dispute; or
>>
>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of interest.

11 U.S.C. § 363(f).  The Debtors contend that, for reasons that are not especially clear, Maryland state law would not permit the sale of the Property free and clear of their constructive trust claim.  In particular, they contend:

> Maryland state law provides a cause of action for abuse of
> process.  A claim for abuse of process does not require a showing
> that the plaintiff prevailed in the underlying case and does not
> seek to challenge the outcome of the underlying case. Rather,
> it only requires what appears in the subject state court
> complaint, i.e., a showing that the underlying case was
> perverted to accomplish a purpose for which it was not
> intended.

Opposition at p.1.  The Debtors cite no authority for their contention that, under Maryland law, real property cannot be sold free and clear of an inchoate claim for the imposition of a constructive trust as a remedy for alleged wrong-doing.  But the Court need not dwell on this deficiency for long.  The subsections of Section 363(f) are written in the disjunctive.  See In re Elliot, 94 B.R. 343, 345 (Bankr. E.D. PA 1988).  The Debtors ignore the plain language of Section 363(f)(4), which allows the sale to be free and clear of an interest if the interest is in bona fide dispute.

In this case, it cannot seriously be contested that the Respondents' constructive trust claim is not subject to bona fide dispute.  Accordingly, even if the Debtors had timely raised their Section 363(f) argument – which they did not – their argument would have failed because their constructive trust claim is subject to a bona fide dispute.

For the foregoing reasons the Court finds and concludes that the Debtors' newfound assertion that their alleged claim for constructive trust against the Property survives a sale of the Property, despite the clear language in the Sale Order that the sale is free and clear of all liens, claims, interests and encumbrances, is an improper collateral attack on the Sale Order.  The Court finds and concludes that this issue was waived by the Debtors when they failed to raise it at the sale hearing despite ample opportunity to do so.  The Court further concludes that this assertion fails as a matter of law on the merits because their claim for a constructive trust is subject to a bona fide dispute.

Accordingly, the Court will enter an order expressly providing that the sale of the Property will be free and clear of any and all claims by the Respondents for constructive trust or otherwise.  In addition, because this Court has exclusive jurisdiction over the Property pursuant to 28 U.S.C §1334(e), any claims by the Respondents against the Property, or any disputes regarding the scope or applicability of the Sale Order, shall be subject to the jurisdiction of this Court to the full extent allowed by 11 U.S.C. § 1334(a) or (b).

### III.    CONCLUSION

For the reasons stated above, the Court will enter an order granting the Motion in part and awarding relief consistent with this memorandum.

cc:
Debtors
Trustee
Trustee's Counsel
U.S. Trustee's Office

**End of Memorandum**.