Date signed September 27, 2007



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In re: | * | |
| | * | Case No.   04-35620-TJC |
| Ralph T. Byrd, | * | Chapter 7 |
| Beverly S. Byrd, | * | (Consolidated with No. 01-25006) |
| | * | |
| Debtors. | * | |
| | * | |
| | * | |
| | * | |
| *     *     *     *     *     * | * | |
| | * | |
| Gregory P. Johnson, Trustee, | * | |
| | * | |
| Movant, | * | |
| | * | |
| v. | * | |
| | * | |
| Ralph T. Byrd, | * | Docket Nos. 549 and 595 |
| Beverly S. Byrd, | * | |
| Stanton P. Byrd, | * | |
| Ralph Trevor Byrd, | * | |
| Mark S. Byrd, | * | |
| | * | |
| Respondents. | * | |
| | * | |
| *    *    *    *    *    *    * | * | *    *    *    *    * |

## MEMORANDUM OPINION FINDING THE RESPONDENTS IN CONTEMPT
## AND AWARDING SANCTIONS FOR VIOLATIONS OF THE AUTOMATIC
## STAY, THE BARTON DOCTRINE AND THE INJUNCTION ORDER

The Chapter 7 Trustee, Gregory P. Johnson (the "Trustee"), seeks an order holding in contempt and awarding sanctions against debtors Ralph T. Byrd and Beverly S. Byrd (collectively, the "Debtors"), and their three sons, Stanton P. Byrd, Ralph Trevor Byrd, and Mark S. Byrd (collectively, the "Byrds' Sons") (the Debtors and the Byrds' Sons are collectively referred to as the "Respondents").  The Trustee seeks this relief for two reasons:

First, the Trustee seeks relief as a continuation of the Motion for Relief Due to Violations of the Automatic Stay, Docket No. 549 (the "Initial Motion"), filed by the Trustee on May 7, 2007.  There, the Trustee sought, among other things, an injunction against the Respondents and sanctions for civil contempt.  The Trustee contended that the Respondents violated the automatic stay by filing a complaint in state court seeking, *inter alia*, to impose a constructive trust on property of the estate known as 4901 Sundown Rd, Laytonsville, MD 20882 (the "Property").  The Trustee also contended that the Respondents violated the Barton Doctrine[1] by asserting claims in the complaint for damages against the Trustee, a former trustee in the bankruptcy case of Ralph Byrd, and their counsel.  On May 18, 2007, the Court issued a Memorandum Decision (Docket No. 573) (the "Memorandum Decision") finding, among other things, that (1) the Respondents' efforts to obtain a constructive trust over the Property and to require the Trustee to transfer his interest in the Property to the Respondents violated the automatic stay of 11 U.S.C. § 362(a)(3); and (2) the Respondents' lawsuit against the Trustee, the prior trustee, and their counsel in state court for damages based on their actions in the performance of their duties was a violation of the Barton Doctrine.  The Court enjoined

---

[1] As discussed at length in the Memorandum Decision, Docket No. 573, the Barton Doctrine holds that a bankruptcy trustee cannot be sued for claims arising from the administration of the estate without a plaintiff first seeking leave of the bankruptcy court.

2

the Respondents from, among other things, filing, maintaining or pursuing the state court action against the Trustee, the prior trustee and their counsel, and deferred ruling on the Trustee's request for contempt and sanctions pending a further hearing.

Second, the Trustee seeks relief based on the allegations set forth in the Emergency Motion for Relief Due to Flagrant Violations of this Court's Order of May 18, 2007, Docket No. 595 (the "Supplemental Motion"), filed by the Trustee on June 1, 2007. In it, the Trustee contends that after the Court issued the Memorandum Decision and the injunction order, the Respondents nevertheless filed an amended complaint and served the amended complaint on the Trustee, the prior trustee and their counsel. The Trustee contends that these actions constituted a willful and flagrant violation of the Court's injunction order, as well as an additional willful and flagrant violation of the automatic stay and the Barton Doctrine.

The Court provided ample opportunity for the Respondents to respond or object to the contempt and sanction requests and held a hearing on July 18, 2007. None of the Respondents appeared.

For the reasons set forth herein, the Court finds and concludes that (1) the Respondents willfully violated the automatic stay and the Barton Doctrine by filing the original state court complaint; (2) the Respondents willfully violated an express order of this Court by filing and serving the amended state court complaint in direct contravention of the order; and (3) the Respondents willfully and maliciously violated the automatic stay and the Barton Doctrine by filing and serving the amended state court complaint after the Court expressly ruled in the Memorandum Decision that the claims in the original complaint violated the automatic stay and the Barton Doctrine. The Court will

3

enter an order holding the Respondents in contempt of Court, and imposing sanctions as specified herein.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(G) and (J).  The following constitutes the Court's findings of fact and conclusions of law.

**I.      FINDINGS OF FACT**

**A.      PROCEDURAL BACKGROUND**

This case, and its predecessor bankruptcy case of Ralph Byrd, Case No. 01-25006, has a long and protracted history that spans almost six years.  The Court has entered numerous decisions and opinions that have recounted much of the entire history of this case.  See, e.g., Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD, Docket No. 480, at pp. 2-7.  Recently, the Court entered the Memorandum Decision, Docket No. 573, on the Initial Motion.  The following summary is taken from the Memorandum Decision.

On December 14, 2001, Platinum Financial Services Corp. filed an involuntary petition against Ralph Byrd under Chapter 7 of the Bankruptcy Code, initiating Case No. 01-25006.  On July 17, 2002, this Court entered an order for relief under Chapter 7 and Mr. Roger Schlossberg was appointed the Chapter 7 Trustee the next day.  On January 24, 2003, the District Court reversed the entry of the order for relief.  Thereafter, this Court entered an order staying all matters on April 15, 2003. On February 11, 2004, the

United States Court of Appeals for the Fourth Circuit reversed and remanded the District Court's decision reversing the entry of the order for relief.

On June 25, 2004, this Court entered an order converting Ralph Byrd's Case No. 01-25006 from Chapter 7 to Chapter 11 at Mr. Byrd's request. Docket No. 183 in Case No. 01-25006. On July 23, 2004, the Trustee was appointed the Chapter 11 trustee.

