Date signed December 05, 2007



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

**NOT FOR PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
At GREENBELT**

| | | |
|---|---|---|
| **In re:** | * | |
| | * | |
| **Ralph T. Byrd** | * | |
| **Beverly S. Byrd** | * | **Case No.   04-35620-TJC** |
| | * | **(Substantively consolidated** |
| | * | **with No. 01-25006-TJC)** |
| | * | |
| **(Debtors)** | * | **(Chapter 7)** |
| | * | |
| | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION GRANTING THE THIRD APPLICATION OF
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A. [660]**</u>

Before the Court is the Third Application of Shulman, Rogers, Gandal, Pordy and

Ecker, P.A., as Special Counsel, for Allowance of Administrative Claim for Professional

Services Rendered and for Reimbursement of Expenses (the "Application") filed by

Shulman Rogers Gandal Pordy and Ecker, P.A. (the "Applicant").  Docket No. 660.  The

Applicant previously was approved to represent Gregory P. Johnson, the Chapter 7

Trustee (the "Trustee") in this case, and seeks approval of $104,006.00 for professional

1

services rendered and $10,533.45 in expenses incurred from October 1, 2006 through August 8, 2007 (the "Application Period").

Ralph T. and Beverly S. Byrd (the "Debtors") filed an objection to the Application on September 12, 2007 (the "Objection"). Docket No. 668.  Consistent with their past practices, the Debtors' Objection is stated in summary terms, and simply provides that:

> The Debtors incorporate by reference all previous objections to previous administrative claims by James M. Hoffman, Esq. and Shulman Rogers Gandal Pordy & Ecker, P.A. as "Special Counsel."

> In addition on June 28, 2007 the Fourth Circuit Court of Appeals in Case No: 06-2042 ruled that the very appointment of the Chapter 11 Trustee in the underlying case is still to be reviewed in the context of whether such administrative claims are to be granted.

Objection at p.1.  The Court set the Application and Objection for a hearing on October 26, 2007.   Neither of the Debtors appeared to prosecute the Objection.

Despite the Debtors' failure to appear, the Court nevertheless heard argument and accepted proffered evidence.  The Court has reviewed the Application and exhibits thereto, as well as many of the docket entries in this case to the extent useful or necessary to resolve the Application.  The Court is intimately familiar with the record in this case, especially the record during the Application Period.  The Court finds and concludes that the fees and expenses requested in the Application are reasonable compensation for the actual and necessary services rendered by the Applicant in this case pursuant to 11 U.S.C. § 330(a)(1).  The Court will approve the Application.

Further, because the Debtors raised the claim that the Court erred in appointing a trustee when this case previously was in Chapter 11, and such error should result in the denial of all administrative claims, the Court herein addresses the appropriateness of the

appointment of the trustee in the Chapter 11 case.  For the reasons set forth herein, the Court finds and concludes that the Debtors' claim is without merit.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) & (O).  The following constitutes the Court's findings of fact and conclusions of law.

## I.    FINDINGS OF FACT

**A.  Background.**

This case, and its predecessor case with which it is now consolidated, Case No. 01-25006, has a long history dating back to the filing of an involuntary bankruptcy petition against Ralph Byrd on December 14, 2001.  This judge, and the predecessor judges that were assigned to this case, have issued many memorandum decisions from which the background of this case is available. Among those recent decisions are the following, each of which contains a description of the background of this case:

- Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property From 4901 Sundown Road, Laytonsville, MD., Docket No. 480, entered on December 11, 2006.

- Memorandum of Decision finding the Debtors and others in violation of the automatic stay and the Barton Doctrine, Docket No. 573, entered on May 18, 2007.

- Memorandum Opinion Awarding Sanctions for the Debtors' Failure to Produce Documents and Finding the Debtors in Contempt for Violating the Production Order, Docket No. 675, entered on September 27, 2007.

- Memorandum Opinion Finding the Respondents in Contempt and Awarding Sanctions for Violations of the Automatic Stay, the Barton Doctrine and the Injunction Order, Docket No. 677, entered on September 27, 2007.

Moreover, the specific facts that are relevant to the issue raised by the Debtors described above - whether the administrative claims in this case should be disallowed because the appointment of the Chapter 11 trustee in June, 2004, was improper – will be addressed in the context of that issue in Section II.B of this opinion.

**B.  Findings of Fact Concerning the Application.**

The Applicant was approved as special counsel for the Trustee by order dated August 29, 2006.  Docket No. 393.  The approval order followed a lengthy hearing at which the Debtors contended that the Applicant should not be retained as special counsel because of an alleged conflict of interest.  According to the Debtors, the conflict arose because the Applicant represented Platinum Financial Services, Inc., the creditor that filed the involuntary petition against Ralph Byrd.  The Debtors previously asserted that the Applicant was the subject of this conflict that prevented it from being retained in this case.  The two prior judges that presided over this case had approved the Applicant's retention as special counsel in the earlier chapters of this case despite the alleged conflict (Docket Nos. 103 and 296 in Case No. 01-25006).[1]  Nevertheless, this Court gave the Debtors every opportunity to establish the basis for their claim of conflict at the hearing on August 21, 2006.  The Court issued an extensive ruling from the bench in which it

