# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DISTRICT

BEVERLY BYRD, *et al.*,         *

                          *

       Plaintiffs,             *

                          *

           v.               *         Civil Action No. AW-07-1730

                          *

JAMES M. HOFFMAN, *et al.*,      *

                          *

       Defendants.          *

                          *

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OPINION

This appeal arises from the May 24, 2007[1] Amended Order of Thomas Catliota, United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Granting in Part Trustee's Emergency Motion for Relief from the Automatic Stay, Enjoining Respondents and Declaring Complaint Void in Part, and the June 7, 2007 Order Denying Reconsideration. The appeal has been fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D.Md. 2008). For the reasons explained fully below, the Court AFFIRMS the Amended Order and Rulings of the Bankruptcy Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellants Beverly Byrd and Ralph Byrd ("Appellants") are not unknown to this Court, having repeatedly filed eight appeals to the District Court and four appeals to the Fourth Circuit related to their bankruptcy matter.[2] The following facts are those pertinent to this appeal. On

---

[1] The Memorandum of Decision was issued on May 18, 2007.

[2] Appellants have filed the following District Court appeals: 02-CV-02675JFM; 03-CV-00600PJM; 04-CV-03312JFM; 05-CV-02389AW; 06-CV-00895AW; 06-CV-02704AW; 07-CV-00328AW; and 07-CV-01421AW. Appellants have filed the following appeals to the Fourth Circuit: 06-2042; 07-1126; 07-1138; and 07-1336.

December 14, 2001, an involuntary petition for Chapter 7 bankruptcy was filed against Appellants in the United States Bankruptcy Court for the District of Maryland.  On June 25, 2004, the matter was converted to a Chapter 11 bankruptcy at Appellants' request.

On March 23, 2007, the bankruptcy Trustee filed a Motion for Order Authorizing Trustee to Enter into Sales Agreement and Approving Sale of Certain Real Property Free and Clear of All Liens, Claims, Interests, and Encumbrances ("Sale Motion") to get approval from the Bankruptcy Court to sell some of Appellants' property that formed part of the bankruptcy estate ("Property"). Appellants filed an opposition, and the Bankruptcy Court scheduled a hearing on the Sale Motion ("Sale Hearing") for April 23, 2007.  At the Sale Hearing, the court approved the sale over Appellants' general objections and entered an Order approving the sale free and clear of all liens, claims, interests, and encumbrances ("Sale Order") on April 25, 2007.[3]

On the same day as the Sale Hearing, Appellants filed a complaint against the bankruptcy Trustee and other Defendants[4] in the Circuit Court for Montgomery County, alleging abuse of process and civil conspiracy and seeking the imposition of a constructive trust against the Property as a remedy, with the rights, title, and interest in the property to be conveyed to Appellants. Appellants apparently filed this complaint in response to the Trustee's correspondence with the Maryland Attorney Grievance Commission ("the Commission").  According to Appellant, the Trustee sent certain documents relating to the administration of the estate, which were provided by

---

[3] The Bankruptcy Court, in approving the sale, found that "the Trustee had properly exercised his business judgment in approving the sale; the sale of the Property as proposed was fair and reasonable; and the sale was being proposed for a sound purpose and in good faith."  *See* Record Entry No. 573, Memorandum of Decision at 8.

[4] The other Defendants named in Appellants' Amended State Court Complaint included two former trustees of the bankruptcy estate; two law firms that represent consumer debt collection companies and several partners and associates of those firms; one law firm that represents creditors and U.S. bankruptcy trustees, and a partner of that firm; an Assistant Bar Counsel and investigator for the Attorney Grievance Commission of Maryland; and the persons who purchased the Property from the bankruptcy trustee.

Appellant, to the Commission and expressed his suspicions surrounding the documents' authenticity. As to the constructive trust claim, Appellants alleged in their state court complaint that the Trustee was preparing to sell the Property below market value in an effort to destroy Appellant Ralph Byrd's law practice. At the Sale Hearing, Appellants neither disclosed the filing of the state court complaint to the Bankruptcy Court nor objected to the sale of the Property free of their alleged constructive trust claim.

