Date signed February 10, 2011



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Beverly Byrd and | * | Case No. | 04-35620-TJC |
| Ralph T. Byrd | * | Chapter | 7 |
| | * | Substantively Consolidated with | |
| Debtors | * | Case No. | 01-25006 |

### MEMORANDUM OF DECISION APPROVING TRUSTEE'S
### APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES
### AND FINAL REPORT AND CLOSING CASE

Before the court is the Application for Compensation and Reimbursement of Expenses,

Docket No. 738 (the "Application") filed by Gregory Johnson, the Chapter 7 Trustee (the

"Trustee"). Also before the Court is the Trustee's Final Report. Docket No. 737. Through these

documents, the Trustee seeks to complete the administration of this long and tortuous bankruptcy

case, which originated in 2001 as Case No. 01-20056.[1] The debtors, Ralph and Beverly Byrd

---

[1] Case No. 01-25006 was filed as an involuntary Chapter 7 case against debtor Ralph Byrd. By motion, Mr. Byrd converted the case to one under Chapter 11 in June, 2004. *See* Docket No. 183 in Case No. 01-25006. The Court ordered the appointed a Chapter 11 trustee on July 14, 2004. *See* Docket No. 212 in Case No. 01-20056. Debtor Beverly Byrd filed a Chapter 13 case, Case No. 04-35620. Case No. 01-25006 was substantively consolidated into

(the "Debtors"), filed an objection to the Application and the Final Report.  The Court held

hearings on these matters on January 19, 2011 and February 9, 2011.  As is their practice, the

Debtors failed to appear to prosecute their objection.  For the reasons set forth herein, the Court

will approve the Application and Final Report and close this bankruptcy case.  The Court will

strike the Debtors' objection due to their continued abuse of judicial process and their bad faith

conduct in this case.  For the sake of completeness of the record, however, the Court also will

address and overrule the Debtors' objection on the merits.

**The Court Will Strike The Debtors' Objection Due To Their Bad Faith.**

Section 105(a) of the Bankruptcy Code[2] authorizes the Court to enter any order necessary

or appropriate to carry out the provisions of the Bankruptcy Code or to prevent an abuse of

process.[3]  The United States Supreme Court has affirmed the "broad authority granted to

bankruptcy judges to take any action that is necessary or appropriate 'to prevent abuse of

process' described in § 105(a) of the [Bankruptcy] Code."  *Marrama v. Citizens Bank*, 549 U.S.

365, 375 (2007).  Moreover, even aside from §105(a), the Supreme Court identified the "inherent

power of every federal court to sanction 'abusive litigation practices'" as adequate justification

to support extraordinary relief.  *Id*.  Under the unique circumstance of this case, the Court will

strike the Debtors' objection to the Application and Final Report.

---

Case No. 04-35620 by consent of the Debtors and the Trustee.  *See* Docket No. 49.  The case was reconverted to Chapter 7 by order entered on March 20, 2006.  Docket No. 249.

[2] All statutory references are to the Bankruptcy Code in effect in 2004.

[3] 11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This case was filed as an involuntary Chapter 7 case against Ralph Byrd on December 14, 2001.  *See* supra n.1.  Ralph Byrd appealed the entry of the order for relief.  The Bankruptcy Court stayed the administration of the case pending appeal.  The Court of Appeals affirmed the entry of the order for relief.  The stay was terminated by order entered on April 22, 2004.  Docket No. 169 in Case No. 01-25006.[4]

Since that time the Debtors have continually sought to thwart the administration of the case.  The following are some of the decisions issued by the Court in response to the Debtors' actions, and give background of the case and description of the difficulties caused by the Debtors to the Trustee's efforts to administer this case:

- Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property From 4901 Sundown Road, Laytonsville, MD., Docket No. 480, entered on December 11, 2006.

- Memorandum of Decision finding the Debtors and others in violation of the automatic stay and the Barton Doctrine, Docket No. 573, entered on May 18, 2007.

- Memorandum Opinion Awarding Sanctions for the Debtors' Failure to Produce Documents and Finding the Debtors in Contempt for Violating the Production Order, Docket No. 675, entered on September 27, 2007.