Beverly Byrd, Ralph Byrd's wife, then filed her petition under Chapter 13 on November 11, 2004, thus initiating Case No. 04-35620. The Trustee, then serving as the Chapter 11 trustee in Mr. Byrd's case, filed a motion to substantively consolidate Ralph Byrd's Case No. 01-25006 into Beverly Byrds's Case No. 04-35620. That motion was granted with the consent of the Debtors on January 12, 2005, by the entry of the Consent Order, Docket No. 49 in Case No. 04-35620, the result of which was that the cases were substantively consolidated into the Chapter 13 Case No. 04-35620. The Debtors' consolidated bankruptcy case was converted from Chapter 13 to Chapter 7 on March 20, 2006. Docket No. 249. The Trustee was subsequently appointed the Chapter 7 trustee and continues to serve in that position.

On September 18, 2006, the Trustee filed the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD. Docket No. 402. The Trustee sought a court order requiring the Debtors to vacate the Property, which was then the Debtors' residence, by a date certain, and a writ of assistance to the United States Marshall in the event the Debtors did not do so. The Debtors opposed the removal motion, Docket No. 418, and the Court held a hearing on the removal motion on December 1, 2006.

On December 11, 2006, the Court issued the Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD, Docket No. 480, granting the removal motion and entered an order of removal.  The Court ordered the Debtors to vacate the Property by January 31, 2007.[2]

On March 23, 2007 the Trustee filed the Motion for Order Authorizing Trustee to Enter into Sales Agreement and Approving Sale of Certain Real Property Free and Clear of All Liens, Claims, Interests and Encumbrances (the "Sale Motion").  Docket No. 527. In the Sale Motion, the Trustee sought approval of a contract to sell the Property to Richard and Jenine Clonch (the "Clonchs") for $735,000.  After the Debtors filed an opposition to the Sale Motion, Docket No. 537, the Court held a hearing on April 23, 2007.

Upon completion of the hearing, and after an auction sale of the Property conducted by the Trustee, the Court approved the sale of the Property to the Clonchs, who made the winning bid at the auction in the amount of $805,000.  The Court entered the order approving the sale on April 25, 2007.  The Trustee subsequently sold the Property to the Clonchs pursuant to the Court's order.

**B.     FINDINGS OF FACT RELATED TO THE SANCTIONS AND CONTEMPT REQUESTS**

**1.     The Initial Motion.**

---

[2] Among other reasons given by the Court for its decision: (1) the Debtors were given 10 months notice from the time the case was converted to chapter 7 to turnover the Property to the Trustee, which was a substantial and adequate amount of time to relocate; and (2) the Property was in deplorable and deteriorating condition and the estate was being harmed by delay.

6

On April 23, 2007, the same day as the hearing on the Sale Motion but without disclosing it to the Court or the Trustee, the Respondents filed a Complaint for Abuse of Process and Civil Conspiracy and Constructive Trust for 4901 Sundown Road, Laytonsville, MD and Demand for Jury Trial (the "Complaint") in the Circuit Court for Montgomery County, Case No. 281858-V.  In the Complaint, the Respondents named, among other defendants (1) the Trustee; (2) Roger Schlossberg, who served as the original Chapter 7 trustee; and (3) Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers"), which serves as counsel to the Trustee and served as counsel to Mr. Schlossberg (the Trustee, Mr. Schlossberg and Shulman Rogers are collectively referred to herein as the "Bankruptcy Defendants").

The Complaint asserted three counts for relief.[3]  As pertinent here, the allegations of the Complaint described numerous actions taken by the Bankruptcy Defendants in the administration of the estate and sought damages against them for abuse of process and civil conspiracy.   The Respondents also sought to impose a constructive trust against the Property as an equitable remedy, and requested the state court to order the Trustee to convey all of his right, title and interest in the Property to the Debtors.

On May 7, 2007, the Trustee filed the Initial Motion.  The Trustee sought a declaration that the Respondents violated the automatic stay by seeking in the Complaint to impose a constructive trust on the Property.  In addition, the Trustee contended that the Respondents violated the Barton Doctrine, and sought to enjoin the Respondents from

---

[3] The allegations of the Complaint are summarized in the Memorandum Decision.  See Memorandum Decision at pp. 8-10.  Further, the Debtors had submitted an unsigned amended complaint and the Court was unsure whether the Respondents had filed the unsigned amended complaint.  In the Memorandum Decision, the Court reviewed the unsigned amended complaint and determined that its decision would be no different whether or not the unsigned amended complaint had been filed.  Stated otherwise, the allegations in the unsigned amended complaint were not sufficiently different from the Complaint to warrant a different result.

filing and/or maintaining lawsuits in state and federal courts regarding the liquidation or administration of the bankruptcy estate without leave of the Court.

After the Debtors filed an opposition to the Initial Motion, the Court issued the Memorandum Decision on May 18, 2007.[4]  The Court determined that (1) the Respondents' effort to obtain a constructive trust over the Property violated the automatic stay of 11 U.S.C. § 362(a)(3); and (2) the Respondents' lawsuit against the Bankruptcy Defendants seeking damages for actions they took in the administration of the estate violated the Barton Doctrine.  The Court entered an order which, among other things, enjoined the Respondents from:

- filing, pursuing or maintaining any action in state or federal court seeking to obtain possession, custody, control of or any interest in the Property;

- taking any other action seeking directly or indirectly to obtain possession, custody, control of or any interest in the Property or otherwise taking any action that will encumber the Property;

- filing, pursuing or maintaining any action in state or other federal court seeking any remedy against the Bankruptcy Defendants for actions they took in the performance of their duties in this bankruptcy proceeding, or in the predecessor bankruptcy case of Ralph T. Byrd, Case No. 01-25006, without first seeking and obtaining leave of this Court;

- taking any other action that has the intent or effect of hindering, delaying or preventing the sale of the Property by the Trustee pursuant to the order of this Court.