---

[1] Specifically, on August 26, 2002, Roger Schlossberg, the then chapter 7 Trustee, filed an application to employ the Applicant as special counsel to the estate.  Docket No 77 entered in Case No. 01-25006.  On December 6, 2002, the Court authorized the Chapter 7 Trustee to employ the Applicant as special counsel to the estate.  Docket No. 103 in Case No 01-25006.  The Applicant served as special counsel to the Chapter 7 Trustee from December 6, 2002 through June 25, 2004.  On June 25, 2004, this Court granted an order to convert the case from Chapter 7 to Chapter 11 at the Debtor's request.  On July 23, 2004, Greg Johnson was appointed the Chapter 11 Trustee. On August 30, 2006, Mr. Johnson filed an application to employ the Applicant as special counsel to the estate.  Docket No. 260 in Case No. 01-25006.  On October 5, 2004, this Court entered an Order Authorizing the Employment of the Applicant as special counsel to the Chapter 11 Trustee to be nunc pro tunc to July 23, 2004. Docket No 296 in Case No. 01-25006.

addressed all of the Debtors' allegations of alleged conflict.  The Court then entered the

August 29, 2006, order providing in part as follows:

> the Court finding and concluding that Shulman Rogers
> represents no interest materially adverse to said Trustee or
> the estate in the matters upon which it is to be engaged, and
> that the employment of Shulman Rogers is necessary and
> would be in the interests of the Estate, and that the case is
> one justifying a general retainer, and in addition the Court
> finding and concluding that Shulman Rogers also would
> qualify for employment under 11 U.S.C. §327(a) because,
> pursuant to 11 U.S.C. §327(c),  no actual conflict exists as
> a result of Shulman Rogers' prior representation of
> Platinum Financial Services Corporation and no creditor or
> the United States Trustee has objected to Shulman Rogers'
> retention, and for the reasons stated in the bench ruling on
> the record at the conclusion of the hearing on August 21,
> 2006 . . . .

 Docket No 393.  Accordingly, the Applicant has served as special counsel to the Trustee

from the Conversion Date through the present.

    This case has been heavily litigated, and this Court has previously concluded that

the Debtors will go to great lengths to frustrate the Trustee's administration of the case.

During the Application Period, the Trustee was engaged in extensive disputes with the

Debtors, which included: (1) seeking and obtaining an Court order requiring the Debtors

to vacate their residence; (2) selling the residence over the Debtors' objection; (3)

seeking and obtaining an injunction against the Debtors from prosecuting an

unauthorized lawsuit they filed against the Trustee and his counsel, among others, in state

court; (4) seeking documents and information from the Debtors and then an order

compelling the Debtors to provide the information; and (5) seeking contempt sanctions

against the Debtors for their actions.  These items will be addressed further in the context

of the review of the Application in Section II.A. herein.

## II.      CONCLUSIONS OF LAW.

**A.      The Application constitutes reasonable compensation for actual and necessary services performed by the Applicant during the Application Period.**

Section 330(a)(1)(A) of the Bankruptcy Code enables the Court to award

"reasonable compensation for actual, necessary services rendered" by a professional or

attorney employed by any such person and reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3) sets forth the standards a bankruptcy court

must apply when granting awards under Section 330(a)(1).  That Section provides:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> (A)  the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Moreover, Section  330(a)(4)(A) states that "the court shall not allow compensation for- …(ii) services that were not- (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."  In order to determine whether an attorney's services were "reasonably likely to benefit the debtor's estate," the Court must apply an "objective test 'based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances.'"  Pope v. Vu (In re Vu), 366 B.R. 511, 516 (D. Md. 2007) (quoting In re Ames Dep't Stores, Inc., 76 F.3d 66, 72 (2nd Cir. 1996); compare, Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.), 157 F.3d 414, 426 (5th Cir. 1998) (holding that the services must have actually "resulted in an identifiable, tangible, and material benefit to the bankruptcy estate").

The Court finds and concludes that the Application contains a thorough and detailed description of the services provided by the Applicant, the need for the services and the results of those services.  The Application properly groups the various services performed by the Applicant into nineteen categories, and describes the work done in each category and amount of time devoted to each category.  See Application at pp. 14-27. The Court has reviewed these categories and the work done within each category, and has determined that the services performed were actual and necessary, and were appropriate services to be performed by counsel.   The Court also finds and concludes that the Application properly analyzes the fee request under the well-established twelve-factor analysis enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See Application at pp. 27-30.

The Application must include consideration of the Debtors' conduct during this case and the Application Period. The case presented a fairly straightforward individual – as opposed to business – bankruptcy case. The Debtors owned a residence that was encumbered by a first and second deed of trust. They also owned other items of personal property. They had fairly substantial amounts of unsecured claims against them, primarily unpaid credit card balances, at least one of which had been reduced to judgment. Notwithstanding this straightforward asset/liability structure, the Debtors have generated years of costly, expensive litigation and have hampered the Trustee's efforts to administer the estate. As examples, the Court recently has twice found the Debtors to be in contempt for willfully violating Court orders and for failing to comply with their case obligations. Another example is their conduct in objecting to the Application, which has been typical of their filings and actions in this case. They filed the summary two-paragraph Objection without any factual allegations or legal points or authorities to support their claims, notwithstanding the fact that Mr. Byrd is a Maryland attorney and knows how to prepare and file a brief.[2] Further, the Debtors failed to appear at the scheduled hearing to assert the Objection. If they act consistently with their past practice, they will file a motion for the Court to reconsider this decision and then a notice of appeal if that is denied.