On May 7, 2007, the Trustee filed an Emergency Motion for Relief Due to Violations of the Automatic Stay ("Emergency Motion") in the Bankruptcy Court, seeking an injunction and sanctions against Appellants for violating the automatic stay and the Barton Doctrine by filing suit against the Trustee in state court. Appellants filed an opposition to the Emergency Motion, disputing that they violated the automatic stay or the Barton Doctrine and contended that their state court constructive trust claim survives the Sale Order.

On May 18, 2007, the Bankruptcy Court granted the Trustee's motion and ordered the Appellants enjoined from: (1) filing and pursuing any state or federal court action seeking any interest in the Property; (2) taking any action whatsoever to encumber the Property; (3) taking any action to hinder or prevent the sale of the Property; and (4) taking any action against the Trustee or the Trustee's counsel without first seeking leave of the bankruptcy court. The court also voided the state court complaint and expressly ordered that the sale of the Property continue free and clear of any constructive trust or other claims asserted by Appellants.[5]

On June 4, 2007, Appellants filed a Motion to Reconsider, which the Bankruptcy Court

---

[5] The Court issued its ruling in a Memorandum of Decision and Order on May 18, 2004. The Court subsequently issued an Amended Order on May 24, 2007, which is identical to the previous Order, except that it additionally enjoins Appellants from filing suit or maintaining any action against the Trustee's counsel, James M. Hoffman, and his law firm. This is also the Order from which Appellants' appeal is taken.

denied on June 7, 2007, finding no grounds for reconsideration. Appellants filed the instant appeal to this Court on July 17, 2007.

## STANDARD OF REVIEW

This Court reviews the legal conclusions of the Bankruptcy Court *de novo*, but reviews its factual determinations for clear error. *Butler v. Shaw*, 72 F.3d 437, 441 (4th Cir.1996); *Three Flint Hill Ltd. Pshp. v. Prudential Ins. Co.* (*In re Three Flint Hill Ltd. Pshp.*), 213 B.R. 292, 297 (D. Md. 1997). On legal issues, this Court "must make an independent determination of the applicable law." *In re Jeffrey Bigelow Design Group, Inc.*, 127 B.R. 580, 582 (D. Md. 1991), *aff'd*, 956 F.2d 479 (4th Cir. 1992). Moreover, a finding of fact is clearly erroneous "only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Broyles*, 55 F.3d 980, 983 (4th Cir. 1995) (internal quotations omitted). Finally, the Bankruptcy Court's application of law to the facts is to be reviewed for abuse of discretion. *In re Robbins*, 964 F.2d 342, 354 (4th Cir. 1992) (decision to lift automatic stay).

## ANALYSIS

### I.

Appellants raise five issues on appeal. They first contend that they did not violate the automatic stay because they merely filed the state court complaint but never served the complaint on the Trustee. The Court rejects outright Appellants' argument on this point, as Appellants' offer no case support for the proposition that there exists a legal distinction between filing and service of a complaint for the purposes of an automatic stay violation. According to the bankruptcy statute, the filing of a bankruptcy petition operates as a stay, applicable to all entities, of "(3) *any act* to obtain possession of property of the estate or of property from the estate or to exercise control over

4

property of the estate . . . ." 11 U.S.C. § 362(a)(3) (emphasis added).  Initiating a lawsuit seeking a constructive trust against the property of a bankruptcy estate, as Appellants did here, qualifies as an "act" in violation of the automatic stay.  *See Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.*), 423 F.3d 567 (6th Cir. 2005).