- Memorandum Opinion Finding the Respondents in Contempt and Awarding Sanctions for Violations of the Automatic Stay, the Barton Doctrine and the Injunction Order, Docket No. 677, entered on September 27, 2007.

- Memorandum Opinion Granting the Third Application of Shulman, Rogers, Pordy and Ecker, P.A.*,* Docket No. 713, entered on December 7, 2007

Ralph Byrd failed to cooperate with the Trustee and failed to comply with his duties as a debtor in a bankruptcy case.  Thus, for example, Debtor Ralph Byrd failed to file schedules and attend the meeting of creditors, resulting in the Court entering an order requiring him to do so under threat of incarceration.  *See* Docket No. 176 in Case No. 01-25006*.*  The Debtors refused

---

[4] All citations to "Docket Nos." herein are to docket entries in Case No 04-35620, unless otherwise noted.

to grant the Trustee access to their residence, resulting in the issuance of a writ of assistance to the United States Marshall to assist the Trustee in gaining access to the Debtors' residence.  *See* Docket No. 299 in Case No. 01-25006.

The sale of the Debtors' residence required extensive litigation and the need for Court intervention, including the issuance by the Court of the Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property From 4901 Sundown Road, Laytonsville, MD.  Docket No. 480.

The Debtors repeatedly stymied the Trustee's efforts to obtain documents and information.  As the Court concluded, "[t]he Debtors have turned a request for documents by the Trustee into a costly, year-long charade."   Memorandum Opinion Awarding Sanctions for the Debtors' Failure to Produce Documents and Finding the Debtors in Contempt for Violating the Production Order, Docket No. 675, at 8-9.

This Court on two occasions found the Debtors to be in contempt for blatantly ignoring this Court's orders, and awarded the Trustee sanctions intended to reimburse the Trustee for the attorneys' fees incurred in dealing with the Debtors' impediments.  *See* Docket Nos. 676 and 678.  Those contempt orders have been affirmed on appeal,[5] but the Debtors have failed to pay any of the sanctioned amounts.   Because of the Debtors' blatant disregard of the Court's orders, the Court denied the Debtors' discharge.

Debtor Ralph Byrd, previously a member of the Bar of Maryland, was disbarred in large part because of his conduct in this case.  Although this Court need look no further than its own docket to support its ruling, the findings and conclusions of the Circuit Court for Montgomery County made in Ralph Byrd's disbarment proceeding, affirmed by the Maryland Court of

---

[5] The orders were affirmed by the United States Court of Appeals for the Fourth Circuit in Case Nos. 08-1988 and 08-1989.  *See* Docket No. 746.

4

Appeals, are pertinent here, at least to the extent those findings and conclusions address Ralph

Byrd's conduct *in this bankruptcy case.* Those findings and conclusions include findings that

Ralph Byrd filed false information in this bankruptcy case, constituting criminal acts:

76. During the course of the bankruptcy case, Byrd made innumerable private determinations of law. Byrd's willful misconduct in flagrantly disobeying court orders and the rules of the bankruptcy court, manifestly involved dishonesty and was prejudicial to the administration of justice. The conduct violated Rule 8.4(c) & (d).

77. Byrd violated Rule 3.4(c) when he contravened the bankruptcy court's order of September 15, 2004, after already having been found in contempt for violating the order of December 18, 2002 requiring him to allow access to the property. Byrd also violated the bankruptcy court's order of December 11, 2006, to vacate the premises by January 31, 2006. Byrd did not, and cannot, claim that these orders were not valid. Byrd's knowing and intentional violation of court orders is a violation of Rule 3.4(c). *Attorney Grievance Comm'n v. Mininsohn,* 380 Md. 536, 566 [846 A.2d 353] (2004). Byrd's conduct in this regard also violated Rule 8.4(d).

78. Byrd's filing of false business reports violated Rules 8.4(b), (c), and (d). *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 67-70 [930 A.2d 328] (2007). As Judge Harrell aptly noted in *Siskind,* "words spoken by an attorney who knows they were untrue involves an inherent intent to deceive." *Id.* at 70 [930 A.2d 328]. Hence, Byrd's false statements to the bankruptcy court and to the Trustee regarding his financial status violated Rules 8.4(a), (c) and (d). *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 164-65 [939 A.2d 732] (2008); *Attorney Grievance Comm'n v. Pak,* 400 Md. 567, 606-08 [929 A.2d 546] (2007); *Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 594 [911 A.2d 440] (2006); *Attorney Grievance Comm'm [Comm'n] v. White,* 354 Md. 346, 363-64 [731 A.2d 447] (1999). *Cf. Attorney Grievance Comm'n v. Floyd,* 400 Md. 236, 251-54 [929 A.2d 61] (2007) (intentional concealment of a material fact may violate Rule 8.4(c) if there is an intent to mislead).