---

[4] Ralph Byrd is an attorney and signed the Complaint on behalf of all of the plaintiffs.  In the Debtors' opposition to the Initial Motion, Ralph T. Byrd stated that he is only representing himself and Beverly Byrd in this bankruptcy case, and not the Byrds' Sons.

Amended Order Granting in Part Trustee's Emergency Motion for Relief From the

Automatic Stay, Enjoining Respondents and Declaring Complaint Void in Part, Docket

No. 583 (the "Injunction Order") at pp. 2-3. [5]

### 2. The Supplemental Motion.

The Trustee filed the Supplemental Motion on June 1, 2007. In it, the Trustee

alleged that, on or about May 29, 2007, eleven days after the Court issued the Injunction

Order, the Respondents filed the Second Amended Complaint for Abuse of Process, Civil

Conspiracy, Aiding and Abetting and Constructive Trust for 4901 Sundown Road

Laytonsville MD and Demand for Jury Trial (the "Second Amended Complaint") in Case

No. 281858-V. The Trustee contends that the Respondents violated the Injunction Order

both by filing the Second Amended Complaint and by serving it on the Bankruptcy

Defendants. The Trustee further contends that the Respondents again violated the

automatic stay and the Barton Doctrine by filing and serving the Second Amended

Complaint.

The Second Amended Complaint was signed by Ralph Byrd as counsel for all the

Respondents. The Second Amended Complaint continues to seek a constructive trust

over the Property, and continues to seek damages against the Bankruptcy Defendants for

actions they took in the administration of the estate. In comparison to the Complaint,

nothing of substance was removed from the Second Amended Complaint, although some

allegations were added. The Second Amended Complaint adds the Clonchs as

defendants simply because they purchased the Property pursuant to the Court's sale

---

[5] The Injunction Order expressly preserved the rights of the Respondents to appeal or otherwise seek relief
from the Injunction Order in the United States District Court for the District of Maryland, the United States
Court of Appeals for the Fourth Circuit, or the United States Supreme Court.

order, and seeks $5 million in compensatory damages and $50 million in punitive damages.

### 3.      The July 18th Hearing.

Both the Trustee and Mr. Schlossberg testified at the July 18, 2007 hearing. Their testimony and other evidence at the hearing established that on or about May 29, 2007, certainly well after the Injunction Order was issued on May 18, 2007, the Respondents filed the Second Amended Complaint.

On July 9 or July 10, 2007, the Respondents served Mr. Schlossberg by hand with a writ of summons issued by the Circuit Court for Montgomery County Maryland issued on July 2, 2007, along with a copy of the Second Amended Complaint. Schlossberg Exhibit 1. The Second Amended Complaint is not dated; however, it refers to actions that occurred on May 25, 2007. Second Amended Complaint at ¶ 73; Schlossberg Exhibit 1 at ¶ 73.

On July 5, 2007, the Respondents served by hand on Shulman Rogers a writ of summons issued by the Circuit Court for Montgomery County Maryland issued on July 2, 2007, along with a copy of the Second Amended Complaint. Exhibit G.

On or around that date, the Respondents mailed a copy of the Second Amended Complaint to the Trustee.

The Trustee testified that the estate incurred legal fees and costs in the amount of $14,281.45 in obtaining, reviewing and responding to the Complaint, filing the Initial Motion and matters related to the Initial Motion. The Trustee introduced into evidence the billing records of counsel for the Trustee to establish these amounts. The Court has

reviewed the fees and finds and concludes that the fees incurred are reasonable compensation for actual, necessary services rendered to the Trustee.

The Trustee testified that, through June 12, 2007, the estate incurred legal fees and costs in the amount of $2,680.50 in obtaining, reviewing and responding to the Second Amended Complaint, filing the Supplemental Motion and matters related to the Supplemental Motion.  The Trustee introduced into evidence the billing records of counsel for the Trustee to establish these amounts.  After June 12, 2007, the Trustee incurred an additional $5,215.00 in fees in connection with matters related to the Supplemental Motion.[6]  The Court has reviewed the fees and finds and concludes that the fees incurred are reasonable compensation for actual, necessary services rendered to the Trustee.

**4.      The Debtors' Conduct in this Case**.

In his request for relief, the Trustee points to numerous examples where the Debtors have failed to cooperate with the Trustee or disregarded a Court order in this bankruptcy case, and requested that the Court impose severe sanctions against the Debtors.  The Trustee contends that the Debtors' conduct establishes their disdain for and abuse of the bankruptcy process.

The Trustee testified about the Debtors' continuous and ongoing efforts to frustrate his administration of the case.  These efforts have taken several forms.  First, the Debtors have failed to comply with several recent orders of this Court, such as the

---

[6]The amount of fees incurred by the Trustee after June 12, 2007, was not available at the time of the July 18 hearing.  After the hearing and while the matter was under advisement, counsel for the Trustee filed a fee application. Docket No. 660.  As is customary, counsel submitted with the fee application billing records in support of the fees.  The application contains the updated billing records of the amount of fees incurred on the Supplemental Motion after June 12, 2007, which were not available as of the July 18, hearing.  See Docket No. 660, Exhibit 3 page 16 of 21. This amount is $5,215.00. The Court will consider the record of the hearing to be reopened to accept this supplemental information.

Injunction Order. See also discussion at Section II.D.  Second, the Debtors repeatedly and continually file motions for reconsideration, motions to stay pending appeals and appeals of bankruptcy rulings.  These actions have seldom been successful, and serve little purpose other than to delay the administration of the estate and generate administrative claims to the detriment of creditors.  Third, the Debtors have refused to cooperate with the Trustee on virtually all administrative matters, such as turnover of the Property and documents and allowing inspections of the Property.  The Initial Motion sets forth examples of instances where the Trustee required Court assistance to perform fundamental trustee duties.  The list there is by no means complete. Fourth, the Debtors allowed the Property to deteriorate in value and kept it in deplorable condition, as found by two different bankruptcy judges on separate occasions. [7]

Several recent examples suffice.  Despite the clear obligations in Section 521(a)(3) and (4) for the Debtors to cooperate with the Trustee and surrender all property of the estate and any recorded information, including books, documents and records, the Trustee had to undertake a year long effort of letter-writing, motions, hearings and orders to obtain possession of the Property and documentation and information.  With respect to turnover of the Property, those efforts culminated with the Court's Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property from 4901 Sundown Road, Laytonsville, MD, Docket No. 480, ordering the Debtors to vacate the Property by a date certain.  With respect to documents and information, the Court is entering contemporaneously herewith the Memorandum Opinion Awarding Sanctions for the Debtors' Failure to Produce Documents and Finding the Debtors in Contempt for Violating the Production Order, finding the Debtors in

---

[7] See Docket No. 480 at p. 6.

contempt and awarding sanctions for their failure to cooperate with the Trustee and produce documentation.