During the Application Period, the Applicant provided numerous and extensive services to the Trustee that warrant the fee and expense request. The Applicant, on behalf of the Trustee and the estate, filed multiple motions and attended numerous hearings in an attempt to: (1) recover property of the estate; (2) obtain access to

---

[2] On numerous occasions, this Court has admonished Mr. Byrd against making summary filings that contain no allegations of fact or points and authorities of law.

documents necessary to the Trustee's investigation of the affairs of the estate; (3) sell the property of the estate; and (4) restrain the Debtors from taking actions outside of the bankruptcy process to hinder the sale of the property. These actions are described further below.

On October 24, 2006, the Applicant prepared and filed Motion to Compel Production and Documentation and Information by the Debtors (the "Motion to Compel"). On December 1, 2006 the Court held a day long hearing on the Motion to Compel and a previously filed motion to authorize the removal (the "Removal Motion") of the Debtors and their personal property from their residence at 4901 Sundown Road, Laytonsville, Maryland (the "Property"). Subsequently, the Court entered orders requiring the Debtors to produce the documents requested in the Motion to Compel on or before January 30, 2007 and requiring the Debtors to vacate the Property by January 31, 2007. Docket Nos. 482 and 487.

On February 6, 2007, at the Debtors' request, the Court held an emergency telephonic hearing to resolve a dispute between the Debtors and the Trustee precipitated by the Debtors' failure to timely vacate the property in accordance with the Court's order.

On February 15, 2007, the Applicant prepared and filed Motion to Hold Debtors in Contempt and for Award of Monetary Sanctions (the "Contempt Motion"). On March 13, 2007, the Court issued a notice setting a hearing on the Contempt Motion for April 2, 2007. On April 2, 2007, three hours prior to the hearing, the Debtors filed an emergency motion to strike the Contempt Motion arguing, among other things, that the Contempt Motion was moot because the Debtors were simultaneously serving responsive documents (documents that the Court had ordered the Debtors to produce by January 30,

2007 and which the Trustee had continually sought since April, 2006). As a result of the Debtors' last minute compliance with the court's order to compel, the Court entered an order (Docket No. 534) continuing the hearing on the Contempt Motion until April 25, 2007 to allow the Trustee to review the "fairly extensive amount of documents" produced by the Debtors. Docket No. 534 at p. 2. On April 25, 2007, the Court held the hearing on the Contempt Motion which was not completed and was ultimately continued until July 18, 2007, at which the Debtors did not appear. The Court granted the Contempt Motion by order dated September 27, 2007.

In addition, the Applicant, on behalf of the Trustee and the estate, prepared and filed Motion for Order Authorizing Trustee to Enter Into Sales Agreement and Approving Sale of Certain Real Property Free and Clear of all Liens of Claims, Interests and Encumbrances (the "Sale Motion"). The Debtors opposed the Sale Motion and the Court held a hearing on it on April 23, 2007. The hearing on the Sale Motion was extensive and the Court allowed the Debtors, through Ralph Byrd, to present their arguments in opposition of the sale. After due consideration, the Court entered an order approving the sale.

Unbeknownst to the Court or the Trustee, on the morning of the hearing on the Sale Motion, the Debtors filed a complaint in the Circuit Court for Montgomery County seeking, inter alia, to impose a constructive trust on the property in a flagrant attempt to thwart the Trustee's efforts to sell the property. As a result, the Trustee, through the Applicant, was forced to file Emergency Motion for Relief Due to Violations of the Automatic Stay. Docket No. 549. On May 24, 2007, the Court entered an order granting in part that emergency motion, enjoining the Debtors from prosecuting the Circuit Court

lawsuit, and setting the remaining issues for hearing. Docket No. 583.  In the injunction order, the Court enjoined the Debtors from "filing, pursuing or maintaining any action in state or federal court seeking to obtain possession, custody, control of or any interest in" the Property.  See Docket No. 583 at p. 2.   The Debtors did not heed the injunction order. Instead, the Debtors willfully violated the injunction order by filing and serving a second amended complaint still seeking the imposition of a constructive trust on the Property. As a result, on June 1, 2007, the Applicant, on behalf of the Trustee and the estate, filed Emergency Motion for Relief Due to Flagrant Violations of this Court's Order Entered May 18, 2007.  Docket No. 595.  The Court held a hearing on the sanctions motions on July 18, 2007, and the Debtors failed to appear.   At the hearing, the Applicant, on behalf of the Trustee and the estate, put forward extensive evidence including exhibits and witness testimony in support of the two sanctions motions.  The Court granted the sanctions motions by order dated September 27, 2007.

The services provided by the Applicant during the Application Period have significantly contributed to the progress made in the administration of the Debtors' bankruptcy case.  At the start of the Application Period, the Debtors were still in possession of the Property and were contesting their removal.  The Applicant successfully prosecuted the Debtors removal from the Property.  In addition, the Applicant was successful in consummating the sale of the Property over the Debtors' objection and despite the Debtors' challenge to the Trustee by filing the action in Montgomery County Circuit Court.