The Bankruptcy Court below relied on *Amedisys* in finding that the state court complaint violated the automatic stay, and, as a result of the violation, the Bankruptcy Court voided the state court complaint.  In *Amedisys*, the Sixth Circuit affirmed the bankruptcy court's enforcement of the automatic stay against the creditor, which sought in a state court action to recover funds from the bankruptcy estate on a constructive trust theory.  423 F.3d at 573-75.  The court affirmed the district court's conclusion that the creditor's constructive trust theory operated as an assertion of dominion over the estate funds, which formed part of the estate property.  *Id.* at 575.

There is little distinction between the creditor's actions in *Amedisys* and Appellants' actions here.  Here, as in *Amedisys*, Appellants initiated a lawsuit in state court seeking the transfer of title of the Property on a constructive trust theory.  It is clear to the Court that Appellants were attempting to assert dominion and control over the Property.  Specifically, in the state court complaint, Appellants sought an order for the Trustee "to convey all of his right, title, and interest in the property . . . to [Appellants] free from all liens, mortgages and other encumbrances. . . ." *See* State Court Complaint at 16.  Here, as in *Amedisys*, the Property undoubtedly forms part of the bankruptcy estate and any act to assert dominion over the property runs counter to the automatic stay.  Given Appellants' actions in filing suit with the purpose of gaining control over the Property, and given that Appellants attempt to split hairs on the distinction between the "filing" and "serving" of a complaint without offering any support for their contention that violating the automatic stay

5

necessitated serving the complaint on the Trustee, the Court finds no clear error in the Bankruptcy Court's conclusion that Appellants violated the automatic stay. Furthermore, the Court finds that there was no abuse of discretion in the Bankruptcy Court voiding the state court complaint as a result of Appellants' violation of the automatic stay.

II.

Appellants next contend that the Bankruptcy Court incorrectly concluded that they violated the automatic stay and Barton Doctrine because Appellants' state court complaint was filed as a defensive measure in response to a possible state court action by the Commission to seek disciplinary action against Appellant Ralph Byrd. As previously discussed, Appellants violated the automatic stay merely by filing suit in state court for the purpose of gaining control of the Property, and therefore the Court rejects this argument as it relates to the automatic stay. If the Court followed Appellants' reasoning, it would, essentially, render meaningless the purposes of the automatic stay provision: keeping matters related to the property of the bankruptcy estate in the exclusive jurisdiction of the Bankruptcy Court.

The Barton Doctrine, so named after the United States Supreme Court case *Barton v. Barbour*, states that "leave of the appointing forum must be obtained by any party wishing to initiate an action in a non-appointing forum against a trustee for acts done in a trustee's official capacity." *In re Silver Oak Homes, Ltd.*, 167 B.R. 389, 394 (Bankr. D. Md. 1994); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*citing Barton v. Barbour*, 104 U.S. 126, 127 (1881) ("before suit is brought against a receiver, leave of the court by which he was appointed must be obtained")). The Barton Doctrine applies to lawsuits against bankruptcy trustees, such that any party

seeking to file suit against a trustee related to the trustee's administration of the estate must first seek permission of the bankruptcy court. *Muratore v. Darr*, 375 F.3d 140, 146 (1st Cir. 2004).[6]

In *Muratore*, the First Circuit affirmed the district court's dismissal of a bankruptcy debtor's lawsuit against the estate's trustee, which the debtor filed without seeking leave of the bankruptcy court. 375 F.3d at 143. The court found that the Barton Doctrine applied because the allegations against the trustee in the debtor's lawsuit, namely the trustee's failure to pay taxes and failure to file corporate returns, referred to the failure to perform the very acts the trustee was responsible for performing in his position as a Chapter 11 bankruptcy trustee. *Id.* at 145.