79. With respect to Rule 8.4(b), the court concludes that Byrd committed criminal acts that reflect adversely on his fitness as a lawyer when he knowingly filed false business reports with the bankruptcy Trustee. The criminal acts are making false statements

in violation of 18 U.S.C. § 1001 and perjury in violation of [1]8 U.S.C. § 1621. *See Attorney Grievance Comm'n v. Parsons,* 404 Md. 175, 179-80 [946 A.2d 437] (2008); *Attorney Grievance Comm'n v. White,* 354 Md. at 362-63 [731 A.2d 447]. *See also Attorney Grievance Comm'n v. Mininsohn,* 380 Md. at 566-68 [846 A.2d 353]. The fact that Byrd has not been convicted of a crime is of no moment. *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 394-95 [692 A.2d 465] (1997).

80. Byrd violated Rule 3. 1, Rule 3.4(c) and Rule 8.4(d) when he filed his second amended complaint in state court because Byrd had no colorable cause of action against the Trustee, counsel to the Trustee, Bar Counsel or the purchasers of the property. Byrd also violated these Rules when he flatly disobeyed the bankruptcy court's injunction.

*Attorney Grievance Com'n of Maryland v. Byrd*, 970 A.2d 870, 881-882 (Md. 2009) (emphasis added).

As a direct result to the Debtors' actions, the estate has become administratively insolvent.  The Final Report shows that well over $300,000 of funds have come into the estate net of secured creditor claims.  These funds were used to pay administrative fees and expenses of the Trustee, his counsel and others, all as approved by the Court after notice and a hearing.  As the Trustee explained at the hearing on February 9, 2011, however, approximately $40,000.00 of Court-approved administrative fees and expenses will not be paid.  *See also* Docket No. 737-8 at 1-3 (Final Report).  If the Debtors were to pay the contempt sanctions, which were intended to reimburse the Trustee for the attorney fees the estate incurred addressing Debtors' conduct, the estate would have sufficient resources to pay administrative claims in full.  Thus the Debtors' contempt is directly responsible for the administrative insolvency status of this estate.

Even apart from the fees incurred as a result of the Debtors' contempt, the magnitude of the administrative expenses in this case is a result of the Debtors' repeated, often frivolous

filings, as well as the Trustee's need to obtain Court assistance to require the Debtors to comply

with their statutory duties or prior Court orders.  As the Court previously stated:

> This judge has presided over this case since shortly after the Conversion
> Date and has witnessed the efforts of the Applicant.  Although this case has
> not presented any particularly unique, novel or complicated issues of law or
> fact while this judge has presided over it, the Debtors have made it an
> excessively costly case.  In the six month period between the Conversion
> Date and September 30, 2006, the docket reflects 164 docket entries.  It is
> safe to say that the Debtors have attempted to employ virtually any
> procedural avenue they have available to them to stop the efforts of the
> Trustee to administer this case.

Docket No. 483 at 6-7.  Similarly, in approving a fee application of the Trustee's counsel, the

Court concluded:

> The Application must include consideration of the Debtors' conduct during
> this case and the Application Period.  The case presented a fairly
> straightforward individual – as opposed to business – bankruptcy case. The
> Debtors owned a residence that was encumbered by a first and second deed
> of trust.  They also owned other items of personal property.  They had
> fairly substantial amounts of unsecured claims against them, primarily
> unpaid credit card balances, at least one of which had been reduced to
> judgment.  Notwithstanding this straightforward asset/liability structure, the
> Debtors have generated years of costly, expensive litigation and have
> hampered the Trustee's efforts to administer the estate.

Docket No. 713 at 8.  On more than one occasion, the Court concluded that the "record here

establishes a continuous, ongoing effort by the Debtors to frustrate the Trustee's administration

of the estate."  Docket No. 675 at 8.