Further, on numerous occasions, the Trustee has been required to obtain court orders, including writs of assistance to the United States Marshall, in order to administer the estate against the Debtors' opposition. Examples include:

- order directing the debtor to provide the trustee access to the Property, Docket No. 106 in Case No. 01-25006;

- order requiring the Debtor to file schedules and attend the Section 341 meeting of creditors, Docket No. 176 in Case No. 01-25006;

- order directing appointment of the Chapter 11 trustee; Docket No. 212 in Case No. 01-25006;

- order requiring the Debtor to provide the Trustee access to the Property and to show it to prospective purchasers, Docket No. 272 in Case No. 01-25006;

- order enforcing the Court's prior orders compelling certain actions and cooperation by the Debtor and issuing a writ of assistance to the United States Marshall to assist the Trustee; Docket No. 299 in Case No. 01-25006;

- order requiring the Debtors to vacate the Property and issuing a writ of assistance to the United States Marshall; Docket No. 482 in Case No. 04-35620.

The Trustee testified that the total administration claims in the case now approach $300,000, which the Trustee testified is extraordinarily high for what should have been a straightforward bankruptcy case with a relatively small number of assets and claims against the estate.[8]  The Trustee testified that this amount is directly attributable to the Debtors' conduct in this case.

---

[8] The total docket entries in this case and in the predecessor case number 01-25006 now approach 1100, an absurdly high number for a case of this magnitude.

The Trustee's testimony was uncontroverted and collaborated by the record in this case. The Court has witnessed the Debtors' conduct during the past eighteen months and has reviewed the docket for the period prior to that time. The Court accepts the Trustee's testimony in its findings and conclusions and finds that the Debtors have abused the bankruptcy process and are acting in bad faith.

**5.    Notice to Respondents and Opportunity to Object and Appear.**

In their response to the Initial Motion, the Debtors did not dispute that they filed the Complaint and the only issue was the legal consequence of the filing.[9] Further, the sale of the Property was scheduled for May 18, 2007. The Debtors' filing of the Complaint had the effect of disrupting the sale, and there was a need to consummate the sale in light of the Property's deteriorating condition. Accordingly, the Court ruled on the merits of the Initial Motion in the Memorandum Decision without a hearing. The Court, however, deferred ruling on the Trustee's contempt and sanction request pending a hearing, so that the Respondents would have a full opportunity to address the contempt and sanctions request.

Along with the Supplemental Motion, the Trustee filed an emergency motion, Docket No. 596, to shorten the time for the Respondents to respond to the Supplemental Motion and to set an expedited hearing on the Supplemental Motion, as well as on the sanctions request from the Initial Motion. The Court denied the request to shorten the response time and hold an expedited hearing. In doing so the Court stated:

> The [Supplemental Motion] raises serious questions. For that reason, the Court will give each of the [Respondents] a full opportunity to address the issues in the [Supplemental Motion].

---

[9] Subsequently the Debtors argued that they did not violate the automatic stay by merely filing, as opposed to serving, the original Complaint. This claim has no merit considering that Section 362(a)(3) applies to "any act."

> While the Court agrees with the Trustee that the [Supplemental Motion] should be timely resolved, the need for expediency does not override the gravity of the allegations, and therefore the need to give the [Respondents] adequate time to respond.[10]

The Court set the time for the Respondents to object or otherwise respond to the Supplemental Motion to June 18, 2007. Id. On that day, the Debtors filed a motion to extend the time to file a response to the Supplemental Motion to July 6, 2007. Docket No. 623. The Court granted that request. On July 6, 2007, rather than file an objection to the Supplemental Motion, the Debtors filed an emergency motion to stay the hearing on the sanctions requests pending their appeal of the Injunction Order. Docket No. 630. The Court struck the emergency stay request because of the Debtors' continued refusal to comply with this Court's order to file with the Court their current address or to seek a waiver of their obligation to do so under Fed. R. Bank. P. 4002(5). Docket No. 633. See also Docket No. 603.

On July 13, 2007, the Debtors filed an emergency motion to continue the hearing on the Supplemental Motion and the sanctions request in the Initial Motion, which was set for July 18. Docket No. 635. The Debtors contended that they had so many filing obligations in their various appeals in the bankruptcy case that they could not adequately prepare for the July 18 hearing, and that the matter should be continued pending the District Court's review of the Memorandum Decision and the Injunction Order, which the Debtors had appealed. Id. The Court denied the request for a continuance. Docket No. 636.[11]

---

[10] Order Setting Briefing Schedule and Hearing on Trustee's Emergency Motion for Relief Due to Flagrant Violations of This Court's Order Entered May 18, 2007 at p. 3. Docket No. 601.

[11] The July 18 date had been set for more than a month. See Docket No. 612. The Debtors were aware of the July 18 hearing date at least by June 18, 2007; they referenced it in their motion to extend time to file an

Finally, in both the Initial Motion and the Supplemental Motion, the Trustee gave notice that he was seeking an order of contempt and severe sanctions, and requested the Court to consider the Debtors' conduct throughout this case when imposing sanctions. The Trustee provided ample notice that he was seeking, among other relief, that the Court (1) hold the Respondents in contempt for their actions; (2) impose compensatory and punitive damages against the Respondents; (3) incarcerate the Respondents until they pay the damages imposed; (4) deny the Debtors their discharge for their refusal to obey a lawful order of this Court.