Based on a review of the record, the standards to be applied, and the results obtained, the Court finds and concludes that the fees for professional services incurred by

the Applicant during the Application Period are reasonable compensation for the actual

and necessary services rendered by the Applicant in this case pursuant to 11 U.S.C. §

330(a)(1).  The Court further finds and concludes that the expenses sought during that

period constitute reimbursement for actual, necessary expenses also pursuant to 11

U.S.C. § 330(a)(1).  In making these determinations, the Court has considered the nature,

extent and value of such services, taking into account the factors enumerated under 11

U.S.C. §330(a)(3).  Accordingly, the Court will grant the Application.

**B.     The Debtors' Objection is without merit.**

As stated above, the Debtors raised two grounds in the Objection in opposition to

the Application.  The first ground – in which they incorporate by reference "all previous

objections to previous administrative claims" – can be summarily denied.  First, the

Debtors failed to appear to prosecute their Objection.  Second, there are now over 1100

docket entries in this bankruptcy case, No. 04-35620, and its predecessor case, No. 01-

25006.  It is not incumbent on either the Court or the Applicant to peruse those entries

and determine which of the Debtors' "previous objections" might apply.

The Debtors' second ground for the Objection is the contention that "the Fourth

Circuit Court of Appeals in Case No. 06-2042 ruled that the very appointment of the

Chapter 11 Trustee in the underlying case is still to be reviewed in the context of whether

such administrative claims are to be granted."  Objection at p.1.  The Debtors contend

that the Bankruptcy Court erred in ordering the appointment of a Chapter 11 trustee by

order dated July 14, 2004, at a time when Case No. 01-25006 was in Chapter 11. Docket

No. 212.   The Debtors further contend that this alleged error should result in the denial

of all administrative claims in the case since that time, including the present Application. This Court disagree.

The Court specifically set the matter for hearing to allow the Debtors to establish their claim that, because the Bankruptcy Court erred in appointing the Chapter 11 trustee, all administrative claims should be denied.  The Debtors failed to appear and carry their burden.  Further, the Debtors have offered no facts or legal authorities to support their notion either that the appointment of the Chapter 11 trustee was in error, or that all administrative fees should be denied as a result of such an error.  These procedural deficiencies - the Debtors' failure to appear at the hearing and their failure to allege facts or cite any authorities in support of their Objection – are alone sufficient for the Court to deny the Objection.  Accordingly, the Objection is denied for those reasons.

Nonetheless, because the Debtors contend that the Court of Appeals for the Fourth Circuit has mandated that the Court review the appropriateness of the appointment of the Chapter 11 trustee in the context of resolving administrative fee claims, the Court will do so, notwithstanding the Debtors' failure to appear at the hearing.

**1.  Facts leading to the appointment of the Chapter 11 Trustee.**

On December 14, 2001, Platinum Financial Services, Inc., a creditor, filed an involuntary Chapter 7 bankruptcy petition against Ralph T. Byrd initiating Case No. 01-25006.  Mr. Byrd vigorously opposed the filing.  On July 17, 2002, the Court entered an order for relief on the involuntary petition.  Docket No. 53 in Case No. 01-25006.  The order for relief required Mr. Byrd to file the Statement of Financial Affairs, Schedules A-J and a creditor mailing matrix within 15 days.  Id. at p.1.  On July 18, 2002, Roger Schlossberg was appointed the Chapter 7 trustee (the "First Chapter 7 Trustee").

The Debtor refused to cooperate with the First Chapter 7 Trustee's efforts to administer the estate by for example, failing to file the Schedules and Statement of Financial Affairs (despite the order to do so) or attending the Section 341 meeting of creditors.  On September 13, 2002, the First Chapter 7 Trustee filed a Motion to Authorize the Trustee to Inspect and Secure Assets.  Docket No. 85 in 01-25006.  In that motion, the First Chapter 7 Trustee alleged that:

> The debtor is causing an undue delay of the administration of this case by failing to comply with the orders of this Court, he has refused to obey a lawful order of the Court (the Order for Relief) and to explain satisfactorily the loss of assets or deficiency of assets to meet the Debtor's liabilities.

Id. at ¶18.  Mr. Byrd's refusal to file the necessary documents or otherwise cooperate with the First Chapter 7 Trustee was based on his contention that the Bankruptcy Court lacked jurisdiction over the case until his appeal to the District Court of the order for relief was resolved.  See e.g. Docket No. 81 in Case No. 01-25006.  This contention was unsupportable, since the order for relief was never stayed pending appeal.