The First Circuit's decision in *Muratore* supports a similar conclusion here. The Bankruptcy Court found that the Trustee's actions, to which Appellants' suit was allegedly responsive, were done in the course of administering the bankruptcy estate and maintaining the bankruptcy case. *See* Memorandum of Decision at 17. Appellants' second amended state court complaint alleges only that the Bar Counsel of the Commission filed a complaint against Appellant Ralph Byrd based on its communications with, and documents received from, the Trustee. *See* State Court Complaint, ¶ 61. Appellants further allege that the Trustee communicated with the Commission in order to raise suspicions about the truthfulness of documents filed by Appellants per an order of the Bankruptcy Court. *See* Appellants' Brief at 18. Although the record does not indicate that the Trustee's administrative duties compelled him to communicate his suspicions to the Commission, there does seem to exist a nexus between the Trustee's actions and his duties as estate administrator because the effective administration of the estate would presumably depend, in part, on the authenticity of

---

[6] The Bankruptcy Court noted that although the Fourth Circuit has not adopted the Barton Doctrine in a published opinion, it has done so in an unpublished opinion. *See Gordon v. Nick*, 162 F.3d 1155 (Table) (4th Cir. 1998), 96-08158, 1998 WL 559734, *2 (4th Cir. Sept. 2, 1998).

the documents.[7]  As such, this Court finds no clear error in the Bankruptcy Court's finding that Trustee's actions were done in the course of administering the estate as the Court is not "left with the definite and firm conviction that a mistake has been committed."  *In re Broyles*, 55 F.3d at 983.  Therefore, the Bankruptcy Court did not commit clear error when it concluded that Appellants violated the Barton Doctrine by failing to seek leave before filing suit against the bankruptcy Trustee.

Even if the Bankruptcy Court had improperly applied the Barton Doctrine here, Appellants fail to provide any cases supporting their contention that filing a state court suit against a bankruptcy Trustee in response to correspondence between the Trustee and the Commission places their actions beyond the reach of the automatic stay or Barton Doctrine.  Appellants' reliance on *Fox & Co. v. Saxon Industries (In re Saxon Indus., Inc.)*, 43 B.R. 64 (Bankr. S.D.N.Y. 1984), fails in this regard because the facts and issues in that case are completely inapplicable to the facts and issues here.  *Saxon* involved a group of accountants that filed an adversary proceeding in bankruptcy court seeking to lift the automatic stay in order to counterclaim against the debtor, who had brought suit against the accountants in federal court.  *In re Saxon*, 43 B.R. at 65.  The bankruptcy court lifted the automatic stay, finding that it would be inequitable to allow the debtor to use the automatic stay provision to prevent the accountants from counterclaiming.  *Id.* at 67.  Here, unlike in *Saxon*, Appellants' suit against the Trustee was not a counterclaim to a pending suit by the Trustee.  Moreover, *Saxon* involved a party that sought to lift the automatic stay *before* filing a counterclaim, whereas Appellants here initiated the suit without first seeking permission from the Bankruptcy Court to lift the automatic stay or stay the application of the Barton Doctrine.

---

[7] In addition, the Court notes that members of the Bar, which includes Appellant Ralph Byrd, are required to maintain the highest levels of professionalism and candor with their fellow attorneys.  Deceptive practices by attorneys are not to be tolerated.

Likewise, Appellants' reliance on *In re Briarwood Hills Associates, L.P.*, 237 B.R. 479 (Bankr. W.D. Mo. 1999), fails. In that case, an estate trustee sought to hold a creditor in contempt for violating the automatic stay after the creditor counterclaimed against the trustee in the trustee's contribution claim against the creditor in bankruptcy court. *In re Briarwood*, 237 B.R. at 479-80. The bankruptcy court found that the automatic stay does not apply to proceedings in the bankruptcy court where the court has jurisdiction over the parties. *Id.* at 480. Moreover, the creditor's counterclaim in that case directly related to the allegations made against the creditor by the trustee, and courts have held that filing counterclaims in response to claims filed against a party by the trustee and which are related to the allegations made by the trustee does not violate the automatic stay. *Id.* at 480. Appellants here did not file their complaint in the Bankruptcy Court, nor was their suit responsive to a suit filed by the Trustee.