Finally, as addressed further below, the Court has previously admonished the Debtors

against filing summary objections bereft of factual allegations or legal authority and then failing

to appear at the hearing to prosecute the objection.  Yet that is precisely what the Debtors have

done here.

Accordingly, due to, among other actions, Ralph Byrd's false filings in this case which

were characterized as criminal by the Maryland Court of Appeals, the Debtors' contempt, their

failure to satisfy the contempt sanctions, their filing of a summary objection and failing to

appear at the hearing to prosecute it and their abuse of the judicial process that has directly

resulted in this case becoming administratively insolvent, this Court will strike their objection to

the Application and Final Report.[6]

**The Trustee's Fee Request Is Reasonable Compensation For Actual, Necessary Services.**

In the Application, the Trustee seeks compensation of $41,627.69 and expense

reimbursement of $12.04 for total compensation and expenses of $41,639.73.  *See* Application at

p. 2.  The expense reimbursement request is based on the cost of mailing 34 notices designating

the case as an asset case, at the mailing rate of $.39 for a total of $13.26, of which the Trustee

requests $12.04.  *See* Docket No. 738-1 at 1. The expense reimbursement request is reasonable,

necessary and *de minimis*, and need not be addressed further.  *See* 11 U.S.C. §330(a)(1)(B)

(authorizing the court to award reimbursement for actual, necessary expenses).

Section 326(a) provides that in a case under Chapter 7 "the court may allow reasonable

compensation under §330 . . . for the trustee's services . . . not to exceed [a calculation contained

therein.]"  11 U.S.C. §326(a).  In this case, the total receipts of the estate were $852,157.35.  *See*

---

[6]  Although the Court has questioned whether the Debtors have standing to challenge case administration matters, it has not denied the Debtors standing.  It is well established that an insolvent Chapter 7 debtor lacks standing to challenge case administration matters because the debtor lacks a pecuniary interest in the distribution of assets among the debtor's creditors.  In *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985), the court held that an insolvent Chapter 7 debtor lacks standing to challenge the proposed sale of estate property because the debtor lacks a pecuniary interest in the result of the sale.  In reaching its decision, the Court relied on the principle, in the analogous setting of whether an insolvent debtor may object to the allowance of claims against the estate, that, "an insolvent debtor is not a party in interest and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors."  *Id*. (citing 3 J. Moore & L. King, Collier on Bankruptcy ¶57.17[2.1], pp. 275-277 (14th ed. 1977); 3 L. King, Collier on Bankruptcy ¶502.01[2] (15th ed. 1985)); *See also Yadkin Valley Bank and Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993) (The term "party-in-interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceeding.").  Here, however, the Court has denied the Debtors a discharge.  Case authority supports the principle that *Willemain* does not apply where a debtor is denied a discharge, because bankruptcy actions could have an effect on the amount of the nondischarged claims that the debtor remains obligated to pay once the automatic stay is terminated.  *See McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996).  For that reason, the Court has not denied standing to the Debtors.

Application at p. 1.  The limitation on compensation determined by the calculation contained in §326 is $45,857.87.  *Id.*  The Debtors do not contend that the Trustee's calculation is wrong and, indeed, it is not.  Therefore, the amount of compensation sought by the Trustee is less than the limitation on compensation in §326.

The Court must next determine whether the amount the Trustee seeks is reasonable compensation pursuant to §330.  Section 330 provides that the Court "may award to a trustee . . . reasonable compensation for the actual, necessary services rendered by the trustee . . . ." §330(a)(1)(A).  As pertinent here, §§330(a)(3) and (4) provide:

> (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>     (A) the time spent on such services;
>     (B) the rates charged for such services;
>     (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>     (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>     (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>     (i) unnecessary duplication of services; or
>     (ii) services that were not—
>     (I) reasonably likely to benefit the debtor's estate; or
>     (II) necessary to the administration of the case.

In applying these standards, the courts have adopted the so-called lodestar analysis.  The factors to be considered are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Anderson v. Morris* (*Anderson*), 658 F.2d 246,248, n. 2 (4th Cir. 1981) (*quoting Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). "Experience has shown, however, that these criteria are difficult to quantify. As one court has said, 'merely providing a check list of factors to consider does not lead to consistent results or, in many cases, reasonable fees. Many of the factors are overlapping, and there is no guidance as to the relative importance of each factor, or indeed, how they are to be applied in a given case.'" *Id.* at 249 (*quoting Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 642 (6th Cir. 1979)).