## II.    CONCLUSIONS OF LAW

### A.    NOTICE TO THE RESPONDENTS THAT THE TRUSTEE SEEKS A CONTEMPT ORDER AND SANCTIONS

As stated above, the Trustee made it clear that he was seeking an order of contempt and sanctions against each of the Respondents**.**  In issuing the Memorandum Decision, the Court specifically deferred ruling on the contempt and sanction request pending a hearing**.**  Further, as described more fully in the Findings of Fact, Section I.B.5., the Court did not grant the Trustee's request to shorten the time for the Respondents to file their objections to the Supplemental Motion and to expedite the hearing on the contempt and sanctions request.  The Court set a reasonable briefing and hearing schedule specifically to provide a full opportunity for the Respondents to respond.  In doing so, the Court gave notice to the Respondents that it considered the Trustee's allegations to raise serious questions and grave concerns.  Id.  The Court

---

objection to the Supplemental Motion, which they filed on that date. See ¶ 2 of Docket No. 623.  Further, considering that the Debtors appeal virtually every significant decision of this Court, this bankruptcy case would be bogged down even more than it is if the Court were to defer hearings based on the Debtors' appellate briefing schedule.

granted the Respondents' request for an extension of time to file an objection or response and gave them more than 30 days notice of the hearing.

The Court finds and concludes that the Respondents were given full and fair notice of the contempt proceedings and full and fair opportunity to respond and participate in these proceedings.

## B.    SANCTIONS FOR WILLFULLY VIOLATING THE AUTOMATIC STAY AND THE BARTON DOCTRINE

With some exceptions, the filing of a bankruptcy petition "…operates as a stay, applicable to all entities, of…any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate…" 11 U.S.C. § 362(a)(3).  "The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."  United States v. Gold (In re Avis), 178 F.3d 718, 721 (4th Cir. 1999).

Section 362(h)[12] provides that "…an individual injured by any willful violation of a stay provided by this section, shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages."  To establish that a violation of the automatic stay was willful, a party need only show that the violator knew of the bankruptcy case and intentionally committed the act that violated the automatic stay.  Thompson-Mendez v. St. Charles at Olde Court P'ship, LLC (In re Thompson-Mendez), 321 B.R. 814, 820 (Bankr. D. Md. 2005) ("…a violation is

---

[12]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), P.L. 109-8, 119 Stat. 23, relettered this provision in Section 362(k)(1).  Because this case was filed prior to the effective date of BAPCPA, the Court will cite to the provision as previously codified.  See, P.L. 109-8 § 1501.

considered willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay." (quoting <u>Ford Motor Credit Co. v. Hemsley (In re Bennett)</u>, 317 B.R. 313, 316 (Bankr. D. Md. 2004)); <u>See also</u>, <u>Budget Serv. Co. v. Better Homes</u>, 804 F.2d 289, 292-293 (4th Cir. 1986) (affirming the granting of sanctions under Section 362(h) and stating that "[t]here was ample evidence in the record to support the conclusion that appellants knew of the pending petition and intentionally tried to repossess the vehicles in spite of it."). "…[A]ny deliberate act taken in violation of a stay the actor knows to be in existence justifies an award of actual damages. An additional finding of maliciousness or bad faith warrants the further imposition of punitive damages . . ." <u>Bunch v. Hopkins Savs. Bank (In re Bunch)</u>, 249 B.R. 667, 671 (Bankr. D. Md. 2000) (quoting <u>In re Crysen/Montenay Energy Co.</u>, 902 F.2d 1098, 1105 (2d Cir. 1990)).

The Court may also award sanctions for violations of the Barton Doctrine. <u>See e.g.</u>, <u>In re DeLorean Motor Co.</u>, 991 F.2d 1236, 1242 (6th Cir. 1993) ("The Trustee is entitled to the damages that he requested in Count I [violation of the Barton Doctrine as interpreted by the court] of his complaint. Furthermore, the Trustee must be given the opportunity to prove the amount of the damages incurred as a result of having to defend against the Weitzman Action including the necessity of the filing of the Trustee's complaint with the Bankruptcy Court…")

In the Memorandum Decision, the Court found and concluded that the Respondents violated the automatic stay and the Barton Doctrine by filing the Complaint. The Court did not address whether the violation was willful, as it deferred ruling on the sanction request in the Initial Motion. The Court now concludes that the violation was

willful, since the Debtors plainly knew of the existence of the automatic stay from their long history of this case. The docket record in these bankruptcy cases is replete with filings concerning the automatic stay. See e.g., Docket Nos. 341, 314, 227, 177, 162, 154, 135 and 74 in Case No. 01-25006.

 With respect to the Byrds' Sons, Ralph Byrd, a Maryland attorney, represents them in the state court action and signed the Complaint and Amended Complaint on their behalf. Ralph T. Byrd's knowledge of the automatic stay is imputed to them as their attorney. It is well established that a party is bound by the acts or omissions of his attorney and is charged with knowledge of those facts that were known to the attorney. Link v. Wabash R.R., 370 U.S. 626, 633-634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

 Id. at 633-634 (quoting Smith v. Ayer, 101 U.S. 320, 326. n10, 25 L.Ed. 955 (1880); Daniel v. Cantrell, 375 F.3d 377, 386 (6th Cir. 200), cert. den. Daniel v. Cantrell, 543 U.S. 1060, 125 S.Ct. 874, 160 L.Ed.2d 787 (2005); Bruce J. Pierce & Assoc., Inc. v. Resolution Trust Corp., 987 F.2d 663, 665 (10th Cir. 1993) ("The district court properly imputed to plaintiff the information admittedly received by plaintiff's counsel.").

 Accordingly, for the Respondents' willful violation of the automatic stay by filing the Complaint, the Court will award the Trustee his costs of $14,281.45 as actual damages, jointly and severally against each of the Respondents.