A review of the record reveals that this pattern - Mr. Byrd failing to comply with the duties of a debtor resulting in the First Chapter 7 Trustee filing motions in an effort to require compliance - continued through January, 2003.  See e.g.:

> o   Motion by Trustee Roger Schlossberg to Compel Debtor To Appear At Meeting of Creditors and To Provide Documentation Concerning Assets of the Estate. Docket No. 88, in Case No. 01-25006.
>
> o   Second Motion by Trustee Roger Schlossberg to Compel Debtor To Appear At Meeting of Creditors and To Provide Documentation Concerning Assets of the Estate. Docket No. 89, in Case No. 01-25006.
>
> o   Motion by Debtor Ralph T. Byrd To Strike For Lack of Jurisdiction Second Motion By Trustee Roger

14

Schlossberg to Compel Debtor To Appear At Meeting
of Creditors and To Provide Documentation
Concerning Assets of the Estate. Docket No. 95, in
Case No. 01-25006.

o   Order Granting Motion To Authorize Trustee To
Inspect and Secure Assets by Roger Schlossberg.
Docket No. 106, in Case No. 01-25006.

o   Emergency Motion by Trustee Roger Schlossberg For
Entry Of An Order For Writ of Assistance From the
U.S. Marshal and Holding Debtor in Civil Contempt
For Failure To Comply With Order Granting
Trustee's Motion To Authorize Trustee To Inspect
and Secure Assets. Docket No. 117, in Case No. 01-
25006.

On December 18, 2003, the Court entered the Order Granting Motion To Compel

Debtor To Appear At Meeting of Creditors and To Provide Documentation Concerning

Assets of the Estate. Docket No. 107, in Case No. 01-25006.  That order required Mr.

Byrd to file fully completed schedules and other documents within 10 days and to attend

the meeting of creditors.  It further provided that:

ORDERED, that if Debtor fails to do any of the foregoing, upon
request of Trustee, the Court will enter a civil contempt order
necessary to obtain compliance by Debtor with this Order and/or the
Order Granting Trustee's Motion to Authorize Trustee to Inspect and
Secure Assets, including without limitation, incarceration.

Id at p. 2 (emphasis added).  The Court required service of the order on Mr. Byrd by

certified mail. Id.

In the meantime, Mr. Byrd appealed the order for relief.  The United States

District Court for the District of Maryland reversed the entry of the order for relief on

January 24, 2003.  Thereafter, this Court entered an Order Staying All Matters and

Continuing All Hearings on April 15, 2003, pending the appeal of the District Court's

decision to the United States Court of Appeals for the Fourth Circuit.  Docket No. 151 in

Case No. 01-25006.  On February 11, 2004, the United States Court of Appeals for the

Fourth Circuit reversed and remanded the District Court's decision reversing the entry of

the order for relief.  <u>See</u> Docket No. 151 in Case No. 01-25006.  This Court then entered

an order terminating the stay.  Docket No. 169 in Case No. 01-25006.

At the time that the case was stayed in April, 2003, Mr. Byrd had yet to file his

Schedules and Statement of Financial Affairs or attend the meeting of creditors, despite at

least two prior express orders requiring him to file the documents and one order requiring

him to attend the Section 341 meeting.  The First Chapter 7 Trustee restarted his efforts

to require Mr. Byrd to perform these very basic duties of a Chapter 7 debtor.  The Court

duly scheduled a hearing for June 23, 2004, at which Mr. Byrd failed to appear.  After

reviewing the evidence presented and the record in the case, the Court entered on June

24, 2004, yet another order in which it required Mr. Byrd to file his Schedules and

Statement of Financial Affairs, attend the Section 341 meeting of creditors and allow the

First Chapter 7 Trustee immediate access to his residence for inspection and examination

upon 24 hour notice.  Order Compelling Debtor, Docket No. 176 in Case No. 01-25006.

The order further provided that based on "the testimonial and documentary evidence as

presented at the hearing, . . . and based on this Court's review of the docket in this case

reflecting <u>a complex and difficult proceeding caused by the Debtor's lack of compliance</u>

<u>with court orders</u>":

> ORDERED, that if the Debtor fails to perform any of the preceding
> actions [filing schedules, attending the Section 341 meeting and
> allowing the First Chapter 7 Trustee access to the residence], the
> Court will schedule and will conduct an expedited emergency
> hearing to consider the matter of Debtor's civil contempt pursuant
> to 11 U.S.C. § 105 and <u>In re Walters</u>, 868 F.2d 665

16

(4th Cir. 1989); and it is further,

ORDERED, that if the Court finds that at such hearing that the Debtor has failed to perform any of said preceding actions identified in paragraphs A, B or C above, the Court will enter an order ("Contempt Order") granting such relief as deemed by this Court to be the least severe sanctions necessary to obtain the Debtor's compliance with this Order and in light of the repetitive nature of the offending conduct and the harm caused to the Estate and the creditors of the Estate by the Debtor's contumacious conduct which may include:

    1.    Provisions directing the immediate incarceration of the Debtor and retaining the Debtor in such custody until such time as the Debtor purges said contempt;

    2.    Provisions requiring the U.S. Marshal to take custody of the Debtor while He is being retained and to produce him at a scheduled meeting of creditors for purposes of testifying and, if the Debtor remains in contempt after such testimony, requiring the U.S. Marshal to return the Debtor into custody until such time as the Debtor fully purges said contempt, and

    3.    Provisions requiring the Debtor to pay all expenses and costs related to his wrongful conduct as above described including, without limitation, the payment of $26,195 attorneys' fees and expenses to the Estate and any additional costs and expenses related to the enforcement of this Order and to have a hearing on, and the enforcement of, the Contempt Order.