Finally, Appellants' reliance on *In re Filby*, 225 B.R. 532 (Bankr. D.N.H. 1998), likewise, fails. In that case, the bankruptcy court found that a creditor was not in violation of the automatic stay where its actions were responsive to orders by the state court in ongoing state court proceedings initiated before the debtor filed for bankruptcy. *In re Filby*, 225 B.R. at 535. Here, Appellants' actions were not ordered by any court nor were they required by any state court action initiated by the Trustee.

Furthermore, the Court is unconvinced that Appellants' actions in filing suit against the Trustee was the appropriate "response" to the Trustee's communications with the Commission. The Commission's proceedings are not conducted ex parte, and they allow parties to adequately respond and defend themselves to any allegations made against them. Appellant Ralph Byrd could have opposed the allegations against him in that more appropriate forum, which he ultimately did, rather

than unnecessarily filing a separate lawsuit in state court. Given Appellants' failure to seek leave from the Bankruptcy Court before filing suit against the bankruptcy Trustee and given that Appellants have failed to provide any support for their contention that their "responsive" suit places them outside of the reach of the automatic stay or Barton Doctrine, the Court finds that the Bankruptcy Court did not commit clear error by concluding that Appellants violated the automatic stay and Barton Doctrine by filing suit against the Trustee in state court.

**III.**

Appellants next argue that the success of their state court constructive trust claim was contingent on the state court's decision on their underlying abuse of process and civil conspiracy claims, and therefore their constructive trust claim was akin to a *lis pendens* – literally, "pending lawsuit" – the filing of which does not violate the automatic stay. In Maryland, the doctrine of *lis pendens* serves to give notice to all parties seeking to acquire property that such property is the subject of ongoing litigation and that the acquirer takes the property subject to the results of the litigation. *Greenpoint Mortgage Funding, Inc. v. Schlossberg*, 390 Md. 211, 223, 888 A.2d 297, 304 (2005). "[T]he doctrine derives from the jurisdiction and control which a court acquires over property involved in an action pending its continuance and until final judgment is entered." *Id.* Even if the Court were to assume that Appellants' constructive trust claim was akin to a *lis pendens*, which Appellants assert without support, Appellants' reliance on *Savers Federal Savings and Loan Ass'n v. McCarthy Construction Co. (In re Knightsbridge)*, 884 F.2d 145 (4th Cir. 1989), fails to support their contention that any *lis pendens* here does not violate the automatic stay.

In *Knightsbridge*, a creditor filed a *lis pendens* and then later amended the *lis pendens* **after** the debtor filed for bankruptcy. *In re Knightsbridge*, 884 F.2d at 146. The Fourth Circuit held that

an amendment to a *lis pendens* filing made after the debtor filed for bankruptcy did not violate the automatic stay where the original *lis pendens* filing was made before the bankruptcy petition was filed. *In re Knightsbridge*, 884 F.2d at 147. Indeed, seemingly in support of Appellants' contention here, the court found that the existence of an original or amended *lis pendens* does not violate the automatic stay provision, as it "is not within the eight [prohibited] categories of activity [as] proscribed by § 362 (a)", but rather serves simply to "notice a distinct proceeding, without operating to satisfy or secure the claim that inspired it." *Id.* at 147-48. However, the underlying distinct proceeding in that case involved ongoing state court activity initiated ***before*** the debtor filed its bankruptcy petition, namely the imposition of a mechanic's lien against certain of the debtor's property that subsequent to the petition became part of the bankruptcy estate. *Id.* at 146. Here, Appellants' asserted *lis pendens* notices a state court proceeding that both the Bankruptcy Court and now this Court have found was initiated in violation of the automatic stay provision, since it sought to assert dominion over property of the estate in violation of 11 U.S.C. § 362 (a)(3). By extension, any *lis pendens* that may exist to notice that proceeding also violates the automatic stay. This Court, therefore, finds that the Bankruptcy Court did not err in concluding that Appellants violated the automatic stay by filing a state court suit that included a constructive trust claim.