> The Court of Appeals of the Fifth Circuit, progenitor of the *Johnson* factors, recognized these problems. It therefore has instructed district courts to first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially *Johnson* factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award. *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-1300 (5th Cir. 1977). *See also Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581-584 (5th Cir. 1980). We endorse this manner of applying the *Johnson* factors."

*Anderson*, 658 F.2d at 249.

The court should "begin with a figure based on the number of hours reasonably expended multiplied by a reasonable hourly rate and then explain any adjustment of these figures either up or down because of the other *Johnson* factors listed in *Barber*." *Id.* at 249. "Making

such adjustments, as well as others suggested by the 12 *Johnson* factors, falls within the discretion of the trial judge." *Id.*

Moreover, "[t]he Supreme Court of the United States, in considering attorney's fees awards in other contexts, has explained that:

> [c]ounsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Pope v. Vu* (*In re Vu*), 366 B.R. 511, 520 (D.Md. 2007) *quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citations omitted). "The exercise of billing judgment is the voluntary reduction of a fee by counsel to a private client for services [that] either conferred a negligible benefit or were excessive. . . . Such billing judgment is an absolute requirement of fee applications in bankruptcy." *Id.* citing *In re Maxine's, Inc.*, 304 B.R. 245, 249 (Bankr. D.Md. 2003) (citations omitted); *In re Bernard Hill, Inc.*, 133 B.R. 61, 62 (Bankr. D.Md. 1991))." The *Vu* court also noted, however, that "it would be improper to deny a fee request automatically because the fee was not voluntarily reduced." *Id.* at 520.

Here, the Trustee has submitted time records reflecting fees generated of $45,830.75. This amount is generated from two components: (1) the Trustee worked 121.20 hours at an hourly rate of $355, for a total fee of $43,026 for the Trustee's personal services, Docket No. 738-2 at 1-9; and (2) the Trustee's staff worked a total of 43.15 hours at an hourly rate of $65 for a total of $2,804.75, *Id.* at 9-11. As stated above, however, the Trustee only seeks fees of $41,627.69. The Trustee therefore has voluntarily reduced his fee request by $4,203.06.

The Court finds and concludes that the Trustee's hourly rate of $355 and the staff rate of $65 are reasonable and customary rates during the application period. It is safe to say that the

Court reviews and approves hundreds of fee applications and is well familiar with the rates charged by trustees, counsel and their staff in this market area.

The Court further finds and concludes that the services performed by the Trustee and his staff were necessary to the administration of the case, and the number of hours expended by the Trustee and his staff on this case is extraordinarily reasonable. The Court is intimately familiar with this case. As addressed more fully in the preceding section, during his administration of the case, the Trustee, among other things, sold the Debtors' residence, investigated the Debtors' resources and defended himself against a lawsuit brought by the Debtors. Also as addressed more fully in the preceding section, none of this has been easy; at every turn, the Debtors, at the least, failed to cooperate with the Trustee and, at the worst, blatantly hindered the Trustee's administration.

The foregoing is not intended to be a complete description of the difficulties faced by the Trustee in the administration of this case or the bad faith efforts of the Debtors. A more complete understanding can be gained by a review of the Court's memoranda of the decisions cited above, as well as the docket in this case. Suffice it to say here, however, that the Trustee's fee request, under the circumstances of this case, is remarkably reasonable.

Finally, as noted above, the Trustee has voluntarily reduced his fee request by $4,203.06. The exercise of "billing judgment is an absolute requirement of fee applications in bankruptcy." *Vu*, 366 B.R. at 520. Here, the Trustee's voluntary reduction is attributable to the administratively insolvent status of the case, rather than any unnecessary or excessive billing by the Trustee. Nevertheless, the reduction weighs heavily in favor of approval.

**The Debtors' Objections Are Without Merit.**

The Debtors filed a one-page objection to the Final Report and Application.  Docket No.