The Court further finds and concludes that the Respondents again violated the automatic stay and the Barton Doctrine by filing and serving the Second Amended Complaint.  The Second Amended Complaint contains much of the same factual allegations as the Complaint, and also seeks a constructive trust on the Property.  It requests an order that the Trustee convey all of his rights in the Property to the Debtors. It seeks damages against the Bankruptcy Defendants in the amount of $5 million compensatory and $50 million punitive for actions they took in the administration of the bankruptcy case.  In the Second Amended Complaint, the Respondents did not remove any of the offending allegations and claims from the Complaint, but only added allegations that do not change the character of the claims.  For the same reasons set forth in the Memorandum Decision, the Court finds and concludes that the filing and the serving of the Second Amended Complaint violates the automatic stay and Barton Doctrine.  <u>See</u> Memorandum Decision at pp. 11-21.

At the time the Respondents filed and served the Second Amended Complaint, the Court had issued the Memorandum Decision which expressly stated that the filing of the Complaint (containing allegations substantially similar to those in the Second Amended Complaint) constituted a violation of the automatic stay and the Barton Doctrine.  The Memorandum Decision and Injunction Order were served on the Respondents at the address set forth on the Complaint and Second Amended Complaint, <u>see</u> <u>e.g</u>., Docket No. 580, and were also served on the Debtors at both addresses on file with the Court. Docket Nos. 576, 577, 590.  Furthermore, on June 4, 2007, the Debtors filed a motion to reconsider the Injunction Order, Docket No. 600, and therefore the record establishes that

they unquestionably had actual knowledge of the Injunction Order by that date. [13]

Nevertheless, they served the Second Amended Complaint on the Trustee, Mr.

Schlossberg and Shulman Rogers after that date. Accordingly, the Court finds and

concludes that the Respondents filed and served the Second Amended Complaint with

knowledge of the Memorandum Decision and Injunction Order, and therefore the

Respondents' violation of the automatic stay and Barton Doctrine resulting from the

filing and serving of the Second Amended Complaint was willful, malicious and in bad

faith.

     For the Respondents' willful and malicious violations of the automatic stay and

the Barton Doctrine by filing and serving the Second Amended Complaint, the Court will

award the Trustee actual damages of $7,895.50 jointly and severally against each of the

Respondents.

     In addition, the Court will impose punitive damages under Section 362(h) in the

amount of $23,686.50 jointly and severally against the Debtors because the violations of

the automatic stay were malicious and in bad faith. Punitive damages under Section

362(h) are especially appropriate here for several reasons. First, the violation of the

automatic stay that resulted from serving and filing the Second Amended Complaint was

particularly egregious considering that the actions were taken after the Court expressly

held that those actions would violate the stay. Second, as set forth in the Findings of Fact

at Section I.B.4., throughout this case, the Debtors have caused substantial loss to this

estate or required the Trustee to incur needless and burdensome costs by (1) generating

---

[13] The record is not clear on whether the Byrds' Sons had actual knowledge of the Injunction Order at the time the Second Amended Complaint was filed and served. The point is not determinative, however. Ralph Byrd, their attorney in the state court action, had actual knowledge of the Memorandum Decision and the Injunction Order, and his knowledge is imputed to them. See supra at p. 19.

unnecessary and unsuccessful litigation matters that have resulted in administrative costs far in excess of what this case would otherwise warrant; and (2) allowing the Property to deteriorate in value and condition, as determined by two different bankruptcy judges; (3) failing to comply with a debtors' responsibilities under the Bankruptcy Code by refusing to produce requested documents, refusing to turnover property of the estate, and requiring the Trustee to obtain writs of assistance on several different occasions to enable the Trustee to perform his duties.  The Court will not impose punitive damages against the Byrds' Sons.

## C.    SANCTIONS FOR CIVIL CONTEMPT

A Bankruptcy Court has the power, pursuant to 11 U.S.C. § 105(a) to hold a party in civil contempt and award sanctions. See  In re Walters, 868 F.2d 665 (4th Cir. 1989).

> To establish civil contempt, a movant must show each of the following elements by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ...that the decree was in the movant's "favor"; (3) ...that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) ...that [the] movant suffered harm as a result.

JTH Tax, Inc. v. H&R Block E. Tax Servs., 359 F.3d 699, 705 (4th Cir. 2004) (quoting Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)).  The purpose of a contempt sanction is "…remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained…" as a result of the contemptuous conduct.  Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 822 (4th Cir. 2004) (quoting Buffington v. Baltimore County, 913 F.2d 113, 133 (4th Cir. 1990)).  To that end, a "court has broad discretion to fashion an appropriate coercive remedy in a case

of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions." United States v. Darwin Constr. Co., 873 F.2d 750, 756 (4th Cir. 1989).

The Court finds and concludes that the Respondents willfully violated the Injunction Order.  In it, the Court expressly enjoined the Respondents from, among other things:

- filing, pursuing or maintaining any action in state or federal court seeking to obtain possession, custody, control of or any interest in the Property;

- filing, pursuing or maintaining any action in state or other federal court seeking any remedy against the  Bankruptcy Defendants for actions they took in the performance of their duties in this bankruptcy proceeding, or in the predecessor bankruptcy case of Ralph T. Byrd, Case No. 01-25006, without first seeking and obtaining leave of this Court;

- taking any other action that has the intent or effect of hindering, delaying or preventing the sale of the Property by the Trustee pursuant to the order of this Court.

Injunction Order at p. 2.  The Respondents violated each of these provisions by filing and serving the Second Amended Complaint which (1) sought a constructive Trust over the Property; (2) sought damages against the Bankruptcy Defendants for actions they took in the administration of the estate without seeking leave of court; and (3) naming the Clonchs as defendants.  The Debtors did so with actual knowledge of the Memorandum Decision and Injunction Order.  The Byrds' Sons were represented by Ralph T. Byrd in the state action; he signed the Second Amended Complaint as their counsel.  Debtor Ralph T. Byrd's knowledge of the Memorandum Decision and Injunction Order is imputed to the Byrds' Sons. See supra at p. 19.