IT IS FURTHER ORDERED, that in the event the Debtor fails to comply with paragraph D of this Order (unfettered access); the Trustee may immediately seek a Writ Of Assistance for the U.S. Marshal to place the Trustee in sole, complete and exclusive possession of the Property, with the U.S. Marshal having the authority to remove all persons within the Property, to assist the Trustee to change all locks and security systems and to provide such other assistance that is reasonably necessary so that the Trustee shall be the only person having lawful access to the Property; such action being necessary to enable the Trustee to administer the Estate.

Docket No. 176 in Case No. 01-25006 at pp. 4-5 (emphasis added). The order, as

amended, required Mr. Byrd to file the documentation by July 2, 2004 at 5:00 p.m..

Docket No. 178 in Case No. 01-25006 (amended order).

The next day, June 25, 2004, Mr. Byrd filed an emergency motion to convert the case to Chapter 11 (which was permitted as a matter of right), which was granted by the Court that day.  Docket No. 180 and 183 in Case No. 01-25006.  Mr. Byrd also filed a motion to reconsider the June 24, 2004 order, stating that his decision to convert the case to Chapter 11 rendered much of the order moot. Docket No. 182 in Case No. 01-25006. The Bankruptcy Court denied that motion in part by order dated June 25, 2004, ordering that:

> The requirement that the debtor file the long over due schedules and statement of financial affairs is unaltered. As to inspection of property, so long as debtor is a "debtor in possession" under Section 1101 (a), the United States Trustee is granted those rights granted to the Chapter 7 Trustee by order entered June 24, 2004.

Docket No. 184 in Case No. 01-25006.

Within a matter of days, the Office of the United States Trustee, Platinum Financial Services and the First Chapter 7 Trustee, filed emergency motions to reconvert the case to Chapter 7.  See Docket Nos. 190 and 193 in Case No. 01-25006.  The motions asserted that cause existed to reconvert the case to Chapter 7 because (1) Mr. Byrd had failed to file the required documentation, attend the meeting of creditors or allow the First Chapter 7 Trustee access to inspect the residence; (2) the deadline for filing preference and other avoidance actions was July 16, 2004, and Mr. Byrd had failed to take appropriate action to file or preserve such actions; and (3) there was a substantial risk that Mr. Byrd's residence was about to be lost through foreclosure, which would severely prejudice the estate and creditors, and conversion was necessary so a Chapter 7 trustee could timely sell there residence for the benefit of creditors; and (4) Mr. Byrd had acted in bad faith throughout the case and had violated and ignored Court orders.  See e.g.,

Docket No. 190 in Case No. 01-25006 at pp. 11-12.  With respect to the avoidance actions, the movants pointed out that because Mr. Byrd had failed to file the Schedules and Statement of Financial Affairs, the movants, including the Office of the U.S. Trustee, could not even determine which avoidance actions existed.

In the alternative, the motions requested that the Court immediately appoint a Chapter 11 Trustee for the same grounds upon which they relied in seeking to reconvert the case.  Id. at pp. 12-14.

The motions to reconvert the case were set for hearing on July 6, 2004.  Because of the pending limitations deadline for filing avoidance actions, the Court took the unusual step of ordering Mr. Byrd to appear at the hearing and to be able to respond to questions concerning the information required to be addressed in the Schedules and Statement of Financial Affairs.  Docket No. 196 in Case No. 01-25006.

On July 6, 2004, the morning of the scheduled hearing, Mr. Byrd finally filed the Schedules and Statement of Financial Affairs.  Docket Nos. 203 and 204 in Case No. 01-25006.   He also filed an objection to the conversion motions. Docket No. 202.  In it, he stated that he had now filed his Schedules and Statement of Financial Affairs and that those filings "show no need for any [avoidance] actions under . . .the Bankruptcy Code." Id. at p.1.  He also contended that his failure to file the Schedules and Statement of Financial Affairs and attend the meeting of creditors was excusable, that he had sufficient equity in his residence to pay all creditors in full, and that reconverting to Chapter 7 would severely disrupt his law practice. Id.

The hearing was continued to July 14, 2007.  At the hearing, among other witnesses, the First Chapter 7 Trustee testified that his investigation revealed that there

were pre-petition transfers that were subject to avoidance actions, including a judgment lien against Mr. Byrd's residence obtained by Platinum Financial Services. See Docket No. 221 in Case No 01-25006 (Transcript of July 14, 2004 hearing) at pp. 16-18.  He further testified that his investigation was not complete because Mr. Byrd refused to allow him or the Office of the United States Trustee to copy any of the documents he produced, but would only allow the parties to review them.  Id. at p. 17. He testified that the residence was in terrible condition, and that Mr. Byrd admitted to him that the Byrds did not have the money to take care of the house.  Id. at 29.  He testified that Mr. Byrd had provided no evidence that the Byrds had made payments on the second deed of trust on the residence, and that the Court previously entered an order on June 24, 2004, allowing the deed of trust lender to commence foreclosure proceedings against the residence on August 24, 2004.  Id. at 29-31.  He testified that, based on Mr. Byrd's answers to his examination, he believed Mr. Byrd's schedules were incomplete. Id at 38. He testified that he could not gain access to the residence despite the Court order requiring Mr. Byrd to permit access.