**IV.**

Appellants next make four arguments to support their contention that their constructive trust claim survives the Sale Order. Appellants first argue that the Bankruptcy Court incorrectly found that Appellants waived their constructive trust objection to the sale of the Property because under Maryland Rules 12-102(b),[8] Appellants gave adequate notice to the Bankrupcty Court of their

---

[8] Md. Code Ann., Rules §12-102 (b) states, "in an action to which the doctrine of *lis pendens* applies, the filing of the complaint is constructive notice of the *lis pendens* as to real property in the county in which the complaint is filed."

constructive trust claim. Appellants' next three arguments rely on 11 U.S.C. § 363(f) to support

their contention that their constructive trust claim survives the Sale Order. Section 363(f) states in

relevant part:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and
> clear of any interest in such property of an entity other than the estate, only if –
> > (1) applicable nonbankruptcy law permits sale of such property free and
> > clear of such interest;
> > (2) such entity consents;
> > (3) such interest is a lien and the price at which such property is to be sold is
> > greater than the aggregate value of all liens on such property;
> > (4) such interest is in bona fide dispute; or
> > (5) such entity could be compelled, in a legal or equitable proceeding, to
> > accept a money satisfaction of interest.

11 U.S.C. § 363(f). First, Appellants contend that § 363(f)(1) applies to the sale here and that the

doctrine of *lis pendens* does not permit the sale of the property free and clear of Appellants'

constructive trust claim. Second, Appellants argue that § 363(f)(2) allows their claim to survive

because Appellants, an "entity" with an "interest" in the property, did not consent to the sale of the

Property at the Sale Hearing. Third, Appellants argue that § 363(f)(4) allows their claim to survive

the Sale Order because the *lis pendens* that resulted from their filing the state court complaint is not

in bona fide dispute.

Crucial to Appellants' success in each of their arguments on this point is whether the

doctrine of *lis pendens* even applies here. Maryland Rule 12-102(a) provides that the constructive

notice rule "applies to an action filed in a circuit court . . . that *affects title to* . . . real property

located in this State" and that such an action is one to which the doctrine of *lis pendens* applies. *See*

Md. Code. Ann., Maryland Rules § 12-102(a) and (b)(2008). As previously noted, "the doctrine [of

*lis pendens*] derives from the jurisdiction and control which a court acquires over property involved

in an action pending its continuance and until final judgment is entered." *Greenpoint*, 390 Md. at

223, 888 A.2d at 304. In this ongoing bankruptcy proceeding, the Bankruptcy Court retains exclusive jurisdiction, to the exclusion of other courts, over the Property that was the subject of Appellants' constructive trust claim. *See* 28 U.S.C. § 1334(e). Therefore, the Circuit Court in which Appellants filed their constructive trust claim against property subject to the Bankruptcy Court's exclusive jurisdiction could not acquire or exercise jurisdiction over the Property and could not make a ruling "affecting title to" the Property. Thus, the doctrine of *lis pendens*, and by extension Rule 12-102(b), does not apply here either to give constructive notice to the Bankruptcy Court of Appellants' constructive trust claim or as "applicable nonbankruptcy law" that prohibits the sale of the Property free and clear of Appellants' constructive trust claim. Moreover, because of the Bankruptcy Court's exclusive jurisdiction over the Property, Appellants could not gain relief based on their constructive trust claim in the Circuit Court for Montgomery County. Therefore, Appellants' state court constructive trust claim is invalid.

The invalid nature of Appellants' constructive trust claim serves to dispense with Appellants' remaining arguments in support of survival of that claim. Without a valid constructive trust claim, Appellants cannot, as they contend, be considered an "entity with an interest in the Property" within the meaning of the statute, such that the Trustee needed to obtain their consent under § 363(f)(2) before selling the Property free and clear of all interests. Similarly, § 363(f)(4) is inapplicable because Appellants never had a legitimate interest that could be in bona fide dispute.