741.  The Debtors did not appear at the hearing on the Application and their objection.  This is

consistent with the Debtors' course of conduct in this case -- file a summary opposition to a

proposed action bereft of factual support or authority and fail to appear and prosecute the

opposition.  *See*, e.g., Docket Nos. 643, 704.[7]

The Debtors raise two points of objection:

- The Debtors incorporate by reference all previous objections to previous
administrative claims of the trustee and his special counsel.

- In addition, on June 28, 2007, the Fourth Circuit Court of Appeals in
Case No. 06-20042 ruled that the very appointment of the trustee is still
to be reviewed in the context of whether such administrative claims are
to be granted.

Docket No. 741 at 1.

The Debtors' first objection can be readily overruled.  This case contains 774 docket

entries.  Ralph Byrd's predecessor case, Case No. 01-25006, contains 402 entries.  It is not for

the Court to peruse more than 1100 docket entries and identify the arguments the Debtors believe

apply to the Application.   This is especially applicable here, where the Debtors yet again failed

to appear at the hearing to articulate their objection.

The Debtors' second objection is based on a statement by the United States Court of

Appeals.  In denying one of the Debtors' appeals, the United States Court of Appeals for the

Fourth Circuit stated

we note that . . . the issue of the appointment of the Chapter 11 trustee
had not been decided in Ralph Byrd's prior appeal; rather the district
court dismissed the appeal as moot, with the understanding that Byrd's
challenge to the propriety of the trustee's appointment would be

---

[7] This Court has previously admonished Debtor Ralph Byrd against making summary filings that contain no
allegations of fact or points or authorities of law.  *See e.g.*, Docket No. 713 at n. 2.

presented to the bankruptcy court in the context of whether fees should be
awarded.

*Byrd v. Johnson*, No. 06-2042 at 3(4th Cir., June 28, 2007) (unpublished per curiam) (Docket No.

664-3 in Case No. 04-35620).  The Debtors contend that this Court erred in appointing the

Chapter 11 trustee and therefore all administrative claims of the Chapter 11 trustee and his

counsel should be denied.[8]

This contention previously was addressed and resolved by this Court and therefore is

overruled.  Subsequent to the issuance of the Fourth Circuit's opinion, on August 21, 2007,

Shulman, Rogers filed its Third Application of Shulman, Rogers, Gandal, Pordy and Ecker, P.A.,

as Special Counsel, for Allowance of Administrative Claim for Professional Services Rendered

and for Reimbursement of Expenses (the "Third Application").  Docket No. 660.  On September

12, 2007, the Debtors filed an objection to the Third Application, asserting the same two

objections they raise in their objection to the Application, as stated above.  *See* Docket No. 668

at 1.

The Court set the Third Application and the Debtors' objection for a hearing on October

26, 2007.  Again, neither Debtor appeared.  Nevertheless, consistent with the opinion of the

---

[8] In this regard, the Court again makes a point the Debtors continue to ignore in their filings.  Even if the
appointment of the Chapter 11 trustee was in error -- and the Court has determined it was not -- that would provide
no basis for denying all administrative claims incurred by the Trustee while he properly administered the Chapter 11
estate. The Debtors have cited no authority to support their claim that all administrative Chapter 11 expenses should
be denied in such a case.  This point is significant because the Court has allowed $57,175.48 of total Chapter 11
administrative fees and expenses.  Specifically, the Court ordered the appointment of the Chapter 11 Trustee in Case
No. 01-25006 on July 14, 2004.  Docket Nos. 212 and 218 in case No. 01-25006.  The Trustee's chapter 11
appointment terminated when the Chapter 11 case was consolidated into Beverly Byrd's Chapter 13 case, with the
consent of the Debtors, by order entered on January 13, 2005.  Docket No. 49.  The Trustee sought and obtained
approval of $25,440 in chapter 11 fees; his special counsel, Shulman, Rogers, Gandal, Pordy & Ecker, P.S.
("Shulman Rogers"), sought and obtained approval of $28,816 in chapter 11 fees and $2,919.48 in expenses.  *See*
Docket Nos. 57, 58, 66 and 73.  Thus, the total chapter 11 fees and expenses were $57,175.48.  As stated above, the
case is administratively insolvent in the amount of approximately $40,000.  Therefore, the Debtors' would have to
establish that approximately $40,000 of the $57,174.48 chapter 11 fees and expenses should be disallowed for their
contention to have any economic significance.  The Debtors have not stated any basis to establish such a claim.