23

Without diminishing the significance of the Respondents' actions towards the Bankruptcy Defendants, the Court finds that the Respondents' inclusion of the Clonchs as defendants in the Second Amended Complaint to be particularly malicious. The Clonchs purchased the Property pursuant to an express order of this Court. They are innocent third parties who have done nothing other than to buy the Property, and the Second Amended Complaint does not allege otherwise. For this they have been named as defendants in a lawsuit seeking $5 million in actual damages and $50 million in punitive damages. The administration of bankruptcy cases depends heavily on the effectiveness and validity of bankruptcy court order authorizing trustee sales. If buyers become subject to *in terrorem* lawsuits seeking tens of millions of dollars in damages merely by purchasing estate assets, the system would break down.

Accordingly, each of the Respondents is held in civil contempt for willfully and maliciously violating the Injunction Order by filing and serving the Second Amended Complaint and the Court will award the Trustee compensatory monetary sanctions. The Trustee expended $7,895.50 to defend against the filing of the Second Amended Complaint. Therefore, the Court will award the Trustee his costs of $7,895.50 as compensatory civil contempt damages jointly and severally against each of the Respondents. However, the same actions that constitute the violations of the automatic stay and the Barton Doctrine also constitute the violation of the Injunction Order. Therefore, the contempt award of $7,895.50 for the violation of the Injunction Order will not be cumulative to the award for the violation of the automatic stay and the Barton Doctrine, and the Trustee shall be entitled to collect $7,895.50 only once.

**D.      DENIAL OF THE DEBTORS' DISCHARGE**

The Trustee requests that the Court deny the Debtors' discharge.  Under Section 727 "the court shall grant the debtor a discharge" unless one of twelve exceptions is present.  See 11 U.S.C. § 727(a)(1)-(12).  "Obtaining a discharge is the key component of the 'fresh start' a bankruptcy proceeding is designed to give a debtor."  Missouri ex rel. Nixon v. Foster (in re Foster), 335 B.R. 709, 714 (Bankr. W.D. Mo. 2006).  To that end, "the provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor."  Collier on Bankruptcy P 727.01[4] (15th ed. Rev. 2006).  The party seeking the denial of the debtors discharge has the burden of proving the claim by a preponderance of the evidence.  Farouki v. Emirates Bank Int'l, 14 F.3d 244, 250 (4th Cir. 1994).

In the instant case, the Trustee seeks denial of the Debtors' discharge as a sanction for their willful and malicious actions.  Pursuant to Sections 727(a)(6)(A), a debtor shall be denied a discharge if:

> the debtor has refused, in the case – (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

11 U.S.C. § 727(a)(6)(A).

Section 727(a)(6)(A) provides for the denial of a debtor's discharge if that debtor "refuses" to obey a lawful court order.  The term "refuse" is not defined in the Bankruptcy Code.  "Refuse" means "to deny, decline, reject." BLACK'S LAW DICTIONARY 887 (6th ed. 1991).  "Fail is distinguished from 'refuse' in that 'refuse' involves an act of the will, while 'fail' maybe an act of inevitable necessity."  Id. Nonetheless, Courts diverge on whether the statutory term "refused" requires an element of willfulness or intent. See In re Gentry, 275 B.R. 747, 754 (Bankr. W.D. Va. 2001)

(identifying the diverging opinions); <u>Foster</u>, 335 B.R. at 716 (finding that a court must find that a debtor's lack of compliance with a court order was willful and intentional because "[t]he term used in the statute [11 U.S.C. § 727(a)(6)] is 'refused' not 'failed.'"); <u>Hunter v. Magack (In re Magack)</u>, 247 B.R. 406, 409-10 (Bankr. N.D. Ohio 1999) (holding that "the use of the word 'refused' in § 727(a)(6) denotes that an action brought under this section should, in substance, simply be treated as a civil contempt proceeding thereby implicitly negating the intent requirement from the word 'refuse' as willfulness is not an element to a proceeding in civil contempt.").

The Court need not resolve whether a claim under Section 727(a)(6)(A) can be made out without a showing of willfulness, because the Court finds and concludes that the Debtors willfully violated the Injunction Order. "The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988). "In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate' and 'intentional.'" <u>Id</u>. Willful is defined by Black's Law Dictionary as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate. Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." BLACK'S LAW DICTIONARY 1103 (6th ed. 1991). A debtor's willful intent to disobey a court order can be inferred from his conduct. <u>See</u>, <u>In re Dowell</u>, 61 B.R. 75, 78 (Bankr. W.D. Mo. 1986) ("If the evidence establishes that the debtor knew or should have known of the multitude of orders and notices sent to her and disregarded

them, it could hardly be said that her failure and refusal to attend or to perform other duties imposed by the court was inadvertent or simply by mistake.").

For the reasons set forth above, the Court finds that the Debtors willfully failed to obey the Injunction Order. The Debtors were served with the Injunction Order eleven days before they filed the Second Amended Complaint. The Debtors made filings in this Court which establish that they knew of the Injunction Order more than a month before they served the Second Amended Complaint on the Trustee, Mr. Schlossberg and Shulman Rogers. These findings plainly establish that the Debtors willfully violated the Injunction Order.

In denying the Debtor's discharge, the Court takes into account that the Injunction Order is the third order of this Court that the Debtors have willfully violated since January 30, 2007. First, contemporaneous herewith, the Court is entering the Memorandum Opinion Awarding Sanctions for the Debtors' Failure to Produce Documents and Finding the Debtors in Contempt for Violating the Production Order (the "Contempt Opinion"). There, the Court finds and concludes, among other things, that the Debtors willfully violated the Order Granting Trustee's Motion to Compel Production of Documentation and Information entered by this Court on December 8, 2007 (the "Production Order") (Docket No. 477). Based on the Contempt Opinion, the Court is entering an order finding the Debtors again in contempt and awarding sanctions in favor of the Trustee. The Contempt Opinion and order are made part of the record herein.

Second, on June 6, 2007 the Court ordered the Debtors to submit their current address to the Court, as required by Fed. R. Bankr. P. 4002(5), because they continued to use an outdated address in their filings. Docket No. 603. The Debtors submitted a post

office box address, which does not comply with the Court's order or Bankruptcy Rule 4002(5), and have failed to submit their current address or request a waiver of the obligation to do so, as required by the Court.  Indeed, as recently as September 12, 2007, the Debtors' continued to make filings in this Court that incorrectly list the Property as their address.  See e.g., Docket No. 668.