The Court did not grant the motion to reconvert but instead ordered the appointment of a Chapter 11 trustee. See id. at 42 – 44; 76 – 81. The Court did not fault Mr. Byrd for pursuing his appeal rights of the order for relief, but expressly noted that Mr. Byrd "failed to obey this Court's orders to file schedules,"  that the District Court's order reversing the order for relief "did not excuse Mr. Byrd's failure to obey orders that were enforceable" prior to that time, and that when the Fourth Circuit sent the case back to the Bankruptcy Court, "Mr. Byrd should have forthwith filed the schedules then and failed to do so." Id at 76-77.  The Court concluded there were two "potential imminent

and devastating time threats to the realization by the estate of assets which may be necessary to pay creditors." Id at 78.  The first was the fact that the deed of trust holder had obtained relief from the automatic stay and could soon commence foreclosure proceedings because Mr. Byrd had not carried out the adequate protection order entered by the Court.  Id. The second was that the limitations period on bringing avoidance actions was set to expire in three days and Mr. Byrd was not going to file any avoidance actions. The Court concluded:

> It is clear that to protect the estate the Court cannot leave Mr. Byrd as the debtor-in-possession solely responsible and solely having the power to do those acts to protect these assets, i.e., to immediately aggressively market the property. And to immediately to the extent it seems appropriate, and I am not mandating it, file such actions that would stop limitations from running.

Id. at 80. Further, the Court noted that appointing a Chapter 11 trustee would address one of Mr. Byrd's concerns, as a Chapter 11 trustee would not substantially interfere with Mr. Byrd's law practice and would not stand in the shoes of Mr. Byrd with respect to his clients. Id.

The Court entered an Order Requiring the Appointment of a Chapter 11 Trustee, Docket No. 212 in Case No 01-25006, and Gregory P. Johnson was subsequently appointed the Chapter 11 Trustee (the "Chapter 11 Trustee").

On November 11, 2004, Beverly S. Byrd ("Ms. Byrd") filed a petition under Chapter 13 of the Bankruptcy Code initiating case No. 04-35620.  Shortly thereafter, the Chapter 11 Trustee filed a motion to substantively consolidate Mr. and Ms. Byrd's bankruptcy proceedings.  With the consent of the Debtors, the Court granted the consolidation request on January 13, 2005.  The consolidation of the cases terminated the Chapter 11 proceeding and the appointment of the Chapter 11 Trustee.

The consolidated proceeding continued in Chapter 13 as Case No. 04-35620. On January 30, 2006, the Court denied confirmation of the Debtors' Chapter 13 plan without leave to amend. Docket No. 198. The case was converted to Chapter 7 on March 20, 2006. Docket No. 249. Mr. Johnson, who served as the Chapter 11 Trustee, was appointed as the Chapter 7 trustee and continues to serve in that position.

**2.      Standards for the appointment of a Chapter 11 Trustee.**

In a Chapter 11 case, the bankruptcy estate is generally administered by the debtor as a debtor-in-possession, who essentially has all of the rights, powers and duties of a trustee. See 11 U.S.C. §§ 1101(1); 1107(a). The debtor-in-possession is a fiduciary that must act in the interests of the creditors, not in his own interests and the interests of the other constituents in a bankruptcy case. Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.), 958 F.2d 602, 605 (4th Cir. 1992) ("The debtor-in-possession does not act in his own interests, but rather in the interests of the creditors.") See also, Dunes Hotel Assocs. v. Hyatt Corp., 245 B.R. 492, 506 (D. S.C. 2000)( "A trustee or debtor-in-possession is a fiduciary that should act in the interests of the creditors, not in its own interests."); Wolf v. Weinstein, 372 U.S. 633, 649, 10 L. Ed. 2d 33, 83 S. Ct. 969 (1963) ("so long as a debtor remains in possession, it is clear that a corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the debtor out of possession").

Although a debtor generally serves as debtor-in-possession, that arrangement is not absolute. Section 1104(a) of the Bankruptcy Code authorizes the bankruptcy court to appoint a trustee

> (1) for cause, including fraud, dishonesty, incompetence, or gross
> mismanagement of the affairs of the debtor by current management,

22

either before or after the commencement of the case, or similar cause,…(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to…the amount of assets or liabilities of the debtor; or (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).  "A determination of cause,  . . . is within the discretion of the [bankruptcy] court and due consideration must be given to the various interests involved in the bankruptcy proceeding."  Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir. 1987).  The Bankruptcy Court has discretion in finding whether cause exists to appoint a Chapter 11 Trustee because "…a policy of flexibility pervades the bankruptcy code with the ultimate aim of protecting creditors."  Id.  See also, King et al, Collier on Bankruptcy, ¶ 1104.02 (15th ed. Rev. 2007) ("The flexible standards embodied in section 1104(a) are intended to accommodate two goals: (1) facilitation of the debtor's reorganization; and (2) protection of the public interest and of creditors.").[3]  A debtor in possession's failure to prosecute a preference claim on behalf of the estate may constitute cause to appoint a chapter 11 Trustee.  See Goldberg v. Craig