Even without the Court's independent grounds for reaching the conclusion that Appellants' constructive trust claim did not survive the Sale Order, this Court finds that the Bankruptcy Court did not commit clear error when it found that Appellants waived their constructive trust objection by failing to raise the objection at the Sale Hearing. The Fourth Circuit, in *First Union Commercial*

13

*Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310 (4th Cir. 1996), held that a party in interest waived its objection to the debtor's reorganization plan when it failed to raise the objection prior to or at the confirmation hearing, despite the party's ability to raise the objection at the hearing. *In re Varat*, 81 F.3d at 1317. Similarly, Appellants certainly could have raised their constructive trust objection at the Sale Hearing because Appellants knew of the objection prior to, when it was planning to file suit in state court, and at the sale hearing. As such, the Bankruptcy Court correctly found that Appellants waived their constructive trust objection. Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion when it ordered the sale of the Property to continue free and clear of Appellants' constructive trust claim.

**V.**

Finally, Appellants contend that the Bankruptcy Court erred by failing to conduct a hearing on its Motion for Reconsideration before finding that Appellants' "surreptitiously" filed their state court complaint, which was evidence of their bad faith. Appellants seem to suggest that the Bankruptcy Court improperly based its decision to deny the motion to reconsider on its finding that Appellants surreptitiously filed the complaint and acted in bad faith.[9]

Pursuant to Fed. R. Civ. P. 59(e), a Court can alter or amend a judgment in limited circumstances, namely (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) motions should not be used to raise arguments which could have been raised prior to the issuance of the judgment, nor should they be used to argue a case under a new legal theory that the party

---

[9] Although not titled as such, the Court will consider Appellants' Motion to Reconsider as a one under Fed. R. Civ. P. 59(e), Motion to Alter or Amend a Judgment, and analyze it as such.

could have addressed in the first instance. *Id*; *see also Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677-78 n.1 (D. Md. 2001). Lastly, a "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations omitted).

In reviewing Appellants' Motion for Reconsideration and the facts in support of it, the Court finds that the Bankruptcy Court was not in error by denying the motion or in declining to conduct a hearing or taking evidence. First, it is within the discretion of the Bankruptcy Judge whether a hearing on a motion is warranted, as motions can be decided on the pleadings and the memoranda filed by the parties. *See* B.R. Local Rule, 9013-1(b)(4) (2007). Second, the Bankruptcy Court denied Appellants' motion because it found "no valid grounds stated for reconsideration" since it had previously addressed Appellants' contention that their constructive trust claim survived the Sale Order. Since Appellants have not shown a change in the controlling law, accounted for unavailable evidence, or corrected a clear error of law, the Court finds that the Bankruptcy Court did not abuse its discretion in denying Appellants' Motion for Reconsideration. Moreover, the Court notes that the Bankruptcy Court made a reasonable inference as to the bad faith nature of Appellants' actions. Regardless of the ultimate validity of their constructive trust claim, Appellants never disclosed their claim to the Bankruptcy Court at the Sale Hearing despite knowing that such a claim would be pertinent to the issues discussed at the hearing and could potentially disrupt or delay the sale of the Property. Such actions, in the eyes of this Court appear to have significant "trappings" of bad faith.[10]

---

[10] This Court notes, as has been stated before in earlier decision, that Appellants have filed a barrage of pleadings in this bankruptcy matter, and the statements and inferences drawn by the Bankruptcy Court throughout these appeals suggest that Appellants' efforts have been designed to frustrate the judicial process.

15

**CONCLUSION**

Given Appellants' failure to succeed on any points they raise in this appeal, this Court AFFIRMS in full the decision of the Bankruptcy Court. An Order consistent with this Memorandum Opinion will follow.

   March 31, 2008                                 /s/          
         Date                                     Alexander Williams, Jr.
                                             United States District Judge