Fourth Circuit, this Court reviewed at length "the propriety of the trustee's appointment . . . in the context of whether fees should be awarded." *Byrd v. Johnson*, No. 06-2042 at 3.

Specifically, on December 5, 2007, the Court issued the Memorandum Opinion Granting the Third Application of Shulman, Rogers, Gandal, Pordy and Ecker, P.A. Docket No. 713. There the Court concluded that the fees and expenses sought in the Third Application were reasonable compensation for the actual, necessary services rendered by Shulman Rogers. *Id.* at 12. As pertinent here, in response to the Debtors' contention that, because the appointment of the Chapter 11 trustee was in error, all administrative claims in the case should be denied, the Court stated

> The Court specifically set the matter for hearing to allow the Debtors to establish their claim that, because the Bankruptcy Court erred in appointing the Chapter 11 trustee, all administrative claims should be denied. The Debtors failed to appear and carry their burden. Further, the Debtors have offered no facts or legal authorities to support their notion either that the appointment of the Chapter 11 trustee was in error, or that all administrative fees should be denied as a result of such an error. These procedural deficiencies - the Debtors' failure to appear at the hearing and their failure to allege facts or cite any authorities in support of their Objection – are alone sufficient for the Court to deny the Objection. Accordingly, the Objection is denied for those reasons.

*Id.* at 13.

Nevertheless, the Court went on to review at length the facts leading to the appointment of the trustee and the appropriateness of that decision. *Id.* at 13-25. The Court concluded that the appointment of the trustee was "entirely appropriate" for several reasons:

- Mr. Byrd had consistently violated Court orders, had failed to file his Schedules and Statement of Financial Affairs and had failed to attend the Section 341 meeting of creditors. Mr. Byrd did not file the documents required by the Bankruptcy Code and prior Court orders until he was threatened with incarceration unless and until he did so.

- Mr. Byrd made it clear he was not going to file any avoidance actions prior to the limitations period running on such actions because he believed they lacked merit. The appointment of the Chapter 11 Trustee, who could objectively review the merit

of such potential actions and bring them as appropriate, was necessary to preserve whatever value those actions had for the estate. Indeed, within three days of the Court's order ordering the appointment of the Chapter 11 Trustee, he commenced adversary proceeding number 04-01923 in which he sought to avoid the judgment lien in the approximate amount of $20,000 obtained against the Byrd's residence by Platinum Financial Services Inc. within 90 days of the filing of the petition. That adversary proceeding resulted in the avoidance of that lien, thereby providing a $20,000 benefit to the estate. See Docket No. 4 in Adv. Proc. 04-1923.

- Mr. Byrd had failed to make payments on his second deed of trust and there was a substantial risk that the residence would be lost to foreclosure. Because of his failure to make the payments, the holder of that lien obtained relief from the automatic stay and was authorized to commence foreclosure proceedings by August 23, 2004. In order to preserve the value of that property for the estate, the appointment of a trustee was necessary to market the property and negotiate a resolution with the creditor.

- The appointment of a Chapter 11 trustee also took into account Mr. Byrd's interests as well. The appointment of a Chapter 11 trustee, as opposed to converting the case to Chapter 7, provided him with the opportunity to file a plan of reorganization if he believed he could successfully reorganize his affairs, and would not interfere substantially with his then law practice.

Id. at 24-25.

Here, the Debtors have again filed a one-page objection to the Application, failing to cite any facts or law in support of their objection, and failing to appear at the hearing to prosecute their objection. The Court adopts the findings and conclusions it made in the Memorandum Opinion Granting the Third Application of Shulman, Rogers, Gandal, Pordy and Ecker, P.A., Docket No. 713, overrules the Debtors' objection to the Application.

**The Final Report Is Proper And Complete**.

The Trustee filed the Final Report and Proposed Distribution to Creditors on July 15, 2009. Docket No. 737. The Trustee included all required reports and exhibits, including the Trustee' Proposed Distribution Report, Official Form 1, Official Form 2, Claims Analysis Report and Claims Distribution Report. See Docket No 737-1 through 737-9. The Final Report and

exhibits are accurate and complete.  As is the usual practice and procedure, the United States

Trustee has issued his review letter.  Docket No. 737-1.