Finally the Court will address the procedural context in which the discharge is denied.  Ordinarily, an objection to a debtor's discharge is brought by adversary proceeding. Fed. R. Bankr. P. 7001(4).  In the Initial Motion and the Supplemental Motion, the Trustee sought the denial of the Debtors' discharge as a sanction for their conduct in the case and because the Debtors willfully violated the Injunction Order.  Similarly, in the motions that are resolved in the Contempt Opinion, the Trustee also sought the denial of the Debtors' discharge as a sanction for their conduct in the case and because the Debtors willfully violated the Production Order.  The issue of whether the Debtors willfully violated these Court orders was specifically raised and actually litigated between the Debtors and the Trustee.  That issue - whether the Debtors willfully violated the Injunction Order or the Production Order -  is identical to the issue that would be litigated in an action seeking denial of discharge under Section 727(a)(6)(A).  Accordingly, if the Trustee were to prosecute an adversary proceeding seeking the denial of the Debtors' discharge pursuant to Section 727(a)(6)(A) for the Debtors willful violation of the Injunction Order or the Production Order, the Debtors would be collaterally estopped to relitigate that issue, in the event this Court's order becomes final.  See  Ariz. v. Cal., 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (collateral estoppel, or issue preclusion, prohibits a party from relitigating an issue '"when an issue

of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.' Restatement (Second) of Judgments § 27, p. 250 (1982)")

The Court will not require the Trustee to pursue the denial of discharge in an adversary proceeding.  Such a requirement would be a waste of estate resources that have already been unnecessarily depleted as a result of the Debtors' misconduct.  Section 105(a) of the Bankruptcy Code authorizes the Court to enter any order necessary or appropriate to carry out the provisions of the Bankruptcy Code or to prevent an abuse of process.[14]  The United States Supreme Court recently affirmed the "…broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent abuse of process' described in Section 105(a) of the [Bankruptcy] Code...."  Marrama v. Citizens Bank, 127 S.Ct. 1105, 1112; 166 L. Ed. 2d 956 (2007).  Moreover, it is likely that, even absent Section 105(a), the "inherent power of every federal court to sanction 'abusive litigation practices'" would provide adequate justification in support of an order denying discharge. Id.  Thus under the unique circumstance of this case, the Court will not require the Trustee to pursue the denial of the Debtors' discharge in a separate adversary proceeding.[15]

---

[14] 11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[15] The Trustee would not be time-barred to seek the denial of the Debtors' discharge.  The prior trustee filed an adversary proceeding to deny Ralph Byrd's discharge, Case No. 02-01490, which has been stayed. The time to file an action denying Beverly Byrd's discharge has been extended on timely motion of the Trustee without objection by the Debtors.  The Court notes, however, that even if the time period had run and the

### III.   CONCLUSION

For the forgoing reasons, the Court finds and concludes that the Respondents (1) willfully violated the automatic stay by filing the Complaint; (2) violated the Barton Doctrine by filing the Complaint; (3) willfully and maliciously violated the automatic stay by filing and serving the Second Amended Complaint after the Memorandum Decision and Injunction Order were issued; (4) willfully and maliciously violated the Barton Doctrine by filing and serving the Second Amended Complaint after the Memorandum Decision and Injunction Order were issued; and (5) willfully and maliciously violated the Injunction Order by filing and serving the Second Amended Complaint after the Memorandum Decision and Injunction Order were issued.

Accordingly, the Court will issue monetary sanctions in the amount of:

(1) $14,281.45 against the Respondents jointly and severally as actual damages for filing the Complaint in violation of the automatic stay and the Barton Doctrine;

(2) $7,895.50 against the Respondents jointly and severally as a compensatory civil contempt sanction for violating the Injunction Order and as actual damages awarded for the second violation of the automatic stay and the Barton Doctrine for filing and serving the Second Amended Complaint;

(3) $23,686.50 against the Debtors jointly and severally as a punitive damage for willfully and maliciously violating the automatic stay by filing and serving the Second Amended Complaint.

---

Debtors had been granted a discharge, Section 727(d)(3) provides that a discharge shall be revoked if the "debtor committed an act specified in [Section 727(a)(6)(A)]." 11 U.S.C. §727(d)(3).

Additionally, the Court will issue an order denying the Debtors' discharge.


cc:

Ralph T. Byrd
4901 Sundown Road
Gaithersburg, MD 20882

Ralph T. Byrd
205 Professional Drive
Gaithersburg, MD 20879

Ralph T. Byrd
P.O. Box 5278
Laytonsville, MD 20882

Beverly Byrd
4901 Sundown Road
Gaithersburg, MD 20882

Beverly Byrd
205 Professional Drive
Gaithersburg, MD 20879

Beverly Byrd
P.O. Box 5278
Laytonsville, MD 20882

Stanton Byrd
4901 Sundown Road
Gaithersburg, MD 20882

Stanton Byrd
205 Professional Drive
Gaithersburg, MD 20879

Stanton Byrd
P.O. Box 5278
Laytonsville, MD 20882

Ralph Trevor Byrd
4901 Sundown Road
Gaithersburg, MD 20882

Ralph Trevor Byrd
205 Professional Drive
Gaithersburg, MD 20879

Ralph Trevor Byrd
P.O. Box 5278
Laytonsville, MD 20882

Mark S. Byrd
4901 Sundown Road
Gaithersburg, MD 20882

Mark S. Byrd
205 Professional Drive
Gaithersburg, MD 20879

Mark S. Byrd
P.O. Box 5278
Laytonsville, MD 20882

Gregory P. Johnson, Trustee
1213 Cabinwood Place
Silver Spring, MD 20904

James Hoffman, Esq.
11921 Rockville Pike
Suite 300
Rockville, MD 20852

Roger Schlossberg, Esq.
134 West Washington Street
P.O. Box 4227
Hagerstown, MD 21741-4227

Office of the U.S. Trustee
6303 Ivy Lane, Ste. 600
Greenbelt, MD 20772


**END OF MEMORANDUM**