---

[3]  Various courts have held that the appointment of a Chapter 11 trustee in a bankruptcy proceeding is an extraordinary remedy, and should be considered as the exception to the general rule that a Chapter 11 debtor remain in possession of its own affairs and that there is a strong, yet rebuttable presumption that current management will remain in control of the reorganizing debtor.  See e.g., In re Funge Sys., No. 01-12219, 2002 Bankr. LEXIS 1937 at *11 (Bankr. E.D. Va. Oct. 17, 2002) and cases cited therein.  In addition, at least two courts have held that "[i]n every motion to appoint a trustee under Section 1104(a), the Movant must prove the need for a trustee by clear and convincing evidence."  Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 295 B.R. 502, 507 (D.N.J. 2003), aff'd, 385 F.3d 313 (3d Cir. 2004) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1218 (3d Cir. 1989)). This standard appears to be stricter than the Fourth Circuit's approach, which allows for more discretion on the part of the bankruptcy judge, and which approach is more consistent with the language of Section 1104(a), allowing the appointment if it is in the "interest of creditors." 11 U.S.C. §1104(a)(2).  However, for the reasons stated below, even under this stringent standard, the Court finds and concludes that there was overwhelming, clear and convincing evidence that the appointment of a Chapter 11 trustee was appropriate in Ralph Byrd's bankruptcy case.

(In re Hydro-Action, Inc.), 341 B.R. 186, 192 (Bankr. E.D. Tex. 2006) (stating that a debtor in possession's failure to prosecute a claim on behalf of the estate may be grounds for the appointment of a trustee under 11 U.S.C. § 1104(a)).

**3.    The appointment of a Chapter 11 Trustee was entirely appropriate.**

Applying the above standards, it is apparent that the appointment of a Chapter 11 Trustee was entirely proper and appropriate for several reasons.

First, Mr. Byrd had consistently violated Court orders, had failed to file his Schedules and Statement of Financial Affairs and had failed to attend the Section 341 meeting of creditors.  Indeed, Mr. Byrd did not file the documents required by the Bankruptcy Code and prior Court orders until he was threatened with incarceration unless and until he did so. These actions are hardly the actions of a fiduciary of the estate.

Second, Mr. Byrd made it clear he was not going to file any avoidance actions because he believed they lacked merit.  The appointment of the Chapter 11 Trustee, who could objectively review the merit of such potential actions and bring them as appropriate, was necessary to preserve whatever value those actions had for the estate. Indeed, within three days of the Court's order ordering the appointment of the Chapter 11 Trustee, he commenced adversary proceeding number 04-01923 in which he sought to avoid the judgment lien in the approximate amount of $20,000 obtained against the Byrd's residence by Platinum Financial Services Inc. within 90 days of the filing of the petition.  That adversary proceeding resulted in the avoidance of that lien, thereby providing a $20,000 benefit to the estate.  See Docket No. 4 in Adv. Proc. 04-1923.  That adversary proceeding, and the Chapter 11 Trustee's success in bringing it, certainly provides further vindication of the decision to appoint the Chapter 11 Trustee.

Third, Mr. Byrd had failed to make payments on his second deed of trust and there was a substantial risk that the residence would be lost to foreclosure. Because of his failure to make the payments, the holder of that lien obtained relief from the automatic stay and was authorized to commence foreclosure proceedings by August 23, 2004.   In order to preserve the value of that property for the estate, the appointment of a trustee was necessary to market the property and negotiate a resolution with the creditor. As the Court put it, the risk of that effort failing fell exclusively on the creditors, making the appointment of a trustee appropriate.

Finally, the appointment of a Chapter 11 trustee also took into account Mr. Byrd's interests as well. The appointment of a Chapter 11 trustee, as opposed to converting the case to Chapter 7, provided him with the opportunity to file a plan of reorganization if he believed he could successfully reorganize his affairs, and would not interfere substantially with his law practice.

In sum, the Court finds and concludes that the appointment of a Chapter 11 trustee was proper and appropriate under each of the three prongs of Section 1104(a), namely, cause existed for the appointment, the appointment was in the best interests of the creditors, and there were adequate grounds to convert the case to Chapter 7.  Finally, the Court makes these findings and conclusions applying any of the articulated standards for the appointment of a Chapter 11 trustee.  See, supra at n.3.

Accordingly, Mr. Byrd's contention that administrative fees should be denied is rejected on both procedural and substantive grounds.

### III.    CONCLUSION

For the foregoing reasons, the Court will approve the Application.

**cc:**

James Hoffman, Esq.
11921 Rockville Pike
Suite 300
Rockville, MD 20852

U.S. Trustee's Office
6303 Ivy Lane, Suite 600
Greenbelt, MD 20772

Ralph T. Byrd
P.O. Box 5278
Laytonsville, MD 20882

Ronald S. Canter, Esquire
Wolpoff & Abramson, L.L.P.
Two Irvington Centre
702 King Farm Boulevard
Rockville, Maryland 20850-5775

Gregory Johnson, Esq.
1213 Cabinwood Place
Silver Spring, MD 20904

Roger Schlossberg, Esquire
Chapter 7 Trustee
134 West Washington Street
Hagerstown, Maryland 21740

Beverly S. Byrd
P.O. Box 5278
Laytonsville, Maryland 20882