The Debtors have not raised any specific objections to the Final Report, other than the

two objections they raised in connection to the Application, described above.  For the same

reasons stated in the previous sections of this Memorandum, the Court will strike the Debtors'

objection and overrule it on the merits.

The administrative claims paid by the Trustee, as reflected in the Final Report, and the

Court's order approving such claims, as applicable, are as follows:[9]

| Claimant | Amount Approved | Amount Paid per Final Report | Approval Document |
|---|---|---|---|
| Trustee | $41,627.69 | $41,627.69 | This Memorandum and accompanying order. |
| Keller Williams Realty | $5,000.00 | $5,000.00 | Order, Docket No. 544. |
| Shulman Rogers | $2,973.70 | $2,973.70 | Reimbursement for actual, necessary expenses: refund for interim property insurance. |
| Shulman Rogers | 435.00 | $435.00 | Reimbursement for actual, necessary expenses: refund for locksmith to change house locks. |
| Shulman Rogers | $39,543.00 | $39,543.00 | Memorandum of Decision and Order, Docket Nos. 483, 484. |
| Shulman Rogers | $2,469.93 | $2,469.93 | Memorandum of Decision and Order, Docket Nos. 483, 484. |
| Platinum Financial Services | $11,630.60 | $11,630.60 | Order, Docket No. 492. |
| Platinum Financial Services | $3,990.81 | $3,990.81 | Order, Docket No. 492. |
| Trustee | $25,440.00 | $25,440.00 | Allowed by Order, Docket No. 73. Reconsideration granted, and allowance upheld, Docket No. 100. See also Docket No. 113 (Transcript of bench ruling). |

[9] *See generally*, Docket No. 737-8 at 1-3.

| Shulman Rogers | $28,816.00 | $28,816.00 | Allowed by Order, Docket No. 73. Reconsideration granted, and allowance upheld, Docket No. 100. See also Docket No. 113 (Transcript of bench ruling). |
|---|---|---|---|
| Shulman Rogers | $65,665.00 | $65,665.00 | Allowed by Order, Docket No. 73. Reconsideration granted, and allowance upheld, Docket No. 100. See also Docket No. 113 (Transcript of bench ruling). |
| Shulman Rogers | $104,006.00 | $75,000.00 | Memorandum of Decision and Order, Docket Nos. 713, 714. |
| Shulman Rogers | $2,919.48 | $2,919.48 | Allowed by Order, Docket No. 73. Reconsideration granted, and allowance upheld, Docket No. 100. See also Docket No. 113 (Transcript of bench ruling). |
| Shulman Rogers | $6,553.66 | $6,553.66 | Allowed by Order, Docket No. 73. Reconsideration granted, and allowance upheld, Docket No. 100. See also Docket No. 113 (Transcript of bench ruling). |
| Shulman Rogers | $10,533.45 | $10,533.45 | Memorandum of Decision and Order, Docket Nos. 713, 714. |
| Begal Enterprises | $24,494.33 | $24,494.33 | Order, Docket No. 641. |
| Office of US Trustee | $1,000.00 | $1,000.00 | Chapter 11 quarterly fees for No. 04-35620. |

Accordingly, to the extent necessary in light of the previous orders, for the reasons set forth in the various orders, memoranda of decision and the rulings of the Court at the hearings on these matters, as cited above, and for the reasons set forth herein, the Court finds and concludes that the fees and expenses paid by the Trustee are reasonable compensation for actual necessary services, and reimbursement for actual necessary expenses, and are allowed pursuant to §330.

## CONCLUSION

For the foregoing reasons, the Court will approve the Application, overrule the Debtors' objection and close the case.

Cc:     Beverly Byrd
        P.O. Box 5278
        Laytonsville, MD 20882

Ralph T. Byrd
P.O. Box 5278
Laytonsville, MD 20882

Gregory P. Johnson, Chapter 7 Trustee
1213 Cabinwood Place
Silver Spring, MD 20904

James M. Hoffman
Offit Kurman, P.A.
4800 Montgomery Lane
9th Floor
Bethesda, MD 20814

Office of the United States Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

**<u>END OF MEMORANDUM</u>**